IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JESSICA TAPIA,
VANESSA ARAGON, and
NEW MEXICO TRANSPORTATION UNION,
ERNEST LUCERO, Chairman,

   Plaintiffs,

vs.             No. CIV 13-0206 JB/ACT

CITY OF ALBUQUERQUE,
RICHARD BERRY, Mayor,
ROBERT J. PERRY, Chief
Administrative Officer, BRUCE
RIZZIERI, Transit Dept. Director,
CITY PERSONNEL BOARD,
PAULA FORNEY, and
CARMEN WAGNER-MOGLE, M.D.,

   Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Disqualify Attorney Paula Forney, filed July 17, 2013 (Doc. 46)("Motion to Disqualify"). The Court held a hearing on November 1, 2013. The primary issue is whether the Court should disqualify Defendant and attorney Paula Forney from representing fellow Defendants City of Albuquerque, Richard Berry, Robert Perry, and Bruce Rizzieri ("the City Defendants"). The Court will deny the Motion to Disqualify, without prejudice to the Plaintiffs' ability to renew the Motion to Disqualify if circumstances or new evidence present themselves down the road that justify reconsideration.

## FACTUAL BACKGROUND

To provide background for the Motion to Disqualify, the Court takes the following facts

from the Complaint for Violation of Statutory and Constitutional Rights, Breach of Contract, and Unfair and Prohibited Labor Practices, filed in state court January 15, 2013, filed in federal court March 4, 2013 (Doc. 1-1)("Complaint").  The Complaint's organization is unclear.  Accordingly, the Court has reorganized the factual material in the Complaint to explain the facts clearly.

> 1.    **The Parties**.

Plaintiff "Jessica Tapia was a full-time, classified City employee, employed as a City para-transit van driver when she was injured on-the-job while operating a wheel-chair lift on a City van."  Complaint ¶ 1, at 1 (emphasis omitted).  Plaintiff "Vanessa Aragon was employed as a City bus driver until the City terminated her employment in July, 2011."  Complaint ¶ 2, at 2 (emphasis omitted).  Plaintiff "[t]he New Mexico Transportation Union ("NMT[U]"), [sic] is the labor union that has represented City bus and van drivers since 1965; [Plaintiff] Ernest Lucero is the current NMTU Chairman."  Complaint ¶ 3, at 2 (emphasis omitted).  "Defendant City of Albuquerque is the largest city in New Mexico; Albuquerque is in Bernalillo County, New Mexico."  Complaint ¶ 4, at 2 (emphasis omitted).  Defendant "Richard Berry is the Mayor of Albuquerque; [Defendant] Robert J. Perry is the Chief Administrative Officer (CAO) of the City."  Complaint ¶ 5, at 2 (emphasis omitted).  Defendant "[t]he City Personnel Board is supposed to be a neutral quasi-judicial hearing panel;" according to the Plaintiffs, "the current Personnel Board operates unlawfully under the control and direction of" Perry.  Complaint ¶ 6, at 2.  Non-party "[t]he City Labor-Management Relations Board is supposed to be a neutral quasi-judicial hearing panel;" the current Labor Board operates under the control and direction of the City of Albuquerque," Berry, and Perry.  Complaint ¶ 7, at 2.  Defendant Bruce Rizzieri is "Director of the City's Transit Department."  Complaint ¶ 8, at 2.  Defendant "Paula Forney is a

- 2 -

former assistant City attorney."  Complaint ¶ 9, at 2.  Defendant "Carmen Wagner-Mogel was Jessica Tapia's physician."  Complaint ¶ 10, at 2.

> 2.      **Facts Related to the NMTU and City Government Actors**.

The Plaintiffs assert that NMTU "petitioned with the support of a majority of employees in the bargaining unit for recognition as the union for the bus and van drivers in March, 2011," but "the City would not formally recognize its majority status until October 5, 2011, when it was forced to recognized NMTU after NMTU prevailed in the City-run election against AFSCME, Local 624."  Complaint ¶ 10, at 3.  Although the City Labor Board conducted that election, neither the City nor its labor board supported "the NMTU in either its grievance or bargaining representation."  Complaint ¶ 11, at 3.  "On October 5, 2011, Mayor Richard Berry de-certified AFSCME as bargaining representative and certified NMTU."  Complaint ¶ 12, at 3.  "However, the City Defendants subsequently refused to bargain with NMTU[,] refused to deduct union dues from paychecks, and refused to allow union leaders the same accommodations and privileges concerning union business, negotiations, and grievances that the AFSCME union was afforded." Complaint ¶ 13, at 3.

> As a direct result of the City's failure to acknowledge and support NMTU as the collective bargaining and grievance representative, NMTU and its officials were untrained, inexperienced, and without any office, staff, or operating funds.  At the same time the union officers were attempting to represent drivers, the Transit Department unreasonably required them to fully perform their driving schedules.

Complaint ¶ 14, at 3-4.  Tapia's and Aragon's grievances "were the first two grievances ever handled by NMTU's new Chairman."  Complaint ¶ 15, at 4.

According to the Plaintiffs, the City Charter requires the mayor to administer and protect "the merit system," and to appoint "an officer to administer the merit system."  Complaint ¶ 16,

at 4.[1]   According to the Plaintiffs, "[t]he City has not appointed or hired" such an officer.

Complaint ¶ 17, at 4.  "[M]oreover, the Merit System Ordinance states that the Mayor" shall

designate the CAO -- "the City's highest appointed official and the person authorized to

'reprimand, suspend, demote or discharge employees'" -- to administer that system.  Complaint

¶ 18, at 4 (quoting MSO § 3-1-2(c)(3)).  "The City Personnel Board is neither fair nor neutral,"

but instead, "whenever possible[, it] upholds and advances management policies and interests

over the rights of City employees.  In this case the City dictated the actions of the Personnel

Board."  Complaint ¶ 19, at 4.

> [U]nder the administration of Mayor Richard Berry the Current Personnel Board
> and its Personnel Hearing Officers and the Labor Board all act under the direction
> of Mayor Berry and Robert Perry, without oversight from the City Council,
> collusively, and in violation of the City Charter and the rights of Plaintiffs and
> other City employees.

Complaint ¶ 20, at 5.

### 3.      Conflict Between Tapia and the City of Albuquerque .

Tapia's wrist was injured on the job.  See Complaint ¶ 21, at 5.  The Complaint does not

relay the circumstances of that injury.  "Since Ms. Tapia had been injured at work the City

claimed it had the right to assign her to any position, without regard for whether the position had

any relation to her work as a van driver."  Complaint ¶ 22, at 5.  "Following her on-the-job wrist

injury the Transit Department assigned Ms. Tapia to 'monitor' the public restrooms at the City's

Alvarado Transit Center.  While 'monitoring' at the ATC, in November, 2010, Ms. Tapia was

---

[1] Although the Complaint does not explain what it means by "merit system," from what
information the Complaint provides, the Court infers that the Complaint refers to the merit
system for employment matters that Article X of the Charter of the City of Albuquerque
contains.  Albuquerque City Charter, art. X.   The Merit System Ordinance is found in
Albuquerque, N.M. Ordinances, §§ 3-1-1 to -28 ("MSO").

attacked by a homeless man who injured her shoulder."   Complaint ¶ 21, at 5.   "By early

December, 2010, Transit officials had placed Ms. Tapia in the poorly heated Guard Shack at the

entrance to the Daytona Transit facility and left her to stay there all day with nothing to do."

Complaint ¶ 23, at 5.

> On December 27, 2010, counsel wrote to Transit Director Bruce Rizzieri and the
> Human Resources manager, to inquire about the City's justification for putting
> Ms. Tapia in the cold Guard Shack with nothing to do.   They did not respond.   On
> January 21, 2011, counsel wrote again to further question and object to the City's
> mistreatment of Ms. Tapia and to give notice of her tort claims.

Complaint ¶ 24, at 5.

> On February 15, 2011, the Transit Department scheduled a Pre-
> Determination Hearing (PDH) for February 24, 2011, charging that Ms. Tapia
> 'submitted a P-30 Request for Leave form with 68.270 hours of Absent Without
> Leave.'   Mr. Bird cancelled that 'hearing' after Ms. Tapia and her attorney
> appeared because, he said, he had forgotten to refer the case to the mediation
> office.

Complaint ¶ 25, at 4.   The hearing was rescheduled for March 10, 2010.   See Complaint ¶26, at

6.   When Tapia's attorney asked for documents to support the charges, no documents were

provided.   See Complaint ¶ 26, at 6.   The Transit Department asserted that Tapia "submitted a P-

30 Request for Leave form with 68.270 hours of Absent Without Leave.   This type of leave is

unauthorized leave and considered absent from work without authorization.   Your AW absences

totaling 68.270 hours have placed you in violation of City Rules and Regulations."   Complaint

¶ 26, at 6 (source of quotation unidentified).   "Ms. Tapia had submitted the form on the

instructions of Transit's Personnel Manager.   Nonetheless, on March 18, 2011, [t]he Transit

Department gave Tapia a 3-day suspension."   Complaint ¶ 27, at 6.

> On April 18, 2011, the Transit Department gave [Tapia] another Notice,
> scheduling a pre-determination hearing for May 9, 2011.   Included in the

- 5 -

allegations was the contention that on "April 11, 2011 Clarence Decker 'witnessed you in the Security Building at approx. 12:30 p.m.   At 3:00 p.m., '(y)ou were not at your assigned work area.'"

Complaint ¶ 27, at 6 (source of quotation unidentified).

On April 21, 2011, another Notice scheduled a hearing for June 3, 2011. Among the allegations were that "On April 18-20, 2011 you did not show up for work or call in to be absent from work… [sic] Your AW absences totaling 24 hours have placed you in violation of City Rules and Regs."  This was apparently also based on a complaint by Clarence Decker about Jessica Tapia's 'absents and failure to call in.'"

Complaint ¶ 28, at 6-7 (source of quotation unidentified).  On May 18, 2011, in response to the hearing held on May 9, 2011, the Transit Department suspended Tapia without pay for eight work days, or sixty-four work hours, to be served from May 20, 2011 to May 31, 2011.  See Complaint ¶ 29, at 7.  On May 31, 2011, Maintenance Manager Dennis Stump gave Ms. Tapia notice of another Pre-determination Hearing scheduled for Thursday June 9, 2011.  According to the City's untrue account, Ms. Tapia had requested accommodation in October, 2010 'citing that you are unable to drive at night due to your medical condition.'"   Complaint ¶ 30, at 31. "Without her knowledge the City had apparently paid a private investigator to follow her outside of work hours, with the result that she was accused of 'driving at night' and 'purchasing liquor at a Walgreens establishment then attending what appeared to be a party.'"   Complaint ¶ 31, at 7 (source of quotation unidentified).

Also, according to the Plaintiffs' account, the City's

FMLA Coordinator *contacted your physician* to inquire if your medical condition had changed . . . physician stated you had not been under her care since the first part of April when she certified your FMLA for intermittent leave and that she did not have a medical explanation for why you have not been to work.

- 6 -

(Emphasis added.)

Complaint ¶ 32, at 7 (omission in Complaint).

"On June 8, 2011, Jessica Tapia received the 'results of predetermination hearing' that 'on April 18-20, 2011, you did not show up for work or call in to be absent from work.'  The Transit department imposed a 15-workday, 120 hour suspension without pay."  Complaint ¶ 33, at 7.  "Without further notice to Ms. Tapia or NMTU, the City terminated Ms. Tapia's employment."  Complaint ¶ 34, at 8.

"On August 2, 2011, the City's attorney, Paula Forney, drafted and issued a subpoena for Ms. Tapia's medical records.  Ms. Forney did that without informing Ms. Tapia or her attorney.  Ms. Forney did not seek or secure a release."  Complaint ¶ 40, at 9.  The subpoena, which Forney evidently issued to Dr. Wagner-Mogle, stated "that it was: '[f]or the medical records of patient, Jessica Tapia . . . requires you to appear for a deposition on August 10, 2011 at 10:00 a.m . . .and bring with you: Any and all documents in your possession regarding Jessica Tapia . . . beginning 01/01/2010 to the present."  Complaint ¶ 41, at 9.  "In a letter accompanying the Subpoena and deposition notice, Ms. Forney stated that: 'You can avoid the deposition by copying and forwarding to this office all records requested prior to the deposition.  If we do not receive the records prior to the date of deposition, we will expect your appearance.'"  Complaint ¶ 42, at 9 (source of quotation not provided).  On August 4, 2011, Dr. Wagner-Mogle sent Tapia's records to Forney by facsimile transmission, without requesting or securing a release or other authorization, and without notifying Tapia.  See Complaint ¶ 43, at 9.  "On August 8, 2011, Ms. Forney wrote to counsel that she had received 'A phone call from Ms. Tapia's doctor acknowledging that she should not have sent Ms. Tapia's records without a release.'"  Complaint

¶ 44, at 10.  "Ms. Tapia objected to the unauthorized release of her medical records, but on September 9, 2011, Personnel Hearing Officer Patrick Bingham issued the subpoena for medical records requested by Ms. Forney and granted the City attorney permission to serve discovery on Ms. Tapia."  Complaint ¶ 45, at 10.

After the hearing officer allowed "the City unlimited 'discovery' (including Ms. Tapia's medical records), Ms. Forney propounded burdensome and offensive 'discovery requests' designed to embarrass Ms. Tapia and place pressure on the inexperienced NMTU officers who were attempting to represent her, rather than produce any actually useful information."  Complaint ¶ 46, at 10.  "The Hearing Officer signed an order dismissing Ms. Tapia's case, but the Personnel Board objected that Mr. Bingham's order did not give any reasons or include any 'findings.'  The Personnel Board remanded the case to the Personnel Hearing Officer to make findings and issue a 'correct' order."  Complaint ¶ 47, at 10.  "Instead of the Hearing Officer making findings and issuing a correct corder [sic], Paula Forney wrote a set of 'findings and conclusions' dismissing Ms. Tapia's case."  Complaint ¶ 48, at 10.  "The Hearing Officer merely changed the title of the document prepared by Ms. Forney and signed the 'Order' drafted by Ms. Forney, dismissing Ms. Tapia's Personnel Board case without a hearing.'"  Complaint ¶ 49, at 10.  "At its December 14, 2011, meeting the Personnel Board gave its rubber-stamp 'approval' of Ms. Forney's findings and conclusions."  Complaint ¶ 50, at 11.

> Counsel for Ms. Tapia subsequently filed a motion for sanctions against the City, Ms. Forney and the Personnel Hearing Officer for their violations of Ms. Tapia's right to privacy.  The Board members denounced Tapia's counsel for bringing the charges before the Personnel Board and the Board unanimously refused to consider the issue.

Complaint ¶ 51, at 11.

4.   **Conflict Between Aragon and the City of Albuquerque.**

"The City has held an extraordinary number of pre-disciplinary hearings in this case, spanning the time between the first such action on December 26, 2006, and the last on June 1, 2011."   Complaint ¶ 35, at 8 (footnote omitted).   The Complaint lists, without further explanation, a number of "Results of Pre-Disciplinary He[ar]ings" and states that "in addition the City has held two investigations . . . and issued at least seven letters of investigation."   Complaint ¶ 35 n.1, at 8.

> The City has charged Ms. Aragon with very many infractions. On March 16, 2008, for example, the City charged Ms. Aragon with violating section 300, 301.1, 301.9, 302, 301.13, 401.11 (D1, E), 402.5(C), 902, 902.1 (C, D, G, J. [sic] L, M1, 2, 3) and Sec. 12.34 (Major Policy Violations/Gross Misconduct, Transit SOP).  Plaintiffs do not know what those charges are for or what happened to those charges.

Complaint ¶ 36, at 8.   "On May 17, 2011, Deputy Operations Manager Annette Paez ordered Ms. Aragon to return to work, but Ms. Aragon was unable to comply because of her medical condition."   Complaint ¶ 37, at 8.   "On June 1, 2011, Ms. Paez charged Ms. Aragon with violations of Section 300, 302, 402.5(c) and 902.1 (E. [sic] J, and M-3)."   Complaint ¶ 38, at 8. "Although the record indicates an increasing concern over attendance and use of sick leave, the City has never explained the reasons for its disciplinary actions against Ms. Aragon."   Complaint ¶ 39, at 9.

"On October 17, 2011, Mr. Lucero wrote to Ms. Wardlaw to request Vanessa Aragon's case and all other NMTU cases be stayed until the Union achieved the ability to represent the bargaining unit employees."   Complaint ¶ 52, at 11.   "The City refused to agree to a continuance, claiming that Mr. Lucero had waited too long to request it."   Complaint ¶ 53, at 11.   "Without

any attempt to contact Ms. Aragon, the City's Personnel Hearing Officer wrongly concluded that: '. . . it is more likely than not that Employee was aware of the hearing and did not appear so as to support the request for a continuance.'"    Complaint ¶ 54, at 11 (omission in Complaint)(source of quotation not provided).

> According to the City's Personnel Hearing Officer, "Employee failed to establish good and sufficient cause for her untimely request for a continuance."

> The Hearing Officer therefore recommends that the Personnel Board deny Employee's request for a continuance. The Employee having failed to appear or to otherwise prosecute her appeal, it is further recommended that the Personnel Board dismiss the appeal of Employee's termination.

Complaint ¶ 55, at 12 (source of block quotation not provided).

> Not knowing about the status of NMTU and its representational abilities and without inquiring or even asking Mr. Lucero, the Hearing Officer erroneously found that the request for a continuance was made because of "problems associated with the fact that NMTU was moving into new facilities."  In fact, there were no "new facilities" and Ms. Aragon was unaware of what was happening, but the Hearing Officer, acting in collusion with the City, recommended termination without a hearing anyway."

Complaint ¶ 56, at 12.

## PROCEDURAL BACKGROUND

The Court will discuss the procedural background in four parts.  First, the Court will discuss the Plaintiffs' Complaint and the Defendants' removal to federal court.  Second, the Court explains facts that, for purposes of this Memorandum Opinion and Order, the Court will treat as undisputed from the Motion to Disqualify and the Response in Opposition to Motion to Disqualify Attorney Paula Forney, filed July 23, 2013 (Doc. 50)("Response to Motion to Disqualify").  Third, the Court will discuss the disputed factual allegations from the Motion to Disqualify.  Fourth, the Court will discuss the parties' legal arguments in the Memorandum in

Support of Motion to Disqualify, filed July 22, 2013 (Doc. 49)("Motion to Disqualify Memo."),

and the Response in Opposition to Memorandum in Support of Motion to Disqualify Attorney

Paula Forney, filed July 23, 2013 (Doc. 51)("Response to Motion to Disqualify Memo.").

1.   **The Plaintiffs File their Complaint; the Defendants Remove to Federal Court.**

The Plaintiffs filed their Complaint in state court, stating that they "bring their claims

under 42 U.S.C.Sec. 1983 [sic], and the laws and Constitutions of the United States and the State

of New Mexico." Complaint ¶ 9, at 2-3. The Plaintiffs allege six causes of action. See

Complaint ¶¶ 57-84, at 12-16. Under "Count 1 Due Process and Equal Protection," the Plaintiffs

assert that Tapia and Aragon, "[a]s classified, full-time, City employees . . . had legitimate

expectations of continued employment absent just cause for disciplinary action. They had the

right to a full and fair hearing to challenge their termination." Complaint ¶ 57, at 12.

"Similarly," the Plaintiffs allege, "NMTU and its leadership had a due process right and an

obligation to represent employees in the bargaining unit at post-termination grievance hearings

that are fundamentally fair and procedurally correct." Complaint ¶ 58, at 12. According to the

Plaintiffs, the "Defendants denied the employees' rights and hearings and dismissed their cases

on pretextual grounds," and, thereby, "the City Defendants have violated Plaintiffs' rights to due

process and equal protection of the laws." Complaint ¶¶ 59-60, at 13.

Under "Count  2 Breach of Employment Contracts," the Plaintiffs allege that, "[a]s

tenured public employees, Plaintiffs Tapia and Aragon were covered by a contract of

employment that consisted of the Merit System Ordinance, the Personnel Rules and Regulations

and applicable collective bargaining agreements." Complaint ¶ 62, at 13. The Plaintiffs contend

that they "were contractually entitled to notice and an opportunity to be heard, and to be disciplined only for just cause."  Complaint ¶ 62, at 13.  The Plaintiffs submit that, thereby, the Defendants "have violated their contractual obligations and are liable for damages to be determined at trial."  Complaint ¶ 64, at 13.

Under "Count 3 Violation of Right to Privacy," the Plaintiffs contend that "Forney used a misleading letter and an illegitimate subpoena that she issued herself to secure Jessica Tapia's medical records from Dr. Carmen Wagner-Mogle," and that Dr. "Wagner-Mogle sent Ms. Tapia's medical records to Ms. Forney without any knowledge or authorization by Ms. Tapia." Complaint ¶¶ 66-67, at 13-14.  The Plaintiffs assert that "Dr. Wagner-Mogle communicated with Ms. Forney and other City representatives about Jessica Tapia and her medical condition and records on at least several occasions," but "never contacted or attempted to contact Ms. Tapia or her attorney."  Complaint ¶ 68, at 14.  The Plaintiffs state that "[t]he acts of Defendants, specifically Paula Forney, Dr. Carmen Wagner-Mogle and the Transit Department deliberately and willfully violated Jessica Tapia's right to privacy in her medical records."  Complaint ¶ 69, at 14.  The Plaintiffs contend that the "Defendants also hired a private investigator and followed Ms. Tapia, seeking and securing information about her personal life and activities entirely unconnected with her work."  Complaint ¶ 70, at 14.  The Plaintiffs assert that the "Defendants are liable for their violations of Ms. Tapia's right to privacy."  Complaint ¶ 71, at 14.

Under "Count 4 Negligence," the Plaintiffs assert that, "[a]s described herein, Defendants have treated Jessica Tapia and Vanessa Aragon negligently and with deliberate indifference with respect to their employment."  Complaint ¶ 73, at 14.  "In addition," the Plaintiffs state, "Ms. Tapia sustained two injuries, the first resulting from operation of a wheelchair lift while on duty;

the second of which was a result of her assignment to monitor the restroom facilities at the Alvarado Transit Center, a building managed and maintained by the City Transit Department." Complaint ¶ 74, at 15.  The Plaintiffs assert that "Tapia has given notice of her tort claim to the City of Albuquerque."   Complaint ¶ 75, at 15.  The Plaintiffs maintain that "[t]he city and its Transit Department, as well as its Director, are liable for the damages proximately caused by their negligence in an amount to be determined at trial."  Complaint ¶ 76, at 15.

Under "Count 5 Conspiracy to Deny Constitutional Rights," the Plaintiffs assert that "[t]he City Defendants, aware of Plaintiffs' rights to due process and equal protection, acted deliberately to deny the right to a hearing, one of the most fundamental rights of public employees subjected to wrongful disciplinary actions."  Complaint ¶ 78, at 15.  "In particular," according to the Plaintiffs, "Paula Forney, the Personnel Hearing Officers, the Personnel Board, and Bruce Rizzieri and other City officials met, discussed, and arranged for the denial of Plaintiffs' due process and equal protection rights."  Complaint  79, at 15.

Under "Count 6 Unfair Labor Practices," the Plaintiffs state that, "[l]ong after the submission of NMTU's majority petition for representation of the Transit drivers' bargaining unit in March, 2011, and the expiration of the Collective Bargaining Agreement on June 30, 2011, the City and Transit Department continued recognizing AFSCME as the exclusive bargaining and grievance representative."  Complaint ¶ 81, at 15-16.  According to the Plaintiffs,

> [t]he City and its Labor Board have ignored and opposed the legitimate representational interests of NMTU, discarded NMTU's prohibited practice complaints without hearings, insisted on an election when none was needed, and then did nothing to support or enable NMTU to represent employees after it prevailed in the election.

Complaint ¶ 82, at 16.  The Plaintiffs maintain that "[t]he City's misconduct and the Hearing

Officers' and Personnel Board's lack of concern over -- and engagement in -- collusive tactics in this case, including biased hearing officers eager to dismiss rather than hear employee cases, and unethical and illegal conduct, clearly demonstrated the City's policy and practice with respect to the rights of its employees and the obligations of City management towards those employees." Complaint ¶ 83, at 16.  The Plaintiffs assert that they "are entitled to compensatory, declaratory, and injunctive relief for the City's failure to comply with its laws, failure to recognize and hear employee grievances, and collusive and conspiratorial conduct with respect to these and other employees' rights and grievances."  Complaint ¶84, at 16.

The Plaintiffs ask for the following forms of relief:

A.    Declaratory, injunctive and compensatory relief for denial of fair hearings and the rights to due process and equal protection of law;

B.    Damages for breaches of contract;

C.    Declaratory, injunctive, and compensatory relief and exemplary and punitive damages for violation of Jessica Tapia's right to privacy.

D.    Damages for negligence with respect to Ms. Tapia's injuries;

E.    Declaratory, injunctive, and compensatory relief for unfair labor practices and collusive misconduct between and among City officials and attorneys, the Personnel Board and its Personnel Hearing Officers and the Labor Board.

F.    Declaratory and injunctive relief requiring the City to hire or appoint a person to oversee, administer, and protect the Merit System and ensure a fair, neutral and effective personnel hearing process for City employees.

G.    Costs and attorneys' fees; and

H.    Such other and further relief as the Court deems just and proper.

Complaint ¶¶ A-H, at 16-17.

- 14 -

On March 4, 2013, the Defendants filed their Notice of Removal.  See Doc. 1.

On March 8, 2013, the City Defendants filed their Answer to Complaint for Violation of Statutory and Constitutional Rights, Breach of Contract, and Unfair and Prohibited Labor Practices, Affirmative Defenses and Counterclaim.  See Doc. 13 ("City Defendants' Answer"). The City Defendants raise two counterclaims: (i) malicious abuse of process, contending, in essence, that the Plaintiffs' claims are meritless and that they are abusing the legal process, see City Defendants' Answer ¶¶ 48-56, at 16-17; and (ii) prima facie tort, contending that the Plaintiffs have intentionally brought a meritless claim to harm the City of Albuquerque, see City Defendants' Answer ¶¶ 57-64, at 18-19.

On March 2013, Forney filed her Answer to Complaint for Violation of Statutory and Constitutional Rights, Breach of Contract, and Unfair and Prohibited Labor Practices by Defendant Paula Forney and Counterclaim.  See Doc. 15 ("Forney's Answer").  Forney raises counterclaims for malicious abuse of process and prima facie tort, largely for the same reasons that the City Defendants give.  See Forney's Answer ¶¶ 1-13, at 19-21.

## 2.    The Motion to Disqualify: The Undisputed Facts.

The Plaintiffs move the Court to disqualify Ms. Forney.  See Motion to Disqualify at 1. Ms. "Forney is a former Assistant City Attorney who now represents the City and City officials and employees on a contractual basis."  Motion to Disqualify ¶ 11.A, at 4 (setting forth this fact); Response to Motion to Disqualify ¶ 11.A, at 2 (not disputing this fact).[2]  Ms. Forney represents the City of Albuquerque, Berry, Perry, and Rizzieri "'officially' and the individual defendants

---

[2] The City Defendants do not dispute this fact, but assert that it is irrelevant.  See Response to Motion to Disqualify ¶ 3, at 2.  The Court will decide relevance in its analysis.

both individually and in their official capacities and as both defendants and Counter-Claimants."
Motion to Disqualify ¶ 1, at 1 (source of quotation marks unidentified)(setting forth this fact);
Response to Motion to Disqualify ¶ I.1, at 1 (not disputing this fact).[3]  Ms. Forney is both a
defendant and a counter-claimant "against Ms. Tapia, Ms. Aragon, and the New Mexico
Transportation Union."  Motion to Disqualify ¶ 1, at 1.  See Response to Motion to Disqualify
¶ I.1, at 1 (not disputing this fact).  Ms. Forney and her firm "'represent' these and other
Defendants in two other lawsuits in which Plaintiffs' counsel represents the employees that were
recently removed to this federal Court by Ms. Forney."  Motion to Disqualify ¶ 2, at 1-2 (citing
Salazar v. City of Albuquerque, No. CIV 13-0162 JCH/RHS ("Salazar II")(D.N.M. Jan. 31,
2014), and Roybal, et al., v. City of Albuquerque, No. CIV 13-0025 KG/KBM (D.N.M. Nov. 11,
2013)("Roybal")(source of quotation marks unidentified)(setting forth this fact).  See Response
to Motion to Disqualify ¶ 2, at 1-2 (not disputing this fact).

> In the fourth and oldest case, Salazar v. City of Albuquerque[ et al., No. CIV]
> 10-00645 JB/ACT [("Salazar I")], Paula Forney entered her appearance two years
> ago for only one defendant, former transit director Greg Payne, but she is now
> acting in that case, as in the more recent cases, as the attorney for the City and all
> the other defendants.

Motion to Disqualify ¶ 3, at 2.  See Response to Motion to Disqualify ¶ 3, at 2 (not disputing this
fact).[4]  "With the exception of the City[']s Labor and Personnel Boards and their hearing officers

---

[3] "The City Defendants object to plaintiffs putting unattributed quotation mark[s] around
certain words."  Response to Motion to Disqualify ¶ I.1, at 1.  The Court leaves the fact as the
Plaintiffs state it, because the Court gives the unattributed -- apparently rhetorical -- quotation
marks no significance.

[4] The City Defendants do not dispute this fact, but assert that it is irrelevant.  See
Response to Motion to Disqualify ¶ 3, at 2.  The Court will decide relevance in its analysis.

who have different counsel, and notwithstanding the fact that various other City attorneys . . . have entered appearances, Ms. Forney represents everyone in all four (this case, two Salazar cases, and the Roybal) cases."  Motion to Disqualify ¶ 3 n.1, at 2 (setting forth this fact).[5]

"In one or more of the four City of Albuquerque cases presently pending in the federal court, Ms. Forney represents: the City of Albuquerque," Berry, Rizzieri, Payne, former Mayor Martin Chavez, Deputy Human Resources Director Mary Scott, and Human Resources Director Vince Yermal, and she also "represents herself or is represented by counsel in each of the three recently removed cases."  Motion to Disqualify ¶ 4, at 2 (setting forth this fact).  See Response to Motion to Disqualify ¶ 4, at 2 (not disputing this fact).[6]  Further, "in each of the three cases Ms. Forney has filed counterclaims against the plaintiffs."  Motion to Disqualify ¶ 5, at 2.  See Response to Motion to Disqualify ¶ 5, at 2.[7]  These counterclaims "are filed on behalf of the City

---

[5] The City Defendants do not respond to this footnote to Paragraph 3 in the Motion to Disqualify -- unless they intended their response to Paragraph 3 in the Motion to Disqualify to address that footnote as well.  In either case, the City Defendants have not disputed this fact, and the Court, therefore, deems it undisputed.

[6] The City Defendants do not dispute this fact, but assert that it is irrelevant.  See Response to Motion to Disqualify ¶ 4, at 2.  The Court will decide relevance in its analysis.

[7] The Plaintiffs assert that "[t]hese counterclaims are patently frivolous and retaliatory."  Motion to Disqualify ¶ 5, at 2.  The City Defendants concede that "counterclaims against plaintiffs have been filed," but "deny that the counterclaims are frivolous and retaliatory and point out that if the counterclaims were so frivolous and retaliatory, plaintiffs should have filed motions to dismiss them.  No motion to dismiss or any other motion addressing those counterclaims has been filed in this case or any other case."  Response to Motion to Disqualify ¶ 5, at 2.  The Plaintiffs' characterization of these counterclaims is a legal argument and not a fact.  The Court will not, therefore, treat this characterization as a fact for purposes of the Motion to Disqualify.

of Albuquerque," Berry, Perry, Rizzieri, and Yermal; "she has also filed counterclaims on her

own in two of the cases." Motion to Disqualify ¶ 6, at 2. <u>See</u> Response to Motion to Disqualify

¶ 6, at 2 (not disputing this fact).[8]

"On August 4, 2011, Dr. Wagner-Mogle sent Jessica Tapia's medical records to Paula

Forney by facsimile." Motion to Disqualify ¶ 11.F, at 5 (setting forth this fact). <u>See</u> Response to

Motion to Disqualify ¶ 11.F, at 3 (not controverting this fact).[9] Forney returned Tapia's medical

records to Dr. Wagner-Mogle unread. <u>See</u> Response to Motion to Disqualify ¶ 11.F, at 3 (setting

---

[8] The City Defendants assert:

> The counterclaims are filed on behalf of the City Defendants in each case. The
> only case that is relevant here is <u>Roybal</u>; neither <u>Salazar</u> nor <u>Tapia</u> is relevant.
> Counterclaims have been filed on Ms. Forney's behalf in the cases in which she
> has been served. She has not been served in this case.

Response to Motion to Disqualify ¶ 6, at 2. The Court will decide relevance in the analysis.
        This paragraph poses mysteries for the Court. It makes no sense to say that proceedings
in this case are irrelevant to this case, and that another case is "[t]he only case that is relevant
here. . . ." Response to Motion to Disqualify ¶ 6, at 2. Adding to the mystery, Forney filed a
counterclaim in this case -- something that the Response to Motion to Disqualify implies she did
not do. <u>See</u> Forney's Answer ¶¶ 1-13, at 19-21.
        The Court finds the solution to this mystery in a different case: the identical paragraph
appears in the Response in Opposition to Motion to Disqualify Attorney Paula Forney ¶ 7, at 2,
filed July 23, 2013, in <u>Roybal</u> (Doc. 56). Forney has not filed a counterclaim in that case. In
short, the City Defendants' Response to Motion to Disqualify was based on an analogous
document in a different case, and, in editing that document, the City Defendants failed to change
certain relevant passages. As the Court will explain in the footnotes, this problem recurs
elsewhere in the Response to Motion to Disqualify.

[9] The City Defendants respond that it is "[u]ndisputed that Dr. Wagner-Mogle sent
Plaintiff Tapia's medical record to Ms. Forney" and "that Ms. Forney returned those medical
records, unread, to Dr. Wagner-Mogle, while informing counsel for Plaintiff Tapia." Response
to Motion to Disqualify ¶ 11.F, at 3. These additional statements do not controvert the Plaintiffs'
account of the facts; accordingly, the Court deems this fact undisputed.

forth this fact as undisputed).[10]  "Ms. Tapia objected to the unauthorized release of her medical records, but on September 9, 2011, Personnel Hearing Officer Patrick Bingham issued the subpoena for medical records requested by Ms. Forney and granted the City attorney permission to serve discovery on Ms. Tapia."  Motion to Disqualify ¶ 11.H, at 5 (setting forth this fact).  See Response to Motion to Disqualify ¶ 11.H, at 3 (not controverting this fact).[11]  "Tapia did not respond to the discovery served on her."  Response to Motion to Disqualify ¶ 11.H, at 3 (setting forth this fact as undisputed).[12]  "After Plaintiffs filed a Complaint on January 15, 2013, Ms. Forney filed a Petition to Remove the case to the federal court on March 4, 2013."  Motion to Disqualify ¶ 11.I, at 5 (citations omitted)(setting forth this fact).  See Response to Motion to Disqualify ¶ 11.I, at 4 (not disputing this fact).[13]  "On March 11, 2013, Ms. Forney, through counsel, filed an Answer to the Complaint and a Counterclaim against Vanessa Aragon, Ernest

---

[10] The Plaintiffs did not provide contrary evidence or file a reply; accordingly, the Court treats this fact as undisputed.

[11] The City Defendants state that this statement is "[n]ot disputed" and add that "Plaintiff Tapia did not respond to the discovery served on her."  Response to Motion to Disqualify ¶ 11.H, at 3.

[12] The Plaintiffs did not provide contrary evidence or file a reply; accordingly, the Court treats this fact as undisputed.

[13] The City Defendants assert that this statement is "[n]ot disputed" and add that "[t]he notice of removal was timely filed because Defendants filed an acceptance of service on March 1, 2013.  No motion to remand was filed by plaintiffs."  Response to Motion to Disqualify ¶ 11.I, at 4.  Although this was true at the time the City Defendants filed their Response to Motion to Disqualify, the Plaintiffs filed the "Plaintiffs' Motion to Remand" on December 5, 2013.  See (Doc. 73).

Lucero, NMTU, and Jessica Tapia."  Motion to Disqualify ¶ J, at 5 (setting forth this fact).  <u>See</u> Response to Motion to Disqualify (not controverting this fact).[14]

### 3.    <u>The Motion to Disqualify: Additional Allegations</u>.

In addition to those facts that the Court has deemed undisputed, the parties each raised additional allegations.  These allegations are not, however, undisputed: either an opposing party disputed them or their proponent did not support them with evidence.  The Court includes them to explain the dispute.  For clarity, the Court will present the allegations in the text, and the responses to those allegations, if any, in the footnotes.

The Plaintiffs assert:

> 7.    It appears unlikely that *any* of the parties, including the City of Albuquerque, has actually given informed consent for their joint and conflicted representation by Ms. Forney.  Nor did they choose Ms. Forney to represent them; rather, she was "assigned."

> 8.    Just as most (or all) of the defendants in these cases have *not* chosen their attorney or given consent to their joint representation, they also have not participated in the formulation of the pleadings.

Motion to Disqualify ¶¶ 7-8, at 3 (emphasis in original)(footnote omitted)(quoting Response to Motion for Default Judgment ¶ 6, at 2, filed in <u>Salazar I</u> September 24, 2012 (Doc. 62)).[15]

---

[14]    The City Defendants assert that "Ms. Forney's attorney filed an answer and counterclaim on her behalf," citing Forney's Answer.  Response to Motion to Disqualify ¶ 11.J, at 4.  The Court understands this statement to concede the fact.

[15]    The City Defendants dispute these allegations and contend that they are irrelevant: "The City Defendants object to plaintiffs putting unattributed quotation mark[s] around certain words.  Disputed and  irrelevant.  Any communications between an attorney and her or his clients is not subject to inquiry. Neither the attorney nor the client must prove the existence or content of any communication between them."  Response to Motion to Disqualify ¶ 7, at 2 (setting fort these facts)(citing Letter from David Tourek to William D. Slease).  <u>See</u> Response to Motion to Disqualify ¶ 8, at 2 (disputing the allegations in Motion to Disqualify ¶ 8, at 3, and

The Plaintiffs assert that Ms. Forney's representation and "filing of retaliatory counterclaims without informed consent of all the affected parties violates Rules 16-107, 16-307, and other New Mexico Rules of Professional Conduct."  Motion to Disqualify ¶ 9, at 3.  They allege that "[c]ollective representation of clients, under the facts and circumstances of this case, violates both State and national ethical requirements, including the American Bar Association's Model Rule of Professional Conduct 1.7, causes needless expense, compromises Plaintiffs' ability to litigate their claims, and constitutes abuse of the judicial process."  Motion to Disqualify ¶ 10, at 3.[16]

The Plaintiffs allege that:

> B.   Ms. Forney represented the City of Albuquerque before the City Personnel Board and its Hearing Officers in connection with the termination of Ms. Tapia's and Ms. Aragon's employment and in denying the union the opportunity and ability to represent the employees.[[17]]

---

stating that they are irrelevant).  The Court will decide relevance in its analysis.

[16] The City Defendants dispute these allegations, pointing the Court to a letter attached to their Memorandum in Opposition, in which "[t]he Disciplinary Board found that Ms. Forney had not violated the Code of Professional Responsibility."  Response to Motion to Disqualify ¶ 9, at 3.  See Response to Motion to Disqualify ¶ 10, at 3 (disputing the allegations in Motion to Disqualify ¶ 10, at 3).  Moreover, these statements are legal conclusions; accordingly, the Court will not treat them as facts for purposes of this motion.

[17] The City Defendants respond:

> B.   Disputed. Ms. Forney represented the City before the Hearing Officer on Plaintiff Tapia's case but was not involved with the representation of Plaintiff Aragon before the Hearing Officer. She did not deny the union its opportunity to represent union members. With regard to Plaintiff Tapia, the union entered its appearance and appeared on Tapia's behalf. The union chose not to comply with the orders of the Hearing Officer.

Response to Motion to Disqualify ¶ 11.B, at 3.

C.      On August 2, 2011, without informing Ms. Tapia's attorney, Ms. Forney scheduled a deposition and drafted and issued a subpoena for Ms. Tapia's medical records. Ms. Forney did not seek or secure a release.[18]

D.      The Subpoena drafted by Ms. Forney informed Ms. Tapia's personal physician that it was:

> for the medical records of patient, Jessica Tapia . . . requires you to appear for a deposition on August 18, 2011 at 10:00 a.m. . . . and bring with you: Any and all documents in your possession regarding Jessica Tapia, DOB: 7/13/1977; SS#: 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, beginning 01/01/2010 to the present." [sic][19]

E.      In a letter accompanying the Subpoena and deposition notice, Ms. Forney stated that:

> You can avoid the deposition by copying and forwarding to this office all records requested prior to the deposition. If we do not receive the records prior to the date of deposition, we will expect your appearance.[20]

G.      Dr. Wagner-Mogle did not secure, or request, any release or other authorization to provide Jessica Tapia's medical records to Ms. Forney. She did not notify Ms. Tapia that she was providing Ms. Tapia's medical records to the City's attorney.[21]

---

[18] The City Defendants respond:

C.      Disputed. Tapia's attorney was informed of both the deposition, which was subsequently vacated, and the issuance of the subpoena. *See also* Doc. 43, motion to dismiss filed on behalf of Paula Forney. Plaintiffs did not respond or object to the motion to dismiss filed on behalf of Paula Forney. Doc. 44.

Response to Motion to Disqualify ¶ 11.C, at 3.

[19] The City Defendants Respond: "The document speaks for itself. *See also* response to 11C, above." Response to Motion to Disqualify ¶ 11.D, at 3.

[20] The City Defendants respond: "The document speaks for itself. *See also* response to 11C, above." Response to Motion to Disqualify ¶ 11.E, at 3.

[21] The City Defendants state that "[t]he City has no information to admit or deny the

- 22 -

* * * *

J.      On March 11, 2013, Ms. Forney, through counsel, filed an Answer to the Complaint and a Counterclaim against Vanessa Aragon, Ernest Lucero, NMTU, and Jessica Tapia. (Doc. 15).[22]

K.      Defendants' answers to the allegations in the Complaint fail to distinguish between the City and the individual defendants; all responses are the same for the City and the individuals, and all responses by the City Defendants are the same as those submitted by Ms. Forney on her own behalf.  The answers are the same for every allegation in the Complaint for the City, Mayor Berry, Mr. Perry, Mr. Yermal. Ms. Forney and the City Personnel Board.[23]

L.      Defendants all contend that the same allegations in Plaintiffs' Complaint "speak for themselves" or "call for a legal conclusion" and therefore they erroneously contend they do not need to respond to those allegations.[24]

M.      With her assertion of a personal counterclaim, Ms. Forney places her own interests further into play and her status as a Defendant and her counterclaim against Plaintiffs disqualifies her from representation of the City and its Defendant officials against Plaintiffs' claims at the same time in the same case.[25]

---

statements in paragraph 11G and therefore denies them."  Response to Motion to Disqualify ¶ 11.G, at 3.

[22] The City Defendants assert that "Ms. Forney's attorney filed an answer and counterclaim on her behalf," citing Forney's Answer.  Response to Motion to Disqualify ¶ 11.J, at 4.

[23] The City Defendants assert that this fact is "[d]isputed."  Response to Motion to Disqualify ¶ 11.K, at 4.  They continue: "City Defendants have not compared their responses with those of Ms. Forney. City Defendants do not dispute that their responses are the same for each individual because, if they would have filed separate answers on behalf of the individuals, those responses would have been the same."  Response to Motion to Disqualify ¶ 11.K, at 4.

[24] "The City Defendants object to plaintiffs putting unattributed quotation mark[s] around certain words. Disputed. City Defendants point out that plaintiffs did not move to strike the answer, or move for a more definite statement, therefore the admissions and denials in that answer remain in effect."  Response to Motion to Disqualify ¶ 11.L, at 4.

[25] The City Defendants dispute this fact, citing the discussion in their Memorandum in

- 23 -

> N. By their assertion of a counterclaim against Plaintiffs, the individual City officials arguably waived any immunities they may have otherwise asserted.[26]

Motion to Disqualify ¶¶ B-N, at 4-6 (sources of block quotes unattributed). In the Plaintiffs' view, these

> allegations and facts demonstrate that Ms. Forney and the City of Albuquerque are acting in violation of Rule 16-107 N.M. Rules of Professional Conduct and Rule 1.7 of the American Bar Association[']s rules Model Rules of Professional Conduct as well as other related rules and ethical considerations under both sets of ethical rules.

Motion to Disqualify ¶ 12, at 6.[27] They also allege that, in a pleading that Forney filed in a different case, she "falsely states that Plaintiffs['] counsel filed a complaint with the New

---

Opposition. They also assert that "Ms. Forney has not been personally served with the complaint in this matter therefore she filed no counterclaim in this case. *See* Doc. 49 (motion to dismiss Ms. Forney due to lack of service)." Response to Motion to Disqualify ¶ 11.M, at 4. This quoted statement is incorrect: Document 49 is not a motion to dismiss because of lack of service. Again, the City Defendants appear to have copied and pasted the statement from a Response in the <u>Roybal</u> case, in which Document 49 is such a motion. <u>See</u> Motion to Dismiss Defendant Paula Forney, filed in <u>Roybal</u> July 1, 2013 (Doc. 49).

[26] The City Defendants assert that "[t]his is an issue of law to be decided by the Court." Response to Motion to Disqualify ¶ 11.N, at 4.

[27] The City Defendants dispute this fact, citing the Letter from The Disciplinary Board to Paul Livingston, in which

> [t]he Disciplinary Board determined there was "insufficient evidence to support the allegations that Ms. Forney violated the Rules of Professional Conduct. . . [sic] We believe that Ms. Forney's Response in federal court to your Motion is persuasive. Additionally, she and City assure us that no conflict exists between or among the defendants, or between herself and the defendants." The Disciplinary Board concluded that Mr. Livingston had presented no evidence of a conflict between any defendant or between any defendant and Ms. Forney.

Response to Motion to Disqualify ¶ 12, at 4.

Mexico Bar Association, raising the same issues in his motion and in fact, submitting the motion in support of the bar complaint."   Motion to Disqualify ¶ 13, at 6.[28]   "In fact," the Plaintiffs allege,

> counsel filed no such complaint.  Ms. Forney fails to inform the Court that it was *she* and Ms. Wardlaw[, another City of Albuquerque attorney], claiming to represent the interest of counsel[']s clients, who are maliciously prosecuting disciplinary complaints against Plaintiffs['] counsel for his litigation of this and other lawsuits and administrative proceedings.

Motion to Disqualify ¶ 14, at 7 (emphasis in original).  Accordingly, the Plaintiffs ask the Court to examine Ms. Forney's representation and decide if she is acting without her clients' informed consent, "and, if so, whether those and related ethical infractions and violations warrant

---

[28] The City Defendants respond:

> Disputed and irrelevant to this case. In <u>Salazar[ II]</u>, City Defendants referred to the complaint filed by plaintiff in that case as being filed before the New Mexico Bar Association. Rather, the complaint was filed with the Disciplinary Board of the New Mexico Supreme Court. Plaintiffs were aware of the appropriate means to pursue their complaint against Ms. Forney.  [Letter from The Disciplinary Board to Paul Livingston]. Counsel for plaintiff in this case, <u>Salazar[ II]</u> and <u>Roybal</u>, filed a complaint against Ms. Forney with the Disciplinary Board, which is part of the Supreme Court of the State of New Mexico, as opposed to the State Bar. According to the Disciplinary Board, counsel for plaintiffs submitted in support of his complaint against Ms. Forney a copy of the motion filed in [<u>Salazar II</u>, *see* Motion to Disqualify Attorney Paula Forney and Memorandum in Support, filed in <u>Salazar II</u> June 18, 2013 (Doc. 28)], to disqualify Ms. Forney from that case.   The conclusion reached by the Disciplinary Board was: "We found insufficient evidence to support the allegations that Ms. Forney violated the Rules of Professional Conduct. . . [sic] We believe that Ms. Forney's Response in federal court to [Mr. Livingston's] Motion is persuasive. Additionally, she and City assure us that no conflict exists between or among the defendants, or between herself and the defendants." [Letter from The Disciplinary Board to Paul Livingston].  The Disciplinary Board concluded that Mr. Livingston had presented no evidence of a conflict between any defendant or between any defendant and Ms. Forney in [<u>Salazar II</u>].

Response to Motion to Disqualify ¶ 13, at 5.

disqualification of Paula Forney as an attorney representing clients in this case."   Motion to Disqualify ¶ 14, at 7.[29]

The Defendants assert the following:

1.      Ms. Forney will not be a witness in any of the claims by or against plaintiff.

2.      At all relevant times, Ms. Forney was acting as an attorney, representing the City clients.

3.      At all relevant times, Ms. Forney's communication was a part of attorney-client communications which are protected.

4.      There is no conflict between defendants and the City, or among defendants.  See [citing Letter from David Tourek to William D. Slease, executed July 1, 2013, filed July 23, 2013 (Doc. 51-1)].

5.      At all relevant times, all City defendants were acting within the course and scope of their City employment.

6.      City Defendants did not object to Ms. Forney representing them. See [Letter from David Tourek to William D. Slease, executed July 1, 2013, filed July 23, 2013 (Doc. 51-1)].

_____

[29] The City Defendants respond:

Disputed.  See response to paragraph 16, above. Also, the Disciplinary Board found that the "history between [Mr. Livingston] and Ms. Forney is long and contentious, a fact that we hope does not come into play in [Mr. Livingston's] motion and this complaint." [Letter from The Disciplinary Board to Paul Livingston] (emphasis added). By referring to the complaint filed against Mr. Livingston, he is demonstrating that the complaint filed against him was the impetus for filing this motion and the other similar motions filed in Salazar and Roybal for disqualifying Ms. Forney from representing City Defendants.

Response to Motion to Disqualify ¶ 14, at 5-6.  The Court notes that, once again, the City Defendants appear to have derived this information from their response in Roybal: there was no "response to paragraph 16" in the Motion to Disqualify to which to refer.  In the response in Roybal, "paragraph 16" contained the content found in paragraph 13 in the Response to Motion to Disqualify.

       7.     The Disciplinary Board found that Ms. Forney did not violate the Rules of Professional Conduct.  [See Letter from The Disciplinary Board to Paul Livingston, executed July 9, 2013, filed July 23, 2013 (Doc. 51-2)].

Response to Motion to Disqualify ¶¶ II.1-II.7, at 6 (setting forth these facts).[30]

      **4.**       **The Motion to Disqualify: The Parties' Legal Arguments.**

      In their Motion to Disqualify Memo., the Plaintiffs substantially assert the same arguments that they raise in the Motion to Disqualify: that Forney violates rules 16-107 and 16-307 of the New Mexico Rules of Professional Conduct and rules 1.7 and 3.7 of the American Bar Association's Rules of Professional Conduct by representing "herself, the City of Albuquerque, the Mayor, the Chief Administrative Officer, and the Transit Department Director in this case." Motion to Disqualify Memo. at 1.  They say that Forney is almost certainly "aware of both the benefits and risks of group representation, as well as the ethical factors and implications raised by her concurrent representation of herself and multiple clients in the same case."  Motion to Disqualify Memo. at 1.  They argue that Forney's interests conflict with her clients' interests. See Motion to Disqualify Memo. at 1.  They also maintain that

> the conflict of interests among the parties represented by Ms. Forney is only part of the problem.  The other part, perhaps more significant, is the homogenization that Ms. Forney provides to the defendants['] cases.  Without consultation, often without knowledge or communication of any sort, defendants have relinquished their policy-making and related activities to their attorneys.  However, as with Ms. Forney's multiple representation and neglect of former Mayor Martin Chavez in Salazar I (at the same time she is filing frivolous counterclaims charging plaintiffs in three lawsuits with disparaging Mayor Berry's election aspirations) the City's representational scheme runs afoul of the law and principles of good government, and things start to unravel. That is what is happening here.

---

[30] The City Defendants note that Ms. Forney has waived her right to confidentiality with respect to the complaint filed against her.  See Response to Motion to Disqualify ¶ II.1 n.1, at 6. The City Defendants do not provide a source for most of these statements.

Motion to Disqualify Memo. at 2.

The Plaintiffs cite <u>Shabbir v. Pakistan International Airlines</u>, 443 F. Supp. 2d 299, 301 (E.D.N.Y. 2005), and <u>In re Snyder</u>, 472 U.S. 634 (1985), for the propositions that the Court has the authority and the responsibility "to uphold the applicable ethical precepts of the district in which it sits," and that the Court must balance "an individual's right to choose his own freely chosen counsel [with] the need to maintain the highest ethical standards of professional responsibility," asserting that "any doubt is to be resolved in favor of disqualification." Motion to Disqualify Memo. at 2 (internal quotation marks omitted). According to the Plaintiffs, the Defendants did not choose Ms. Forney, but she was assigned to do this work; therefore, in their view, "the right to their own freely chosen counsel is not at issue." Motion to Disqualify Memo. at 2 (internal quotation marks omitted). The Plaintiffs quote a pleading from <u>Salazar I</u> in which Forney relays that she was assigned to represent the Defendants. <u>See</u> Motion to Disqualify Memo. at 2-3. The Plaintiffs assert that the Court must disqualify an attorney "when there is a clear violation of the Code of Professional Responsibility and a significant risk of tainting the judicial process." Motion to Disqualify Memo. at 3. The Plaintiffs state that "[t]he guiding principle in considering motions to disqualify counsel is safeguarding the integrity of the court proceedings." Motion to Disqualify Memo. at 3 (internal quotation marks omitted).

The Plaintiffs quote rule 16-107 of the New Mexico Rules of Professional Conduct, which provides:

**RULE 16-107. CONFLICT OF INTEREST; CURRENT CLIENTS**

**A. Representation Involving Concurrent Conflict of Interest.** Except as provided in Paragraph B of this rule, a lawyer shall not represent a client if the

representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

> **B.   Permissible   Representation   When   Concurrent   Conflict   Exists.** Notwithstanding the existence of a concurrent conflict of interest under Paragraph A of this rule, a lawyer may represent a client if:
>
> > (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> >
> > (2) the representation is not prohibited by law;
> >
> > (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> >
> > (4) each affected client gives informed consent, confirmed in writing.

Rule 16-107 N.M.R.A.  See Motion to Disqualify Memo. at 3.  The Plaintiffs also quote the

following passage from the committee commentary to that rule:

> [18] Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client. *See* Rule Paragraph E of Terminology of the Rules of Professional Conduct (informed consent). The information required depends on the nature of the conflict and the nature of the risks involved. When representation of multiple clients in a single matter is undertaken, the information must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved.

Rule 16-107 N.M.R.A. Committee Commentary ¶ 18.  See Motion to Disqualify Memo. at 4.

The Plaintiffs assert that "[i]t cannot be denied that Ms. Forney has taken on and is currently

engaging in representation of multiple clients in a single matter without discussion or consideration of the implications of the common representation and the advantages and risks involved." Motion to Disqualify Memo. at 4 (internal quotations and alteration omitted). Citing a student note from the Yale Law Journal, the Plaintiffs argue that, when a municipal attorney represents both a municipality and an official of the municipality in a § 1983 lawsuit, that representation may run afoul of Rule 1.7 of the American Bar Association's Model Rules of Professional Conduct and its equivalents that states have enacted. See Motion to Disqualify Memo. at 4-5 (quoting Dina Mishra, Note, When the Interests of Municipalities and Their Officials Diverge: Municipal Dual Representation and Conflicts of Interest in § 1983 Litigation, 119 Yale L.J. 86 (Oct. 2009); Ann. M. Scarlett, Representing Government Officials in Both Their Individual and Official Capacities in Section 1983 Actions after Johnson v. Board of County Commissioners, 45 Kan. L. Rev. 1327 (July 1997)("An attorney representing municipal officials in both individual and official capacities faces a potentially impermissible conflict of interest, because municipal officials are trying to prove they acted pursuant to official policy or custom while the municipality is trying to prove the opposite." (alteration omitted)).

According to the Plaintiffs, "the most important reason to require counsel to be free of conflicts is the duty of loyalty to the client, and what that means for the judicial system." Motion to Disqualify Memo. at 5 (citing Anderson v. Eaton, 211 Cal. 113, 293 P. 788 (1930)). The Plaintiffs assert that "Forney's joint and multiple representation of the government and government officials in this case cannot possibly be reconciled with her duty of loyalty to one or another of her 'clients.' The concept of shared loyalty, if possible at all, must be controlled through the use of informed consent." Motion to Disqualify Memo. at 5 (quotation unattributed).

- 30 -

The Plaintiffs state that Forney will deny the existence of a conflict, "even between two political rivals such as Mayor Berry and former Mayor Chavez," but argues that "'(a)n objective standard is used' and a 'subjective belief that no conflicts existed is irrelevant.['] The New Mexico Court notes that '(v)iewed objectively, the facts speak for themselves.'"  Motion to Disqualify Memo. at 6-7 (quoting In the Matter of Stuart L. Stein, Esquire, 2008-NMSC-013, 143 N.M. 462, 468-69, 177 P.3d 513, 519-20).

The Plaintiffs also argue that Forney's representation of multiple clients and the City of Albuquerque violates other rules of professional conduct.  See Motion to Disqualify Memo. at 6. Particularly, they point to rule 16-102, which provides that "a lawyer shall abide by a client's decisions concerning the objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued. . . .  A lawyer shall abide by a client's decision whether to settle a matter."  Motion to Disqualify Memo. at 6 (quoting Rule 16-102 N.M.R.A.). The Plaintiffs assert that there is no reason to believe that Forney has discussed the means by which she is to pursue the objectives of her representation, and that

> [t]his practice also violates Rule 16-104, which requires a lawyer to "consult with the client about the means by which the client's objectives are to be accomplished" and which provides that "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

Motion to Disqualify Memo. at 6 (emphasis omitted)(quoting Rule 16-104 N.M.R.A.). According to the Plaintiffs, after looking at all four cases in which Forney is involved and the number of clients that she simultaneously represents, "Ms. Forney's personal interests, and representation of the City of Albuquerque all at the same time, Ms. Forney would surely find it impossible to fashion a coherent explanation."  Motion to Disqualify Memo. at 6-7.  The

Plaintiffs assert that her conduct implicates additional ethical rules:

> Rule 16-113 concerns representing an "Organization as client," and provides that a lawyer representing an organization may also represent any of its employees" or other constituents. With respect to consent of the City, Rule 16-113 provides that:

>> G. Personal representation of officer or employee. A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, *subject to the provisions of Rule 16-107 of the Rules of Professional Conduct*. If the organization's consent to the dual representation is required by Rule 16-107 of the Rules of Professional Conduct, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented.

> . . . .

> Rule 16-304 requires "Fairness to opposing party and counsel," and Rule 16-307 prohibits a lawyer from "act(ing) as advocate at a trial in which the lawyer is likely to be a necessary witness."

Motion to Disqualify Memo. at 7 (emphasis in Motion to Disqualify Memo.).

The Plaintiffs also suggest that, because Forney "is conflicted among her own interests, the individual clients' interests, and the interests of the City of Albuquerque, and who fails to provide her clients with any explanation or opportunity to consent is largely incapable of engaging in" what they call a lawyer's "[m]ost important[]" ethical obligation: "engaging in zealous advocacy or competently, diligently, or loyally representing even two clients in the same case, to say nothing at all of the conflicting interests demonstrated in these cases." Motion to Disqualify Memo. at 7.

The Plaintiffs also raise arguments particular to the § 1983 context: they point out that, after Monell v. Department of Social Services, 436 U.S. 658 (1978), "the interests of a municipality and its employees inherently conflict[]: the municipality avoids liability by showing

the employee *was not* acting within the scope of his official duties, while the employee may avoid liability by showing he *was* acting within the scope of his duties." Motion to Disqualify Memo. at 8 (emphasis in original)(citing Dunton v. Cnty. of Suffolk, 729 F.2d 903 (2d Cir. 1984)). They cite Arthur v. City of Galena, 2004 WL 2331920 (D. Kan. June 2, 2004), where the

> Plaintiff sued the City, the City Manager, and members of the City Commission. He moved to disqual[]ify the attorneys representing both the City and the remaining individual defendants on the basis of an inherent conflict of interest. The Court discussed its authority and how it would proceed:
>
> > The Court has the inherent power to disqualify counsel "where necessary to preserve integrity of the adversarial process." . . . A motion to disqualify must be decided on its own facts, and the Court must carefully balance the interest in protecting the integrity of the judicial process against the right of a party to have the counsel of its choice. . . . The moving party bears the initial burden of going forward with evidence sufficient to establish a prima facie case that disqualification is warranted. The ultimate burden of proof, however, lies with the attorney or firm whose disqualification is sought.

Motion to Disqualify Memo. at 8 (quoting Arthur v. City of Galena, 2004 WL 2331920, at *1 (source of internal quotation not identified). The Plaintiffs state that Arthur v. City of Galena referred to Johnson v. Board of County Commissioners, 85 F.3d 439 (10th Cir. 1996), in which the United States Court of Appeals for the Tenth Circuit declined to adopt a per se rule, but held that, "if a 'potential conflict matures into an actual material conflict, separate representation would be required.'" Motion to Disqualify Memo. at 9 (quoting Johnson v. Bd. of Cnty. Comm'rs, 85 F.3d at 493-94). According to the Plaintiffs, the Tenth Circuit in Johnson v. Board of County Commissioners adopted a procedure that the United States Court of Appeals for the Second Circuit had adopted, citing Kounitz v. Slaatten, 901 F. Supp. 650, 658-59 (S.D.N.Y.

1995):

> This procedure requires counsel to notify the district court and the defendants of the potential conflict and submit to the district court for determination the issue of whether the defendants fully understand the potential conflict and, if so, whether the defendants choose joint representation.  The Court went on to note that the individual defendants should be told it is advisable that he or she obtain independent counsel on any individual capacity claim.

Motion to Disqualify Memo. at 9 (quoting Arthur v. City of Galena, 2004 WL 2331920, at *8; citing Galindo v. Town of Silver City, 127 F. App'x 459 (10th Cir. 2005)(unpublished)).  The Plaintiffs continued:

> In Johnson[ v. Board of County Commissioners], the Tenth Circuit Court's characterization of the Second Circuit's process "indicates the court itself will ensure, by examination or otherwise, that the defendants are aware of the conflict and are submitting an informed consent.["] The Court wanted to make clear "that, as with many issues relating to the relationship between attorney and client, the crucial element is adequate communication."   Johnson[ v. Board of County Commissioners], 85 F.3d at 494.

Motion to Disqualify Memo. at 9.

According to the Plaintiffs, the Second Circuit in Dunton v. Cnty. of Suffolk noted that both sides must bring a conflict of interest that multiple-client representation causes to the Court's attention.  See Motion to Disqualify Memo. at 9-10 (citing Dunton v. Cnty. of Suffolk, 729 F.2d at 909).  They reemphasize that, in their view, "the right of parties to choose their own counsel[, although] generally important, . . . is hardly a factor here."  Motion to Disqualify Memo. at 10.

The Plaintiffs also assert that, because the Defendants' papers "are filed as group submissions," they have been prejudiced by multiple representation.  Motion to Disqualify Memo. at 10.  They maintain that, unless each defendant responds to each allegation in the

Complaint, "no individual defendant has a voice or a meaningful response to the factual allegations and hence, everything is either denied or the product of the defense counsel's opinion or invention."  Motion to Disqualify Memo. at 10.  "Moreover," the Plaintiffs say, "the City 'representation' of its Labor Board, Personnel Board, and Personnel Hearing Officer, by another attorney, apparently without any knowledge of or communication with the Boards, is only another demonstration of the City's lack of ethical guidance and understanding."  Motion to Disqualify Memo. at 10 (quotation unattributed).

> The Plaintiffs conclude by saying that

> Forney removed this case to the federal court and purports to represent the City and all the named Defendants as well as herself through counsel. Ms. Forney concurrently represents individuals and officials whose interests conflict.  She engaged in (was "assigned to") representation and continued that representation without the 'informed consent' of her clients, i.e., without any assessment, evaluation, or communication of the risks, benefits, effects and ramifications of her collective representation, her concurrent representation of the City of Albuquerque, or the course of litigation chosen by the City's counsel without consultation with her clients. Other matters, such as the filing of counterclaims against plaintiffs and related activities have occurred without the informed consent of the individual and official defendants *or* the City of Albuquerque.

> Accordingly, Plaintiffs respectfully request that the Court disqualify Paula Forney as attorney representing the City *and* its defendant officials and individuals in this case on the grounds that her representation of different clients concurrently, some or many with adverse interests, violates the relevant provisions of the Code of Professional Conduct and is prejudicial to Plaintiffs and the administration of justice in this case.

Motion to Disqualify Memo. at 10-11.

In their Response to Motion to Disqualify, the City Defendants assert that the Court should deny the Motion to Disqualify for the following reasons:

> First, plaintiffs, in this motion, do not identify any conflicts, actual or potential, between any defendant or between Ms. Forney and defendants.  Second, there is

> no evidence or arguments that there are any actual or potential conflicts between any defendant or Ms. Forney and any defendant. Third, Ms. Forney will not be a witness in this case. Fourth, the purpose of plaintiffs filing this motion is to try to have some input in selecting the attorney to represent the City defendants and to attempt to make Ms. Forney a witness which, plaintiffs erroneously believe, will prevent her from representing the City defendants. Opposing counsel should not have a say in selecting an opponent's attorney either by naming her as a witness or by alleging some undisclosed conflict.

Response to Motion to Disqualify Memo. at 1-2. The City Defendants note that the party seeking disqualification bears the burden of establishing that counsel should be disqualified, and maintain that the Plaintiffs have not carried that burden. See Response to Motion to Disqualify at 2 (citing Roy D. Mercer, LLC v. Reynolds, 2013-NMSC-002, 292 P.3d 466, 471). Globally, the City Defendants note that the Plaintiffs have filed the motion -- not a defendant -- and that, as a general rule, "[a] party has the right to be represented by an attorney of his or her own choosing," and "[t]he Court may reject a party's chosen counsel only if a compelling reason exists that supports the disqualification of counsel." Response to Motion to Disqualify Memo. at 3 (citing Sanders v. Rosenberg, 1996-NMSC-002, 122 N.M. 692, 694, 930 P.2d 1144, 1146). Moreover, they state that both the Supreme Court of New Mexico and the Tenth Circuit have recognized that parties frequently use such motions to disqualify as a litigation tactic. See Response to Motion to Disqualify Memo. at 3 (citing Chappell v. Cosgrove, 1996-NMSC-020, 121 N.M. 636, 639, 916 P.2d 836, 839; Chavez v. New Mexico, 397 F.3d 826, 839-40 (10th Cir. 2005)). Accordingly, the City Defendants assert that "[t]he Court should view this motion with skepticism." Response to Motion to Disqualify Memo. at 4. They continue:

> Only a former or current client has standing to bring a motion to disqualify counsel on the basis of a conflict of interest. In re Yarn Processing Patent Validity Litig., 530 F.2d 83 (5th Cir. 1976)(often cited in standing cases); Great Lakes Constr., Inc. v. Burman, 114 Cal. Rptr. 3d 301, 309 (Ct. App. 2010)("We

do not agree because [movant] cannot show any legally cognizable interest that is harmed by [the attorney's] joint representation of their adversaries"); Cunningham ex. rel. Rogers v. Anderson, 887 N.Y.S.2d 712, 713 (App. Div. 2009)("As [movant] has never been represented by [the attorney], [the attorney] does not owe [movant] the duty necessary to confer [movant] with standing to challenge [the attorney's] continued representation of [non-movant] in this action").  Plaintiffs are neither former nor current clients of Ms. Forney in this case.

Response to Motion to Disqualify Memo. at 4.  In essence, the City Defendants assert that the

> Plaintiffs are seeking to disqualify Ms. Forney hoping to obtain another defense counsel more to their liking than Ms. Forney.  Evidently, defendants do not have any difficulty with Ms. Forney's representation of them. [See Letter from The Disciplinary Board to Paul Livingston].  No defendant has identified a conflict.  No defendant has requested separate counsel.  No defendant has participated in the filing of this motion.  Only plaintiffs request a different attorney to represent defendants.  Defendants have chosen their own attorney: the Court should not permit plaintiffs to cho[o]se who is going to represent defendants.

Response to Motion to Disqualify Memo. at 4.  The City Defendants maintain that such "tactical use of attorney-misconduct disqualification motions is a deeply disturbing phenomenon in modern civil litigation."   Response to Motion to Disqualify Memo. at 4.   In their view, erroneously disqualifying counsel "in essence permits the party's opponent to dictate his choice of counsel," which "is in serious tension with the premises of our adversary system."  Response to Motion to Disqualify Memo. at 4-5.  They assert that the

> Plaintiffs are attempting to interfere with the relationship between defendants and their attorney. In their motion, they state that "[without] consultation, often  without knowledge or communication of any sort, defendants have relinquished their  policy-making and related activities to their attorneys." [Motion to Disqualify at 2].  Whether Ms. Forney communicated with her clients and her alleged infringement on her clients' policy making and related activities is irrelevant to plaintiffs and this motion.  There is absolutely no evidence to support this or the "fact" that Ms. Forney is invading the province of her clients' duties. There is absolutely no justification for plaintiffs to inquire into or be involved with the communication between an attorney and her clients.  This motion

- 37 -

indicates how desperately plaintiffs want to impinge on the attorney-client relationship between defendants and Ms. Forney.  They have no standing to file this motion. The Court should prevent this invasion by denying the motion.

Response to Motion to Disqualify Memo. at 5.

The City Defendants also contend that they and their counsel do not, as the Plaintiffs' arguments suggest, owe the Plaintiffs or their counsel duties to protect defendants.  See Response to Motion to Disqualify Memo. at 5-6 (citing Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A., 1988-NMSC-014, 106 N.M. 757, 750 P.2d 118).  Moreover, they state that the Plaintiffs' predicate their disqualification argument on an alleged violation of the Rules of Professional Conduct and argue that, under Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A., the Rules of Professional Conduct do not create a cause of action.  See Response to Motion to Disqualify Memo. at 6.  The City Defendants continue:

> In fact, the Disciplinary Board of the Supreme Court of the State of New Mexico concluded, on a complaint filed by plaintiffs' counsel here on cases with a similar procedural posture, [Salazar I and Salazar II,] held that Ms. Forney had violated no Rules of Professional Conduct.  [Letter from The Disciplinary Board to Paul Livingston.]  While this conclusion is not binding on this Court it indicates that the Disciplinary Board has conducted an investigation into the allegations against Ms. Forney in a similar situation and concluded that her actions did not violate any Rules of Professional Conduct.

Response to Motion to Disqualify Memo. at 6.  The City Defendants also point out that Shabbir v. Pakistan International Airlines, on which the Plaintiffs rely, expresses a skeptical view of motions to disqualify opposing counsel.  See Response to Motion to Disqualify Memo. at 7 (quoting at length Shabbir v. Pakistan Int'l Airlines, 443 F. Supp. 2d at 301).

In sum, the City Defendants argue, the City of Albuquerque chose its counsel, the Court should view the Motion to Disqualify with cautious scrutiny, and, in light of the lack of evidence

- 38 -

of a conflict of interest or any other ethical conduct, "[t]here is thus no justification for separating defendants from their chosen attorney."  Response to Motion to Disqualify Memo. at 7 (internal quotation marks and alterations omitted).

The City Defendants also argue that the Plaintiffs have not carried their burden to identify actual or potential conflicts of interest.  See Response to Motion to Disqualify Memo. at 7-8. They state that the Tenth Circuit and other courts have restricted Dunton v. County of Suffolk, and have skeptically viewed a motion in which a "party seeks disqualification of opposing counsel based on allegedly deficient representation of the opposing party where the moving party would benefit from the disqualification rather than the represented client."  Response to Motion to Disqualify Memo. at 8.  The City Defendants argue that there is no conflict of interest, and that, even if there is a potential for such a conflict, the City Defendants have consented to Forney's representation and the Plaintiffs' counsel should not interfere in that decision.  See Response to Motion to Disqualify Memo. at 8 (citing Letter from David Tourek to William D. Slease).  They also state that the Plaintiffs have identified neither an argument for nor evidence of such a conflict, and that the Court should, therefore, deny the Motion to Disqualify.  See Response to Motion to Disqualify Memo. at 8-9.

With respect to rule 16-307, the City Defendants note that there is a multi-factor standard for determining whether an attorney will be a "necessary witness" within the rule's meaning:

> We hold that an attorney may not be disqualified under Rule 16-307 absent a showing by the party seeking disqualification that the attorney's testimony is material to an issue in the case, that the evidence to be elicited from the attorney's testimony is not available from another source, and that the attorney's testimony is potentially prejudicial to his client's case.

Response to Motion to Disqualify Memo. at 9 (quoting <u>Chappell v. Cosgrove</u>, 121 N.M. at 640,

916 P.2d at 840).  Citing cases that have applied analogous standards, the City Defendants point

out that the

> plaintiffs do not address any of these factors.  They do not describe the nature of
> the proposed testimony to be elicited from Ms. Forney.  Neither the Court nor
> defendants can determine whether the evidence to be elicited will be relevant or
> material, whether he can obtain the evidence elsewhere and whether the ostensible
> evidence will be prejudicial to the City's interest.  Plaintiffs have not pointed to
> any testimony that Ms. Forney might give that would be adverse to her client's
> interests: "[m]ere speculation is not a sufficient basis . . . to disqualify an
> attorney" as a witness.  <u>McKenzie v. City of Omaha</u>, 668 N.W.2d 264, 269 (Neb.
> Ct. App. 2003).

Response to Motion to Disqualify Memo. at 10.  In short, the City Defendants state that the

Plaintiffs have not carried their burden, that Forney cannot be a necessary witness, and that the

Motion to Disqualify misuses the advocate-witness rule to the Plaintiffs' tactical advantage.  <u>See</u>

Response to Motion to Disqualify at 10-11.

 The City Defendants also contend that the proceedings in <u>Salazar I</u> are irrelevant, saying

that, in that case,

> a different plaintiff represented by the same counsel, sued the City and many of
> the same defendants as named here. An issue arose over whether Mayor Chavez
> had been served . . . .  New counsel could not determine whether service had been
> effected and did not respond to the First Amended Complaint.  Plaintiff in that
> case filed a motion for default judgment against Mayor Chavez.  Defendants
> responded pointing out the issue of service. Defendants also filed, in addition to
> the response, the response to the complaint on behalf of Mayor Chavez and a
> motion for extension of time to respond.  Plaintiff filed his motion for default
> despite the fact that the issues of Mayor Chavez having not filed an answer was
> discussed the day before at a hearing before Judge Browning on defendants'
> motion to dismiss. Thus, Mayor Chavez was not forgotten in Salazar and that case
> is no[t] relevant.
>
>  Even if Defendant Chavez was "forgotten," he has not been neglected" as
> plaintiffs allege. This forgetfulness and neglect does not create a conflict between

- 40 -

Defendant Chavez and the other defendants or between Defendant Chavez and Ms. Forney. This "forgetfulness" does not justify the Court or plaintiffs interfering with the attorney-client relationship. Plaintiffs have not identified such actual or potential conflict as a result of the alleged forgetfulness.

Response to Motion to Disqualify Memo. at 11-12.[31]

In response to the Plaintiffs' view that a court must disqualify an attorney "'when there is a clear violation of the Code of Professional Responsibility,'" the City Defendants assert that, keeping in mind that ethical violations do not create private causes of action, the Plaintiffs have "not identified any violation let alone a 'clear' violation of" ethical rules. Response to Motion to Disqualify Memo. at 12 (quoting Motion to Disqualify Memo. at 3).[32] The City Defendants argue that the Plaintiffs have not demonstrated that Forney's representation of multiple clients violates any specified rule. See Response to Motion to Disqualify Memo. at 12. Moreover, they point to the Letter from The Disciplinary Board to Paul Livingston:

> According to the Disciplinary Board, counsel for plaintiffs submitted in support of his complaint against Ms. Forney a copy of the motion filed in [Salazar I] to disqualify Ms. Forney. The conclusion reached by the Disciplinary Board was: "We found insufficient evidence to support the allegations that Ms. Forney violated the Rules of Professional Conduct. . . [sic] We believe that Ms. Forney's Response in federal court to your Motion is persuasive. Additionally, she and City assure us that no conflict exists between or among the defendants, or between herself and the defendants." [Letter from The Disciplinary Board to Paul Livingston]. The Disciplinary Board concluded that Mr. Livingston had presented no evidence of a conflict between any defendant or between any defendant and Ms. Forney.

---

[31] The City Defendants again appear to have copied and pasted material from briefing in another case. There is no Defendant Chavez in this case -- but there is one in Salazar II.

[32] Although the City Defendants cite the Motion to Disqualify, the quoted language is found in the Motion to Disqualify Memo. and not in the Motion to Disqualify.

Response to Motion to Disqualify Memo. at 13.  The City Defendants acknowledge that the Disciplinary Board's conclusions do not bind the Court, but note that the Disciplinary Board investigates complaints of attorney misconduct and "concluded that Ms. Forney did not violate any ethical standards of the State Bar."  Response to Motion to Disqualify Memo. at 13.

The City Defendants also state that their counterclaims for malicious abuse of process and prima facie tort, which allege "that plaintiffs were interfering with Defendant Berry's reelection campaign," does not create a conflict of interest between "Defendants Chavez and Berry," explaining:

> Plaintiff also alleges that simply because Mayor Chavez is a democrat and Mayor Berry is a republican this creates some sort of conflict.  [Motion to Disqualify at 7].  How such conflict is created is not explained.  There is [sic] no differing interests in defending against this lawsuit.  Further, the Albuquerque Mayoral election is non-partisan.

Response to Motion to Disqualify Memo. at 14 & n.3.[33]  The City Defendants allege that "[t]he defense is the same for all defendants, as stated in the motion for summary judgment filed in Salazar I[,] which defendant moved to incorporate in this case.  Salazar II, Doc. 5.  Likewise, the counterclaim against plaintiff is the same for all City counter-claim plaintiffs."  Response to Motion to Disqualify Memo. at 14.

The City Defendants also state that the Plaintiffs' argument that Forney has not been "held accountable"

---

[33]  The City Defendants again appear to have copied and pasted material from other briefing in another case without eliminating irrelevant material.  There is no Defendant Chavez in this case, and page seven of the Motion to Disqualify does not raise an argument with a partisan dimension.  An argument found on page seven of the Motion to Disqualify Attorney Paula Forney and Memorandum in Support, filed in Salazar II June 18, 2013 (Doc. 28), has a partisan dimension.

> misperceives the role of an Assistant City Attorney or contract attorney or any
> attorney for that matter. A governmental attorney is not a policymaker. The
> attorney follows instructions given by policymakers *i.e.* the attorney's clients.
> Thus, an attorney cannot be held "accountable" for following the instructions of
> the policymaker unless the instructions are illegal or unethical. No actions taken
> in this case were illegal or unethical or a violation of any rules, procedures,
> statutes or constitutional provisions.
>
> Further, Ms. Forney complied with all deadlines. Defendants moved for a
> stay pending the outcome of their motions for summary judgment and to dismiss.
> Plaintiffs did not respond to either the motion for stay or the motion for summary
> judgment/motion to dismiss. Defendants moved to strike plaintiffs' response to
> their counterclaim; no response was received from plaintiffs. All other defendants
> filed motions to dismiss/summary judgment. Again, plaintiffs have not responded
> to any of these motions.

Response to Motion to Disqualify Memo. at 14 (citations omitted)(quotations unattributed).

Accordingly, the City Defendants ask the Court to deny the Motion to Disqualify,

because

> Plaintiff has no standing to file this motion. If proof of a conflict of interest was
> necessary plaintiff has not presented any evidence to support his allegation of a
> conflict of interest. The motion is an ill-disguised attempt by plaintiff to interfere
> with the relationship between Ms. Forney and the City Defendants and to "elbow"
> her out of this litigation by alleging that he will call her as a witness. There is no
> merit to this motion and defendants respectfully request that it be denied.

Response to Motion to Disqualify Memo. at 14.

The Plaintiffs did not file a reply.

The Court held a hearing on November 1, 2103. See Transcript of Hearing, taken

November 1, 2013, filed November 8, 2013 (Doc. 63)("Tr."). The Plaintiffs asked the Court if

they could file a supplemental motion to disqualify and if the Court would forego hearing the

Motion to Disqualify. See Tr. at 68:13-15 (Livingston). The Court asked the Plaintiffs to

withdraw the Motion to Disqualify; the Plaintiffs' counsel resisted that course of action, saying

- 43 -

he would rather file a supplemental motion to add new facts.  <u>See</u> Tr. at 68:18-22 (Court, Livingston).  The Court asked the City Defendants about that course of action; the City Defendants stated that they wanted to proceed.  <u>See</u> Tr. at 68:23-69:5 (Court, Anderson).  The Court stated that it would not preclude the Plaintiffs from filing additional material, but told the Plaintiffs to proceed.  <u>See</u> Tr. at 69:6-11 (Court).

The Plaintiffs asserted that the Motion to Disqualify mainly centers on her representation of multiple clients, pointing out that she represents multiple people in <u>Roybal</u>, <u>Salazar I</u>, <u>Salazar II</u>, and this case, and that the Rules of Professional conduct do not permit that representation. <u>See</u> Tr. at 69:13-23 (Livingston).  The Plaintiffs submitted:

> We have pleadings that are inconsistent where, when you answer for five people and one person knows all about it and one person knows nothing about it and three of them know various things about it, you can't just provide one answer that says the allegation is denied.  Because you're then deceptively indicating that all people have the same knowledge, and that's what Ms. Forney's done with the pleadings here. The pleadings, in terms of a real answer, I mean, we've been criticized for filing general complaints, but the answers are even more general. They don't say who is saying what, who's denying what, who's admitting what, or who has sufficient evidence of what, and that kind of pleading practice is not acceptable.

Tr. at 70:2-13 (Livingston).[34]  The Plaintiffs also stated that, when Forney filed counterclaims on others' behalf,  she must inform her clients, and that, "if the Court were to examine that or if the Court were to allow us discovery, the Court would find that they do not know about it and that

---

[34] The Plaintiffs' attorney indicated that he would have filed a motion for judgment on the pleadings in light of this inconsistency.  <u>See</u> Tr. at 69:24-70:1 (Livingston).  The Court had, earlier during the hearing, granted the Motion for Stay of Proceedings and Memorandum in Support, filed March 28, 2013 (Doc. 28), and stayed proceedings pending the Court's disposition of the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment Dismissing Complaint in its Entirety, filed March 29, 2013 (Doc. 26).  <u>See</u> Tr. at 30;17-18 (Court).  The Court's Memorandum Opinion and Order, filed March 17, 2013 (Doc. 87), explains this decision.

they did not consent to it." Tr. at 70:20-23 (Livingston).  The Plaintiffs asserted that the clients have not provided informed consent to any of the motions that the Court considered.  See Tr. at 70:24-71:1 (Livingston).  The Plaintiffs noted that the City of Albuquerque and the Personnel Board had concurred in Defendant Carmen Wagner-Mogle, M.D.'s Motion to Dismiss, filed March 11, 2013 (Doc. 14), and asked

> How does that concurrence take place? Well, it should happen by their taking a vote, by their policy maker saying this is what we want to do.  But in fact, in the case of the Personnel Board, we know that they didn't do anything, because what they do with their attorney has to be on the record, and they have not met with their attorney according to the record.
>
> So how does a Personnel Board that hasn't ever met with its attorney, how do they concur in a doctor's motion that affects something in this case?  Well, the problem is they can't, and there's just this kind of representation that's virtual because it's whatever the lawyer says it is.  Whatever the lawyer says the position is, that's the position of the parties, and the parties never get to even know what their position is because the lawyer never tells them.

Tr. at 71:3-17 (Livingston).  The Plaintiffs expressed some frustration and confusion over who represents whom, asserted that the Court should hold an initial scheduling conference to resolve the issues, and stated that the confusion has arisen "because this case is not being managed correctly and needs to be." Tr. at 71:18-72:4 (Livingston).[35]

---

[35] The Plaintiffs' counsel had, earlier in the hearing, raised concerns about the Court's compliance with rule 16 of the Federal Rules of Civil Procedure -- specifically, the requirement that the Court hold a scheduling conference so that it may issue a scheduling order, which rule 16 requires the Court to issue "as soon as practicable, but in any event within the earlier of 120 days after any defendant has been served with the complaint or 90 days after any defendant has appeared." Fed. R. Civ. P. 16.  See Tr. at 6:12-20:2 (Court, Livingston).  While the Plaintiffs raised a proper concern, that concern does not affect the Court's disposition of the Motion to Disqualify.  Accordingly, the Court will not address the delayed setting of the scheduling conference in this Memorandum Opinion and Order, except to the extent necessary to explain this exchange.  The Court notes, however, that, promptly after the Plaintiffs sought a rule 16 scheduling conference, the Court set one: the Court held a scheduling conference on December

- 45 -

The City Defendants first noted an irony in the Plaintiffs' argument that the Motion to Disqualify was premature, because it was filed and argued before the scheduling conference: the Plaintiffs filed the Motion to Disqualify.  See Tr. at 72:9-13 (Anderson).  The City Defendants substantially reiterated their papers' arguments: there is no identified or known conflict; all defendants have the same defenses; no defendant has objected; and "[t]his is plaintiff trying to interfere with the attorney-client relationship and plaintiff interjecting himself into this issue." Tr. at 72:13-20 (Anderson).  They noted that, if the Court dismisses Paula Forney from the case and eliminates her counterclaim, his argument about her counterclaim disappears; moreover, they noted that, if the Court dismisses the federal claims, then the Court should remand the counterclaim to state court.  See Tr. at 72:21-73:1 (Anderson).  Moreover, the City Defendants stated that, "if the only thing standing in the way of dismissing this entire case would be the counterclaim, of course, the city would be willing to dismiss those causes of action as well.  The counterclaim is not something that, in this particular case, is reason" to disqualify Forney.  Tr. at 73:2-9 (Anderson).  The City Defendants also asserted that Forney and the Plaintiffs' counsel "have had a long, contentious relationship, and our opinion is that this is nothing more than Mr. Livingston again trying to harass, and this is a basis for a tactical way to get Ms. Forney off the case, and it completely lacks merit and it should not be granted."  Tr. at 73:10-15 (Anderson). The Court asked if Ms. Forney has met with her clients, if her clients understood any conflicts, and if her clients have waived those conflicts and consented to her representation; the City Defendants' counsel invited her to answer, but first stated:

3, 2013, see Clerks' Minutes, filed December 3, 2013 (Doc. 81), and issued a Scheduling Order, filed December 5, 2013 (Doc. 74).

What I do know is that the case was assigned to Ms. Forney from the City of Albuquerque. There's a lot of cases that Ms. Forney does for the City of Albuquerque, that she does an excellent job for the city. They have consented to her representation. She meets with them. They consult on these cases together. This is very typical of a lot of state government cases where one attorney represents several defendants in the case, government defendants, and if a potential conflict does eventually arise, then that is an issue.

I'll ask Ms. Forney if she's met specifically with the four defendants and turn it over.

THE COURT: Ms. Forney.

MS. FORNEY: Ms. -- Ms. Anderson said what I have done.

THE COURT: But have you either -- either met with them or sent them a letter explaining potential conflicts and had them waive the conflicts either in writing or orally?

MS. FORNEY: That's up to the city attorney. I get assigned by the city attorney. They took care of that. So I am assigned by the city attorney to represent the defendants. There -- they have all common defenses at this point. If a conflict requires, we'll deal with it when that [conflict] occurs, but it hasn't yet.

MS. ANDERSON: And Your Honor, I will point out one other issue on Exhibit A to the response in opposition to memorandum in support. There is a written letter stating that the city is unaware of any potential conflict, and if any potential conflict did exist, the city did away with that conflict, and that is in writing.

Tr. at 73:16-75:1 (Court, Anderson, Forney).

Forney's attorney then rose to put the dispute in perspective, saying that the case reflects "a long-standing I'll call it animosity between the attorneys" and that the dispute was harming the clients. Tr. at 75:5-15 (Green). Forney's counsel noted that attorneys, as officers of the court, cannot come before a court without resolving potential conflicts by, for example, meeting with their clients and getting their consent. See Tr. at 75:16-25 (Green). He further stated that such procedures happen frequently in civil cases:

- 47 -

Our firm represents the city.  The city attorney is actually the counsel of record in this case.  The city attorney is the designated representative for the city and the city parties unless there is an objection.  I don't think Ms. Forney can make any other comments because there's attorney-client privilege as to each of the individual defendants' positions and what may be discussed, but waiver is standard.  We, as a firm, in multiple cases and technically any case that has comparative fault and you have multiple defendants, you have a potential conflict, because it's on a basis -- assuming there's no joint and several liability -- that it's automatically a, quote, conflict because you're doing different percentages for different defendants.  Defendants know that.  You have meetings with your clients, and they waive.

Tr. at 76:1-16 (Green).  Forney's counsel also maintained that, if the Court would have to bring in witnesses dealing with how the City Defendants had managed potential conflicts,

then the same applies on the other side.  Has Mr. Livingston advised the union that he is suing -- they are suing Paula Forney personally and, if they are to proceed with that lawsuit, may they be subject to liability as well based on the counterclaim?  Mr. Livingston makes no representation that the union, its chairman, have made any such agreement on their side, and I don't think we have the right to ask them and I don't think the Court has the right to ask them, because Mr. Livingston is an officer of the court and, under his legal and professional obligations, would have had those discussions with them, and I'm not going to ask Mr. Livingston that.

Same applies, for example, with Ms. Aragon, who makes no complaint against Ms. Forney individually in the complaint, yet she files a personal complaint against Ms. Forney.  Does she know that?  Those are the same sorts of questions, and I think in terms of management, what it really is, is just a tactical procedure to try to throw the other side's counsel out, which comes down to the basis for the counterclaim, which is tortious interference with contract.

But I think from this Court's management position, the Court asked the question of counsel, counsel stated they complied with the legal and ethical obligations of counsel, and in my opinion, that should be the end of the discussion.  And of course, my opinion also that Ms. Forney should be out of the case as a party, and in turn, the plaintiffs in the case should be out of the case on any counterclaims.

Tr. at 76:17-77:20 (Green).  The Court asked whether Ms. Forney had complied with her ethical

responsibilities; the City Defendants' counsel confirmed that she had and stated that the

- 48 -

Disciplinary Board had "found that there's been no violation of any rules of professional conduct." Tr. at 77:21-5 (Court, Anderson).

The Plaintiffs stated:

I'm sure Your Honor recalls the question Your Honor made on the very similar subject of Mr. French, whether he had informed his clients about the conflict or possible conflict of interest in his dual represent -- multiple representation of their clients, and he said absolutely, and the Court never asked him whether it was in writing, but of course, it wasn't. He has no written waivers, nor does Ms. Forney have any written waivers. And Ms. Forney refused to answer the Court's question as to whether she had contacted each of the four clients that she supposedly has. She will not answer that because the answer is no. She has not contacted them. She has not advised them of anything, and they don't know what is going on in this case. In fact, the Personnel Board doesn't even know this case exists, Your Honor. And so we have an attorney representing the Personnel Board that hasn't even advised their client that the case exists.

As for the assignment of the case to Ms. Forney, the city's rules are very clear. They can only use an outside counsel when they don't have sufficient counsel of their own with enough experience or knowledge to represent the case. You've heard them say -- Ms. Forney say that her clients are represented by city attorneys. And in fact, I think there are four city attorneys in this case who've entered their appearance. Maybe it's only three. Where are they? They're not even here today. They don't even show up, because they've left everything, all the representation, including herself, her own representation, really, to Ms. Forney. She represents herself; she represents the city; she represents the mayor. In the Salazar case, she represents the former mayor at the same time she represents the present mayor, and there's no control over it.

Well, Your Honor told Mr. French whenever there's more than two clients in a case, I believe there's a conflict, or certainly, there's a strong potential for a conflict. In this case, there's actual conflict, Your Honor. There's actual real conflict, and the Court needs to ensure, for the sake of the integrity of the court -- not for my purposes, not because I want to get rid of Ms. Forney. In fact, one of the best things for my client is that Ms. Forney is in this case because she's got it all so fouled up.

But that's where we are, Your Honor. I think the motion to disqualify is absolutely necessary. I'm going to ask for reconsideration and file a supplement in the Salazar case where the Court has already ruled.

- 49 -

It's interesting that the Disciplinary Board matter has been brought up. There actually was no complaint against Ms. Forney, but there are actions going on in that Disciplinary Board against me and on Ms. Forney's complaint. So I will ask the Court to address that also since they're bringing that up in these various cases, and they are trying to control how I represent my clients and what I do to my clients, and Ms. Forney's allegation that I'm trying to control the city's representation is outrageous, Your Honor, in view of what she's doing with me in my representation of my clients.

Thank you.

Ms. Forney should be disqualified.  She can't represent everyone in the world.  She certainly can't represent all of the people in this case at the same time she's pretending to represent herself in everything, everything else.

Thank you.

Tr. at 78:10-80:19 (Livingston).

The Court took the Motion to Disqualify under advisement.  See Tr. at 80:24 (Court).

## LAW REGARDING MOTIONS TO DISQUALIFY AND THE NEW MEXICO RULES OF PROFESSIONAL CONDUCT

Two sources of authority govern motions to disqualify:

First, attorneys are bound by the local rules of the court in which they appear. Federal district courts usually adopt the Rules of Professional Conduct of the states where they are situated. Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law.  Therefore, motions to disqualify are governed by the ethical rules announced by the national profession and considered by the ethical rules announced by the national profession and considered in light of the public interest and the litigants' rights.

Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1383 (10th Cir. 1994)(citations and internal

quotation marks omitted).  The local rules for the United States District Court for the District of

New Mexico state: "The Rules of Professional Conduct adopted by the Supreme Court of the

State of New Mexico apply except as otherwise provided by local rule or by Court Order."

- 50 -

D.N.M. LR-Civ. 83.9. "The New Mexico Rules were patterned after the [American Bar Association's] Model Rules of Professional Conduct -- the rules which . . . reflect the national standard to be used in ruling on disqualification motions," <u>Cole v. Ruidoso Mun. Schs.</u>, 43 F.3d at 83, and the New Mexico Rules at issue do not differ from their counterparts in the ABA's Model Rules, <u>compare</u> Rule 16-107 N.M.R.A. <u>with</u> ABA Model Rule 1.7; <u>compare</u> Rule 16-307(A) N.M.R.A. <u>with</u> ABA Model Rule 3.7.

Rule 16-107 of the New Mexico Rules of Professional Conduct states:

**A. Representation Involving Concurrent Conflict of Interest.** Except as provided in Paragraph B of this rule, a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

**B. Permissible Representation When Concurrent Conflict Exists.** Notwithstanding the existence of a concurrent conflict of interest under Paragraph A of this rule, a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Rule 16-107 N.M.R.A.

Rule 16-307 of the New Mexico Rules of Professional Conduct states:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

    (1)  the testimony relates to an uncontested issue;

    (2)  the testimony relates to the nature and value of legal services rendered in the case; or

    (3)  disqualification of the lawyer would work substantial hardship on the client.

Rule 16-307(A) N.M.R.A. The Committee Commentary elaborates on subparagraph (3) of rule

16-307 of the New Mexico Rules of Professional Conduct. It states:

Subparagraph (3) of Paragraph A recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party. Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness.

Rule 16-307(A) N.M.R.A. Committee Commentary.

## LAW REGARDING DISQUALIFICATION OF A LAWYER AS WITNESS

A party has a right to be represented by an attorney of his or her own choosing; however,

that right is not absolute. See Sanders v. Rosenberg, 122 N.M. at 694, 930 P.2d at 1146. The

Court may reject a party's chosen counsel if a compelling reason exists that supports the

disqualification of counsel. See Sanders v. Rosenberg, 122 N.M. at 694, 930 P.2d at 1146. The

Court is entitled to exercise its discretion to disqualify a party's choice of counsel when the

counsel is a necessary witness under rule 16-307 of the New Mexico Rules of Professional

Conduct.  See Sanders v. Rosenberg, 122 N.M. at 694, 930 P.2d at 1146.

The Supreme Court of New Mexico has stated that the party seeking disqualification has the burden of establishing the necessity of an attorney's testimony as a witness at trial, holding:

> [A]n attorney may not be disqualified under Rule 16-307 absent a showing by the party seeking disqualification that the attorney's testimony is material to an issue in the case, that the evidence to be elicited from the attorney's testimony is not available from another source, and that the attorney's testimony is potentially prejudicial to his client's case.[36]

Chappell v. Cosgrove, 121 N.M. at 640, 916 P.2d at 840.

## ANALYSIS

The Court will deny the Motion to Disqualify.  Most of the bases for disqualification that the Plaintiffs raise lack a sound basis in the law or in the facts.  The Plaintiffs' counsel has used the arguments in the Motion to Disqualify in several cases.  The Court concludes that no evidence supports those arguments  and that the motion's purpose is to harass Ms. Forney.  The Court will, therefore, deny the Motion to Disqualify.  The Court may, however, revisit this decision based on the advocate-witness rule if the case proceeds to trial and if Ms. Forney is still a party.

The Tenth Circuit has warned that "[a] degree of skepticism is in order when one party seeks disqualification of opposing counsel based on allegedly deficient representation of the opposing party."  Chavez v. New Mexico, 397 F.3d at 40.    This case illustrates why skepticism

---

[36] The Supreme Court of New Mexico amended rule 16-307 after it entered its holding in Chappell v. Cosgrove.  When the Supreme Court of New Mexico entered its ruling in Chappell v. Cosgrove, rule 16-307 of the Supreme Court Rules of Professional Conduct stated: "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1)  the testimony relates to an uncontested legal issue; or (2)  the testimony relates to the nature and value of legal services rendered   in the case." Rule 16-307(A) S.C.R.A. 1986 (Repl. Pamp. 1995).

is the appropriate posture.  The feud between the Plaintiffs' counsel and Ms. Forney has a long and tortured history, having wound its way through multiple cases and through the disciplinary authority of the state bar association, consuming litigants' and tribunals' time and resources.  The Plaintiffs' counsel seems to be on a mission to disqualify Ms. Forney from representing the City of Albuquerque, filing substantially duplicative motions to disqualify in multiple cases.  In its response to the Plaintiffs' counsel's complaints about Ms. Forney, The Disciplinary Board recognized the long-standing animosity between the Plaintiffs' Counsel and Ms. Forney, and told the Plaintiffs' counsel that it "hope[d that this history] does not come into play in your motion and in this complaint."  Letter from The Disciplinary Board to Paul Livingston at 1.  The City Defendants have not helped matters: because this dispute has consumed so much of their time, they have, understandably, developed a stock response to the Plaintiffs' counsel's stock motion.  They have not, however, tailored that briefing well to this case: as the Court's footnotes illustrate, the City Defendants' briefing in this case rebuts arguments that the Plaintiffs raised in other cases, but did not raise in this case, and it addresses parties that are in other cases, but are not in this case.  Moreover, aside from the two letters that the City Defendants have attached, no party presented evidence, but only charges and counter-charges.  In short, the Plaintiffs did not carry their burden to show a prima facie case for disqualification, and the City Defendants did not provide much evidence to rebut that case.  This adversarial breakdown leaves the Court to decide the Motion to Disqualify based almost entirely on the parties' charges and counter-charges.

The Plaintiffs dismiss the notion that their actions implicate the right of parties to choose their own counsel, because, in a different case, Ms. Forney was assigned to represent the City of

Albuquerque.  This argument lacks a basis in logic.  The City of Albuquerque is entitled to use an assignment system to choose its attorney; a choice it makes using an assignment system is still a choice.   And interference by the Plaintiffs' counsel with the resulting relationship is interference with a party's right to counsel of choice, regardless whether that relationship came into being through an assignment system or some other method.[37]

The Plaintiffs' arguments related to various alleged conflicts of interest between Ms. Forney and the City Defendants lack a sound basis.  "As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification."  In Re Yarn Processing Patent Validity Litig., 530 F.2d. at 89.  The City Defendants have represented to the Court that Ms. Forney has complied with her ethical obligations, and the Plaintiffs have provided no evidence to back up their contrary allegations.  Moreover, the ethical duty of confidentiality and attorney-client privilege bar the Plaintiffs' counsel from prying open the relationship between the City Defendants and Ms. Forney to forage for evidence that Ms. Forney has -- despite the City Defendants' contrary representations, on the record, in open court -- breached her ethical obligations to her clients, either with respect to potential conflicts of interest or in any other way.  See United States v. Almeida, 341 F.3d 1318, 1323 (11th Cir. 2003)("[C]onfidential communications made during joint defense strategy sessions are privileged.").

The plaintiffs in this case could not come before the court and say, "It looks to us

---

[37] The Plaintiffs' counsel raised at the hearing for the first time an argument that City of Albuquerque's rules prohibit the City of Albuquerque from hiring Ms. Forney.  The Plaintiffs' counsel did not cite any authority for that proposition and, in any event, the Court is not aware of any authority that allows opposing counsel to seek to disqualify Ms. Forney on that basis.  Accordingly, the Court will not disqualify Ms. Forney on this basis.

like the opposing counsel has a conflict of interest and we demand that he disclose to us whether he has advised his clients of the conflict and that nevertheless they desire him to proceed." Such a statement is refuted by its mere utterance.

Ailing v. Am. Tool & Grinding Co., Inc., 96 F.R.D. 221, 225 (D. Colo. 1982)(Kane, J.)(denying a motion for relief under rule 60)(b) of the Federal Rules of Civil Procedure based on a conflict of interest). See also Order Denying Motion to Disqualify at 3-4, filed in Salazar II December 5, 2013 (Doc. 38)(Scott, M.J.)(denying the analogous motion to disqualify Ms. Forney that the Plaintiffs' counsel filed in Salazar II for similar reasons and explaining that "[a]ny discussions between Defendants and their attorneys would have been confidential and most likely privileged communications that Plaintiff would not be privy to."). For similar reasons, the contention of the Plaintiffs' counsel that Ms. Forney has taken positions without consulting her clients, his concern that Ms. Forney has not explained the benefits and risks of multiple-client representation and obtained her clients' informed consent, and his general allegations about her duties of loyalty also lack a sound basis: he has presented no evidence for these propositions and, given the attorney-client privilege, unlikely to be able to obtain such evidence. Indeed, because of the duty of confidentiality and the attorney-client privilege, it is hard to imagine evidence that could exist for him to possess and admit. All the Court is left with is the Plaintiff's counsel's assertions, and "the mere assertion that differing interests may arise is not sufficient to require disqualification of counsel." Smith v. Daggett Cnty. Bd. of Educ., 650 F. Supp. 44, 48 (D. Utah 1986)(Greene, J.).

Johnson v. Board of County Comm'rs is not to the contrary, because it applies more narrowly than the Plaintiffs suggest. That case involved the potential conflict between the defenses available to a government official sued in his individual and official capacities, and the

- 56 -

Tenth Circuit held

> that when a potential conflict exists because of the different defenses available to
> a government official sued in his official and individual capacities, it is
> permissible, but not required for the official to have separate counsel for his two
> capacities.  Obviously, if the potential conflict matures into an actual material
> conflict, separate representation would be required.

85 F.3d at 492 (citations omitted).  The Tenth Circuit elaborated:

> Though separate representation is permissible, an attorney may not
> undertake only the official capacity representation at his or her sole convenience.
> Under Colorado Rules of Professional Conduct, Rule 1.2(c), a lawyer may limit
> the objectives of her representation only "if the client consents after consultation."
> In the case where an attorney has been hired to represent a government official in
> only his official capacity in a suit where the official is also exposed to liability in
> his individual capacity but has no representation in that capacity, this rule serves
> an important function.  When adhered to properly, the rule ensures the defendant
> is adequately informed about the workings of 42 U.S.C. § 1983 and the potential
> conflict between the defenses he may have in his separate capacities.  Above all
> else, the attorney and the district court should ensure the official is not under the
> impression that the official capacity representation will automatically protect his
> individual interests sufficiently.  Courts have recognized a "need for sensitivity"
> to the potential for conflict in this area, and have advised that "[t]he bar should be
> aware of potential ethical violations and possible malpractice claims." Gordon v.
> Norman, 788 F.2d 1194, 1199 n.5 (6th Cir.1986)(quotation omitted). In the
> service of these interests, we embrace the Second Circuit's procedure whereby
> counsel notifies the district court and the government defendant of the potential
> conflict, the district court determines whether the government defendant fully
> understands the potential conflict, and the government defendant is permitted to
> choose joint representation.  See Kounitz v. Slaatten, 901 F. Supp [at 659].  In
> addition, the defendant should be told it is advisable that he or she obtain
> independent counsel on the individual capacity claim.  We reinforce that, as with
> many issues relating to the relationship between attorney and client, the crucial
> element is adequate communication.

85 F.3d at 493-94.  By its own terms, this multi-stage procedure does not apply with respect to

every conflict of interest, but applies "where an attorney has been hired to represent a

government official in only his official capacity in a suit where the official is also exposed to

liability in his individual capacity but has no representation in that capacity."  85 F.3d at 494.

- 57 -

That situation is not present here: the "potential conflict" is between Ms. Forney's interests and her clients' interests.   Moreover, the potential conflict between the City of Albuquerque's interests and the individual defendants' interests has not yet matured into an actual conflict. And the City Defendants have stated that Ms. Forney has complied with her ethical obligations.  If the potential conflict matures into an actual conflict, the Court may revisit this issue.

The Plaintiffs' contention that the City Defendants' collective pleadings and motions have prejudiced them lacks a sound basis.  Nothing bars the individual City Defendants from providing, as a group, common answers to common factual accusations and legal arguments.  If the Plaintiffs want particular answers to particular questions from particular defendants, they will need to use the tool that exists to facilitate those questions and answers: discovery.

Of the Plaintiffs' arguments, only the advocate-witness rule gives the Court some pause. Ms. Forney is a party, and that fact could create problems down the road.  By the same token, however, disqualifying an attorney only because a plaintiff named the attorney as a defendant would encourage pleading gamesmanship -- which, given the record between the attorneys in this case, the Court is loath to do.  Moreover, there is no evidence that her status as a party is creating problems for the Plaintiffs at this time.  Accordingly, for the time being, the Court will not disqualify Ms. Forney.

If the case proceeds to trial and if Ms. Forney remains a party, the Court may revisit this conclusion.  Although, as the City Defendants point out, the Plaintiffs did not argue that Ms. Forney is a necessary witness using the appropriate factors, the City Defendants cannot, at this early stage of proceedings support their factual statement that Ms. "Forney will not be a witness in any of the claims by or against plaintiff."  Response to Motion to Disqualify at 6.  Ms. Forney

is a party, and, although the parties have not briefed this issue, the Court doubts that case law interpreting the advocate-witness rule would bar the Plaintiffs from calling a defendant. The Court may, if necessary, revisit this issue -- but only if it becomes an actual issue that evidence supports and not merely a hypothetical issue that only speculation supports.

   **IT IS ORDERED** that the Plaintiffs' Motion to Disqualify Attorney Paula Forney, filed July 17, 2013 (Doc. 46), is denied.

_____

UNITED STATES DISTRICT JUDGE

*Counsel:*

Paul Livingston
Placitas, New Mexico

   *Attorney for the Plaintiffs and Counter-Defendants Jessica Tapia, Vanessa Aragon, New*
      *Mexico Transportation Union, and Ernest Lucero*
Rebecca E. Wardlaw
   Managing Assistant City Attorney
Samantha M. Hults
Steve D. Nichols
   Assistant City Attorneys
Albuquerque, New Mexico

--and--

Stephen G. French
Paula I. Forney
Erika E. Anderson
French & Associates, P.C.
Albuquerque, New Mexico

   *Attorneys for Defendants and Counter-Claimants City of Albuquerque, Richard Berry,*
      *Robert J. Perry, and Bruce Rizzieri*

Deborah D. Wells
Debra J. Moulton
Kennedy, Moulton & Wells, P.C.
Albuquerque, New Mexico

 *Attorneys for Defendant City Personnel Board*

Alfred L. Green, Jr.
Emily A. Franke
Neil R. Blake
Butt Thornton & Baehr, P. C.
Albuquerque, New Mexico

 *Attorneys for Defendant Paula Forney*

Lynn S. Sharp
Christopher Lee Moander
Charles P. List
Sharp Law Firm
Albuquerque, New Mexico

 *Attorneys for Defendant Carmen Wagner-Mogle M.D.*