## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JESSICA TAPIA,
VANESSA ARAGON, and
NEW MEXICO TRANSPORTATION UNION,
ERNEST LUCERO, Chairman,

        Plaintiffs,

vs.                                                    No. CIV 13-0206 JB/ACT

CITY OF ALBUQUERQUE,
RICHARD BERRY, Mayor,
ROBERT J. PERRY, Chief
Administrative Officer, BRUCE
RIZZIERI, Transit Dept. Director,
CITY PERSONNEL BOARD,
PAULA FORNEY, and
CARMEN WAGNER-MOGLE, M.D.,

        Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant City Personnel Board's Motion for Summary Judgment, filed October 30, 2013 (Doc. 55)("MSJ"); and (ii) Defendants City of Albuquerque, Berry, Perry and Rizzieri's Motion to Strike Plaintiffs' Response to Defendants [sic] Personnel Board's Motion for Summary Judgment, Doc. 64, and Memorandum in Support Thereof, filed November 22, 2013 (Doc. 67)("Motion to Strike"). The Court held a hearing on December 3, 2013. The primary issues are: (i) whether the law entitles the Defendant City Personnel Board ("Personnel Board") to absolute judicial immunity; and (ii) whether the Court will strike the Plaintiff's [sic] Opposition to City Personnel Board's Motion for Summary Judgment, filed November 19, 2013 (Doc. 64)("Response"). The Court will not strike the Response, because it is not a pleading, and is thus not the appropriate object of a motion to strike

under rule 12(f) of the Federal Rules of Civil Procedure.  The Court will grant the MSJ, because case law from the United States Court of Appeals for the Tenth Circuit recognizes that the Personnel Board has absolute immunity.

## FACTUAL BACKGROUND

The Court will discuss the factual background in multiple parts.  It will first discuss the undisputed facts of Plaintiff Jessica Tapia's claims.  It will next discuss the facts of Plaintiff Vanessa Aragon's claims.  Third, it will discuss the claims that relate to Plaintiffs New Mexico Transportation Union ("NMTU") and Ernest Lucero.

Although the Plaintiffs filed a Response, the Response does not comply with the local rules, which provide:

> The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b).  The Response does not number and specifically controvert any of the facts that Personnel Board has put forth.  Accordingly, the Court deems the Personnel Board's facts undisputed, except for the few facts that the cited evidence does not support.

Moreover, although the Response contains what purports to be a list of disputed facts, the Response cites only the unverified Complaint for Violation of Statutory and Constitutional Rights, Breach of Contract, and Unfair and Prohibited Labor Practices, filed in state court January 15, 2013, filed in federal court March 4, 2013 (Doc. 1-1)("Complaint"), the City Defendants' Answer to Complaint for Violation of Statutory and Constitutional Rights, Breach of Contract, and Unfair and Prohibited Labor Practices, Affirmative Defenses and Counterclaim, filed March 8, 2013 (Doc. 11)("City Defendants' Answer"), Ms. Forney's  Answer to Complaint

for Violation of Statutory and Constitutional Rights, Breach of Contract, and Unfair and Prohibited Labor Practices by Defendant Paula Forney and Counterclaim, filed March 8, 2013 (Doc. 15)("Ms. Forney's Answer"), and the City Personnel Board's Answer to Plaintiff's Complaint for Violation of Statutory and Constitutional Rights, Breach of Contract, and Unfair and Prohibited Labor Practices, filed March 8, 2013 (Doc. 13)("Personnel Board's Answer"), in support of its facts. Except for the two facts[1] that Plaintiff cited that the Personnel Board admitted -- neither of which changes the MSJ's outcome -- black-letter summary judgment law explains that this practice is insufficient to generate a genuine issue of material fact. See, e.g., Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained

---

[1]Although the Response lists five facts that the Plaintiffs state the Defendants "**do not deny**," Response at 22-23 (emphasis in original), the list is inaccurate. As to three of those facts, the Personnel Board, the City Defendants, and Ms. Forney denied the factual allegations, either directly or because they had insufficient knowledge or information to otherwise respond. See City Defendants' Answer ¶ 3, at 1 (denying the fact in Complaint ¶ 3, at 2, for lack of sufficient knowledge or information); Personnel Board's Answer ¶ 3, at 1-2 (same); Ms. Forney's Answer ¶ 3, at 2 (same); City Defendants' Answer ¶ 14, at 2 (denying the fact in Complaint ¶ 14, at 3-4, for the same reason); Personnel Board's Answer ¶ 16, at 3 (same); Ms. Forney's Answer ¶ 16, at 3 (directly denying the same fact); City Defendants' Answer ¶ 15, at 4 (denying the fact in Complaint ¶ 15, at 3, for lack of sufficient knowledge or information); Personnel Board's Answer ¶ 17, at 3 (same); Ms. Forney's Answer ¶ 17, at 3 (same). The Response seems to operate from the erroneous premise that a party that denies an allegation for lack of sufficient knowledge or information does not deny the fact. Even accepting this false premise, the Response applies it inconsistently: the Response, in an evident attempt to concede a denial, states that Ms. "Forney did deny the allegations in [Complaint] ¶ 3[, at 2]," Response at 10 n.1, but Ms. Forney denied that fact on the basis of insufficient knowledge, see Ms. Forney's Answer ¶ 4, at 2; Ms. Forney only directly denied the fact in Complaint ¶ 14, at 3-4, see Ms. Forney's Answer ¶ 16, at 3.

In any case, simply listing the allegations in the Complaint alongside the Defendants' denial of those allegations does not help the Plaintiffs establish a "disputed fact" for summary judgment purposes: as the Court explains above, the Plaintiffs cannot rely on the allegations in their Complaint to generate a genuine issue of fact. See Otteson v. United States, 622 F.2d at 519. Accordingly, except as to those two facts that the Personnel Board admitted, the Plaintiffs have not supported their facts with competent evidence, and the Court will not, therefore, view them as facts for summary judgment purposes.

in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried."  (emphasis added)(internal quotation marks omitted)).  Although the Court will provide the Plaintiffs' full list in the procedural background, because the Plaintiffs support only two of their facts with competent evidence, the Court will include in the factual background only the two facts that the Personnel Board admitted.

1.    **Undisputed Facts: Tapia's Claims.**

Tapia "was a sun van driver who got injured on the job."  MSJ Memo. ¶ 1, at 2 (setting forth this fact); Affidavit of Mary Scott ¶ 4, at 2, executed March 27, 2013, filed March 29, 2013 (Doc. 27-1)("Scott Aff.").  She "was covered by the City under worker's compensation."  MSJ Memo. ¶ 2, at 2 (setting forth this fact); Scott Aff. ¶ 6, at 2.  "Tapia applied for and received" leave under Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601–2654 ("FMLA").  MSJ Memo. ¶ 3, at 3 (setting forth this fact); Scott Aff. ¶ 8, at 2.  "On June 8, 2010, Defendant [Carmen Wagner-Mogle, M.D.] signed a certification for Tapia to receive FMLA leave for her diabetes, one time per week, 1-2 days per episode."  MSJ Memo. ¶ 3, at 2-3 (setting forth this fact); Scott Aff. ¶ 8, at 2.  See City of Albuquerque Family and Medical Leave Certification at 1, executed June 8, 2010, filed March 29, 2013 (Doc. 27-2).  She "was approved for intermittent FMLA leave beginning June 8, 2010, until June 7, 2011 for her diabetes."  MSJ Memo. ¶ 4, at 3 (setting forth this fact); Scott Aff. ¶ 9, at 2.  See City of Albuquerque Family and Medical Leave Certification at 1.  She "was returned to light duty from her on-the-job injury and assigned to the Vehicle Maintenance Division, to work swing shift, reporting to work at 3:30 p.m. on September 20, 2010."  MSJ Memo. ¶ 5, at 3 (setting forth this fact); Scott Aff. ¶ 10, at 3.  See Inter-Office Memorandum from Danny R. Holcomb to Jessica Tapia at 1, executed September 28, 2010, field March 29, 2013 (Doc. 27-4).  "On September 21, 2010, Dr. Carmen Wagner-Mogle wrote a

letter to the City indicating that Tapia should be on day shift because she could not drive in the dark."   MSJ Memo. ¶ 6, at 3 (setting forth this fact); Scott Aff. ¶ 11, at 3.   <u>See</u> Letter from Carmen Wagner-Mogle, M.D., to To Whom It May Concern, executed September 21, 2010, filed March 29, 2013 (Doc. 27-5).   The "City complied and placed Tapia on day shift."   MSJ Memo. ¶ 7, at 3 (setting forth this fact); Scott Aff. ¶ 12, at 3.

"On November 2, 2010, Tapia was outside her assigned work area when she was accosted by a homeless person."   MSJ Memo. ¶ 8, at 3-4 (setting forth this fact); Scott Aff. ¶ 13, at 3.   <u>See</u> Security Incident Report, executed November 3, 2010, filed March 29, 2013 (Doc. 27-6).   "Tapia received worker's compensation for this injury."   MSJ Memo. ¶ 9, at 4; Scott Aff. ¶ 13, at 3.

"On December 23, 2010, she was approved to return to work, with restrictions which included no driving heavy equipment or cars and limited use of her shoulder."   MSJ Memo. ¶ 10, at 4 (setting forth this fact); Scott Aff. ¶ 15, at 3.   <u>See</u> Physical Evaluation Form, executed December 21, 2010, filed March 29, 2013 (Doc. 27-7).   "Tapia was assigned, on day shift, to monitor the guard shack at [the Transit Department's] Daytona facility."   MSJ Memo. ¶ 11, at 4 (setting forth this fact); Scott Aff. ¶ 16, at 3.   "On February 11, 2011, Tapia submitted a request for leave, requesting 68.27 hours leave without pay."   MSJ Memo. ¶ 12, at 4 (setting forth this fact); Scott Aff. ¶ 17, at 3.   <u>See</u> Interoffice Memorandum from James Bird to Jessica Tapia at 1, executed February 24, 2011, filed March 29, 2012 (Doc. 27-8)("March Pre-Determination Memo.").   "[T]he request was treated as an absence without leave because she took off those hours without obtaining approval."   MSJ Memo. ¶ 13, at 4-5 (setting forth this fact); Scott Aff. ¶ 18, at 4.[2]   "Tapia was given notice of a pre-determination hearing[] and a hearing was

_____

[2]The Personnel Board asks the Court to conclude that "[a] request for leave without pay

conducted."  MSJ Memo. ¶ 14, at 4 (setting forth this fact); Scott Aff. ¶ 19, at 4.  <u>See</u> March Pre-Determination Memo. to Tapia at 1; Interoffice Memorandum from James Bird to Jessica Tapia at 1, executed April 14, 2011, filed March 29, 2013 (Doc. 27-9)("March Hearing Results Memo. to Tapia").  "On March 18, 2011, Tapia was assessed three days leave without pay as discipline for her improper usage of leave and her improper leave request."  MSJ Memo. ¶ 14, at 4 (setting forth this fact); Scott Aff. ¶ 19, at 4.  <u>See</u> March Hearing Results Memo. to Tapia at 2.  "She did not file an appeal over this discipline."  MSJ Memo. ¶ 14, at 5 (setting forth this fact).  <u>See</u> Affidavit of Lucinda Montoya ¶ 4, at 2, executed March 26, 2013, filed March 29, 2013 (Doc. 27-39)("Montoya Aff.").

"On February 21, 2011, Dr. Carmen Wagner-Mogle submitted an FMLA certification for leave from [February 7, 2011, to February 10, 2011,] for acute bronchitis, which" the City of Albuquerque approved.  MSJ Memo. ¶ 15, at 5 (setting forth this fact); Scott Aff. ¶ 20, at 4.  <u>See</u> Family and Medical Leave Certification at 2-3, executed February 21, 2011, filed March 29, 2013 (Doc. 27-10).  "On April 26, 2011, Dr. Wagner-Mogle submitted a new certification for Tapia's diabetes, severe headaches, and fatigue, which entitled Tapia to be absent from work two times per month, one [to] three days duration for each episode."  MSJ Memo. ¶ 16, at 5 (setting forth this fact); Scott Aff. ¶ 21, at 4.  <u>See</u> Family and Medical Leave Certification at 2-3, executed February 21, 2011, filed March 29, 2013 (Doc. 27-11).

"On April 11, 2011, Tapia clocked in at 9:59 a.m.; her work hours were from 10:00 a.m. to 6:30 p.m."  MSJ Memo. ¶ 17, at 5-6 (setting forth this fact); Scott Aff. ¶ 22, at 4.  "She did not clock out on April 11, 2011, but[,] when her supervisor looked for her, she was not at her work

is not permitted under the City's Merit System Ordinance."  MSJ Memo. ¶ 13, at 4.  This proposed fact is a legal conclusion and not a fact.  Moreover, the cited documents do not support the statement.  Accordingly, the Court will not treat this proposed fact as a fact.

station at 3:00 p.m."  MSJ Memo. ¶ 17, at 6 (setting forth this fact); Scott Aff. ¶ 22, at 4.  "She

called in to take FMLA [leave] on April 12, 2011."  MSJ Memo. ¶ 17, at 6 (setting forth this

fact); Scott Aff. ¶ 22, at 4.  Tapia "did not inform her supervisor before taking the leave."  MSJ

Memo. ¶ 17, at 6 (setting forth this fact).[3]  See Interoffice Memorandum from Dennis Stump to

Jessica Tapia at 1, executed May 18, 2011, filed March 29, 2013 (Doc. 27-13)("April Hearing

Results Memo. to Tapia").  Tapia "was given notice of a pre-determination hearing" and given

that hearing, at which "[s]he was given an eight day suspension."  MSJ Memo. ¶ 18, at 6 (setting

forth this fact); Scott Aff. ¶ 23, at 5.  See April Hearing Results Memo. to Tapia at 2.  "She did

not file an appeal over that suspension . . . ."  MSJ Memo. ¶ 18, at 5 (setting forth this fact); Scott

Aff. ¶ 23, at 5.  See Montoya Aff. ¶ 5, at 2.[4]

     "On April 18-20, 2011, Tapia did not appear for work."  MSJ Memo. ¶ 19, at 6 (setting

forth this fact); Scott Aff. ¶ 24, at 5.  "[S]he was given a notice of pre-determination hearing and

given that hearing," at which "[s]he was given a fifteen-day suspension."  MSJ Memo. ¶ 19, at 6

(setting forth this fact).  See Scott Aff. ¶ 24, at 5; Interoffice Memorandum from James Bird to

Jessica Tapia, dated April 21, 2011, filed March 29, 2013 (Doc. 27-14)("June Pre-Determination

Hearing Memo. to Tapia"); Interoffice Memorandum from James Bird to Jessica Tapia, executed

June 9, 2011, filed March 29, 2013 (Doc. 27-15).  "She did not file an appeal over that

---

[3]The Personnel Board asks the Court to conclude that "[t]his was improper use of leave under the Merit System Ordinance because she did not inform her supervisor before taking the leave."  MSJ Memo. ¶ 17, at 6.  This proposed fact is a legal conclusion and not a fact. Accordingly, the Court will not treat this proposed fact as an undisputed fact.

[4]The Personnel Board asks the Court to conclude that Tapia served this suspension "from May 20, 2011 until May 31, 2011."  MSJ Memo. ¶ 18, at 5.  Although the cited documents demonstrate that it was recommended that Tapia serve the suspension during that time, see April Hearing Results Memo. to Tapia at 2, they do not demonstrate that Tapia served the suspension during that time.  Accordingly, the Court will not treat this proposed fact as an undisputed fact.

suspension." MSJ Memo. ¶ 19, at 6 (setting forth this fact); Scott Aff. ¶ 24, at 5.  See Montoya Aff. ¶ 6, at 2.

The "City administers its worker's compensation claims in a department separate from the Transit Department."  MSJ Memo. ¶ 20, at 6; Scott Aff. ¶ 25, at 5.  "On May 2, 2011, surveillance was done on Tapia because she was engaging in activities reportedly outside her restrictions for light duty work," which "were that she could not operate heavy equipment or a car[,] and only limited use of her shoulder."  MSJ Memo. ¶ 20, at 6-7 (setting forth this fact); Scott Aff. ¶ 25, at 5.  "The surveillance demonstrated that she drove her car at night and used her shoulder in violation of her restrictions."  MSJ Memo. ¶ 20, at 7 (setting forth this fact).  See Scott Aff. ¶ 25, at 5; Workers Comp Surveillance Report, dated May 6, 2011, filed March 29, 2013 (Doc. 27-16).

"On May 16, 2011, Tapia was denied her FMLA leave."  MSJ Memo. ¶ 21, at 7 (setting forth this fact); Affidavit of Carmen Ortiz, executed March 27, 2013, filed March 29, 2013 (Doc. 27-28)("Ortiz Aff.").  "The last time she was paid regular pay was September 14 and 15, 2010, and she was paid for 16 hours."  MSJ Memo. ¶ 21, at 7 (setting forth this fact); Ortiz Aff. ¶ 3, at 1.  "Since that time, she was carried on FMLA leave, vacation, worker's compensation, FMLA without pay, suspension and absent without leave."  MSJ Memo. ¶ 21, at 7 (setting forth this fact); Ortiz Aff. ¶ 3, at 1.  Tapia's denial of FMLA leave "was based on a conversation" that Carmen Ortiz, an executive assistant in the City of Albuquerque's Human Resources Department, "had with Dr. Wagner-Mogle['s staff]."  Memo. ¶ 21, at 7 (setting forth this fact); Ortiz Aff. ¶ 3, at 1.[5]  Ortiz "asked for clarification from the doctor of Jessica Tapia's most recent

_____

[5]The Personnel Board asks the Court to conclude that Ortiz was the City of Albuquerque's FMLA representative.  See MSJ Memo. ¶ 21, at 7.  Although that statement may be true, the record does not support it.  Accordingly, the Court will not treat this proposed fact as

FMLA request dated May 16, 2011." Ortiz Aff. ¶ 4, at 2.[6] "Dr. Wagner-Mogle's office told

[her] on May 16, 2011, that there's 'no reason [Tapia] should be out 5 weeks straight.'" Ortiz

Aff. ¶ 4, at 2. See Information Sheet at 1, various dates, filed March 29, 2013 (Doc. 27-30).

       On May 31, 2011, Tapia was given a notice of pre-determination hearing.
In that notice, she was cited:

        a.    [F]or requesting a reasonable accommodation that she not work at night[,] and she was observed during the surveillance driving at night[;]

        b.    [S]he called in for FMLA for May 6, 2011, and she was observed during the surveillance purchasing liquor, in addition to driving at night[;]

        c.    [T]he City's FMLA representative called Dr. Wagner-Mogle about Tapia needing her FMLA recertified [because of a change in her medical condition] and was told by the doctor's staff that the doctor had not seen Tapia since the beginning of April and that the doctor could find no reason for Tapia to have been off work for so long because Tapia did not have a reasonable medical explanation for her absences[; and]

        d.    Tapia was notified on May 16, 2011 that she needed to renew her FMLA certification and that she could not be approved for any further FMLA leave without the recertification. She had not been recertified as of May 31, 2011.

MSJ Memo. ¶ 22, at 7-6 (setting forth these facts); Scott Aff. ¶ 26, at 6.   See Interoffice

Memorandum from Dennis Stump to Jessica Tapia, executed June 1, 2011, filed May 31, 2011

---

an undisputed fact, and has modified related facts to reflect what the evidence supports.
    The Personnel Board also asks the Court to conclude that this conversation occurred with Dr. Wagner-Mogle.  See MSJ Memo. ¶ 21, at 7.  The cited documents state that the conversation occurred between Ortiz and Dr. Wagner-Mogle's "employee" or with her "office."  Accordingly, the Court will not treat this proposed fact as an undisputed fact.

    [6]The Personnel Board asks the Court to conclude that Ortiz asked for "verification of Tapia's most recent FMLA request."  MSJ Memo. ¶ 21, at 7.  The cited documents use the word "clarification," Ortiz Aff. ¶ 4, at 2; although the Court attributes no legal significance to the distinction, the Court nonetheless uses Ortiz' word for clarity.

(Doc. 27-17)("Second June Pre-Determination Memo. to Tapia").  "On June 28, 2011, Tapia's employment was terminated."  MSJ Memo. ¶ 23, at 8 (setting forth this fact); Scott Aff. ¶ 27, at 6.  See Interoffice Memorandum from Dennis Stump to Jessica Tapia at 4, executed June 28, 2011, filed March 29, 2013 (Doc. 27-18)(" Termination Memo. to Tapia").

"On July 8, 2011, Mr. Livingston, on her behalf, filed an appeal contesting the termination."  MSJ Memo. ¶ 24, at 8 (setting forth this fact); Scott Aff. ¶ 28, at 6.  See Letter from Paul Livingston to Rob Perry, executed July 8, 2011, filed March 29, 2013 (Doc. 27-19).  "Patrick Bingham, a contract[] hearing officer, was assigned to hear" Tapia's appeal.  MSJ Memo. ¶ 25, at 8 (setting forth this fact); Scott Aff. ¶ 29, at 8; Montoya Aff. ¶ 9, at 2.  The "City obtained leave to serve discovery and served a subpoena[] to obtain Tapia's medical records from Dr. Wagner-Mogle."  MSJ Memo. ¶ 26, at 9 (setting forth this fact).  See Montoya Aff. ¶ 10, at 2; Subpoena, executed August 8, 2011, filed March 11, 2013 (Doc. 14)("Forney Subpoena").  "Tapia and her counsel were given notice of the subpoena and were served with the discovery requests."  MSJ ¶ 27, at 9 (setting forth this fact); Montoya Aff. ¶ 11, at 2.  See Letter from Constance L. Zamora to Medical Records Custodian, executed August 2, 2011, filed March 11, 2013 (Doc. 14).  Dr. Wagner-Mogle's office sent Tapia's medical records to the City of Albuquerque by facsimile transmission.  See Letter from Constance L. Zamora to Honora Persson at 1, executed August 9, 2011, filed March 11, 2013 (Doc. 14).[7]  "The City returned the

---

[7]The Personnel Board asks the Court to conclude that "Dr. Wagner-Mogle sent the documents to the City pursuant to the subpoena," citing portions of Defendant Carmen Wagner-Mogle, M.D.'s Motion to Dismiss, filed March 11, 2013 (Doc. 14)("Dr. Wagner-Mogle's Motion to Dismiss").  Motions are not an appropriate basis on which the Court can rest this finding.  The Court has, however, located statements in the Letter from Constance L. Zamora to Honora Persson that support a similar fact, which the Court here provides.

documents to Dr. Wagner-Mogle without reading them."  MSJ Memo. ¶ 29, at 9 (setting forth this fact).  See Letter from Constance L. Zamora to Honora Persson at 1.

"The Hearing Officer signed an order dismissing Ms. Tapia's case, but the Personnel Board objected that Mr. Bingham's order did not give any reasons or include any 'findings.'  The Personnel Board remanded the case to the Personnel Hearing Officer to make findings and issue a 'correct' order."  Complaint ¶ 47, at 10; Personnel Board's Answer ¶ 49, at 7 (admitting this fact).  See Response ¶ 5, at 23 (setting forth this fact).[8]

"Paul Livingston withdrew as Tapia's counsel on September 19, 2011 and Ernest Lucero entered his appearance as the chairman of NMTU."  MSJ Memo. ¶ 30, at 9 (setting forth this fact).  See Ortiz Aff. ¶ 8, at 2; Notice of Withdrawal and Substitution of Representation, filed March 29, 2013 (Doc. 27-31).  "The grievance was dismissed for discovery abuse when neither Mr. Livingston nor Mr. Lucero adequately responded to the discovery, which was approved by the hearing officer."  MSJ Memo. ¶ 31, at 9 (setting forth this fact).  See Scott Aff. ¶ 31, at 7; Order Dismissing Grievant's Claim, no date provided, filed March 29, 2013)(Doc. 27-11); Montoya Aff. ¶ 12, at 2.  "The Personnel Board upheld the termination for discovery abuse."  MSJ Memo. ¶ 32, at 9 (setting forth this fact); Scott Aff. ¶ 31, at 7; Montoya Aff. ¶ 13, at 2.  See Hearing Officer's Proposed Findings of Fact and Conclusions of Law, executed by Hearing Officer December 2, 2011, accepted by the City Personnel Board December 14, 2011, filed March 29, 2013 (Doc. 27-22).  "Mr. Livingston appealed the result of termination to the State District Court."  MSJ Memo. ¶ 33, at 10 (setting forth this fact).  See Montoya Aff. ¶ 14, at 3. "When Mr. Livingston failed to provide the required statement of appellate issues, the case was

---

[8]The Plaintiffs did not date this fact.  The Court has, therefore, placed the fact in the part of the narrative in which it makes the most sense, considering the evidence and the narrative in the Plaintiffs' Complaint.

dismissed for lack of prosecution."  MSJ Memo. ¶ 34, at 10 (setting forth this fact).  See Order

Dismissing Appeal, executed June 25, 2012, filed March 29, 2013 (Doc. 27-33)("Tapia Appeal

Dismissal Order").

   **2.**   **The Undisputed Facts: Aragon's Claims.**

  Aragon "was employed as a motor coach operator."  MSJ Memo. ¶ 35, at 10 (setting

forth this fact); Scott Aff. ¶ 33, at 7.  "On May 17, 2011, she was given a direct order to appear

for work no later than May 23, 2011."  MSJ Memo. ¶ 36, at 10 (setting forth this fact); Scott Aff.

¶ 34, at 7.  See Interoffice Memorandum from Annette Paez to Vanessa Aragon at 1, executed

May 17, 2011, filed March 29, 2013 (Doc. 27-23)("Pre-Determination Memo. to Aragon").   She

"failed to appear as ordered[,] and her employment was terminated on July 18, 2011."  MSJ

Memo. ¶ 37, at 11 (setting forth this fact); Scott Aff. ¶ 34, at 7.  See Interoffice Memorandum

from Annette S. Paez to Vanessa Aragon at 4-5, executed July 18, 2011, filed March 29, 2013

(Doc. 27-24)("Aragon Termination Memo.").

  "Mr. Livingston, who had entered his appearance on March 21, 2011 on Aragon's behalf,

filed an appeal of that termination."  MSJ Memo. ¶ 38, at 11 (setting forth this fact); Scott Aff.

¶ 35, at 7.  See Electronic Mail Transmission from Paul Livingston to Selinda Guerrero, et al.,

dated March 21, 2011, filed March 29, 2013 (Doc. 27-25); Montoya Aff. ¶ 15, at 3.  "Barbara

Albin was assigned as the hearing officer."  MSJ Memo. ¶ 39, at 11 (setting forth this fact); Scott

Aff. ¶ 36, at 7; Montoya Aff. ¶ 16, at 3.  "On October 6, 2011, Mr. Livingston withdrew his

appearance and Ernest Lucero entered his appearance on behalf of NMTU."  MSJ Memo. ¶ 40,

at 11 (setting forth this fact); Montoya Aff. ¶ 17, at 3.  See Recommendation of the Hearing

Officer at 1, executed November 9, 2011, filed March 29, 2013 (Doc. 27-26)("Hearing Officer's

Recommendation Re: Aragon").  "The hearing was scheduled to begin October 18, 2011."  MSJ

Memo. ¶ 41, at 11 (setting forth this fact); Scott Aff. ¶ 38, at 8.  See Montoya Aff. ¶ 18, at 3;

Hearing Officer's Recommendation Re: Aragon at 1.  "At 7:30 p.m., October 17, 2011, Lucero

asked [the] City to concur in his request to vacate the hearing."  MSJ Memo. ¶ 42, at 12 (setting

forth this fact); Scott Aff. ¶ 39, at 8; Hearing Officer's Recommendation Re: Aragon at 1.  The

"City declined," and, "[o]n October 18, 2011, [Mr.] Lucero, representatives of the City[,] and the

hearing officer appeared as scheduled," but "Aragon did not."  MSJ Memo. ¶ 43, at 11 (setting

forth these facts); Scott Aff. ¶ 40, at 8.  See Montoya Aff. ¶ 19, at 3.  "The hearing officer

concluded[,] from the facts established after inquiry, that it was likely Aragon was aware of the

scheduling hearing and chose not to appear to lend credence to NMTU's motion to vacate the

hearing."  MSJ Memo. ¶ 44, at 12 (setting forth this fact).  See Scott Aff. ¶ 41, at 8.

"On December 19, 2011, Aragon appealed the termination to the State District Court."

MSJ Memo. ¶ 45, at 12.  See Montoya Aff. ¶ 20, at 3.  See Docket Sheet in Vanessa Aragon v.

City of Albuquerque, No. D-202-CV-2011-12542, dated March 26, 2013, filed March 29, 2013

(Doc. 27-34).  "On May 17, 2012, District Court Judge Clay Campbell dismissed the appeal for

lack of prosecution."  MSJ Memo. ¶ 46, at 13 (setting forth this fact).  See Order Granting

Motion to Dismiss for Lack of Prosecution, filed in state court in No. D-202-CV-2011-12542

May 17, 2012, filed in federal court in this case March 29, 2013 (Doc. 27-35)("Aragon Appeal

Dismissal Order").

   **3.**  **The Undisputed Facts: NMTU's Claims.**

"On June 30, 2011, the collective bargaining agreement between the City and the

American Federation of State, County and Municipal Employees ([hereinafter "AFSCME"]) for

representation of Transit bus and van drivers expired."  MSJ Memo. ¶ 47, at 13 (setting forth this

fact); Scott Aff. ¶ 42, at 8; Montoya Aff. ¶ 21, at 3. "On August 1, 2011, the City's Labor-Management Relations Board ([hereinafter the "Labor Board"]) ordered that a representational election" to choose the union that would represent bus and sun van drivers would proceed. MSJ Memo. ¶ 48, at 13 (setting forth this fact); Scott Aff. ¶ 43, at 8; Montoya Aff. ¶ 22, at 3. "AFSCME appealed the order of the Labor Board to State District Court." MSJ Memo. ¶ 49, at 13 (setting forth this fact). See Montoya Aff. ¶ 23. at 3; Docket in Am. Fed. of State, Cnty. & Mun. Emps. v. NM Transp. Union, dated March 27, 2013, filed March 29, 2013 (Doc. 27-36).

"On August 10, 2011, AFSCME filed a prohibited practice complaint ([hereinafter "PPC"]) with the Labor Board[,] alleging violations of the City's Labor-Management Relations Ordinance ([hereinafter "LMRO"]) by NMTU." MSJ Memo. ¶ 50, at 13 (setting forth this fact); Scott Aff. ¶ 44, at 9; Montoya Aff. ¶ 24, at 3. "On September 14, 2011, a representational election was held pursuant to the Labor Board's order[,] and NMTU prevailed." MSJ Memo. ¶ 51, at 14 (setting forth this fact); Scott Aff. ¶ 45, at 9; Montoya Aff. ¶ 25, at 3. "On October 5, 2011, Mayor Richard Berry de-certified AFSCME as bargaining representative and certified NMTU." Complaint ¶ 12, at 3; Personnel Board's Answer ¶ 14, at 3 (admitting this fact). See Response ¶ A.3, at 23 (setting forth this fact as admitted). "On October 24, 2011, the Labor Board found that[,] while NMTU had acted inappropriately in soliciting membership during working hours, AFSCME had failed to file the PPC within the time limits established in the LMRO." MSJ Memo. ¶ 52, at 14 (setting forth this fact); Scott Aff. ¶ 46, at 9. See Findings & Conclusions, executed October 24, 2011, filed March 29, 2013 (Doc. 27-27). "On May 23, 2012, Judge Nan Nash issued a Memorandum Opinion and Order holding that, if the election the Labor Board ordered was held, the results would be null and void because NMTU did not

provide current interest cards, justifying the election."  MSJ Memo. ¶ 53, at 14 (setting forth this fact).  See Memorandum Opinion and Order at 5, filed in state court in CV-2011-8899 March 23, 2012, filed in federal court in this case March 29, 2013 (Doc. 27-37)("Judge Nash's MOO").  Judge Nash also held that,

> because the ordinance was not clear on this point, NMTU should be given another opportunity to collect interest cards and, if they can again garner thirty percent, another election should be held.  Both the collection of interest cards and the possible election should take place within a reasonable amount of time from this order.

Judge Nash's MOO at 5.

"The denial of AFSCME's PPC by the Labor Board was dismissed as moot by the State District Court."  MSJ Memo. ¶ 54, at 14 (setting forth this fact).  See Order Dismissing Appeal as Moot and Granting All Motions to Dismiss Without Prejudice at 1, filed in state court in American Federation of State, County and Municipal Employees v. New Mexico Transportation Union, No. D-202-CV-2011-11682 July 9, 2012, filed in federal court in this case March 29, 2013 (Doc. 27-38).[9]

"Neither NMTU nor Lucero filed a PPC before the Labor Board challenging the post-termination hearings of Tapia and Aragon."  MSJ Memo. ¶ 55, at 14-15 (setting forth this fact); Scott Aff. ¶ 46, at 9;  Montoya Aff. ¶ 26, at 4.  "Between the election [o]n September 14, 2011, and the date of invalidation of the election on May 23, 2012, no collective bargaining agreement . . . was negotiated between NMTU and the City."  MSJ Memo. ¶ 46, at 15 (setting

---

[9]Although the Order Dismissing Appeal as Moot and Granting All Motions to Dismiss Without Prejudice does not fully lay out the content of the matter dismissed as moot, the Court acknowledges that the practice in New Mexico state courts is not to lay out such facts in such orders.  Moreover, because the Plaintiffs did not specifically controvert this allegation, the Court deems it undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

forth this fact); Scott Aff. ¶ 48, at 9.

## PROCEDURAL BACKGROUND

The Court will discuss the procedural background in four parts.  First, the Court will discuss the Plaintiffs' Complaint and the Defendants' removal to federal court.  Second, the Court will discuss the MSJ.  Third, the Court will discuss the Motion to Strike.  Fourth, the Court will discuss the hearing.

### 1.     The Plaintiffs File their Complaint; the Defendants Remove to Federal Court.

The Plaintiffs filed their Complaint in state court, stating that they "bring their claims under 42 U.S.C. [§] 1983, and the laws and Constitutions of the United States and the State of New Mexico."  Complaint ¶ 9, at 2-3.  The Plaintiffs allege six causes of action.  See Complaint ¶¶ 57-84, at 12-16.  Under "Count 1 Due Process and Equal Protection," the Plaintiffs assert that Tapia and Aragon, "[a]s classified, full-time, City employees . . . had legitimate expectations of continued employment absent just cause for disciplinary action.  They had the right to a full and fair hearing to challenge their termination."  Complaint ¶ 57, at 12.  "Similarly," the Plaintiffs allege, "NMTU and its leadership had a due process right and an obligation to represent employees in the bargaining unit at post-termination grievance hearings that are fundamentally fair and procedurally correct."  Complaint ¶ 58, at 12.  According to the Plaintiffs, the "Defendants denied the employees' rights and hearings and dismissed their cases on pretextual grounds," and, thereby, "the City Defendants have violated Plaintiffs' rights to due process and equal protection of the laws."  Complaint ¶¶ 59-60, at 13.

Under "Count  2 Breach of Employment Contracts," the Plaintiffs allege that, "[a]s tenured public employees, Plaintiffs Tapia and Aragon were covered by a contract of employment that consisted of the Merit System Ordinance, the Personnel Rules and Regulations

and applicable collective bargaining agreements."  Complaint ¶ 62, at 13.  The Plaintiffs contend that they "were contractually entitled to notice and an opportunity to be heard, and to be disciplined only for just cause."  Complaint ¶ 62, at 13.  The Plaintiffs submit that, thereby, the Defendants "have violated their contractual obligations and are liable for damages to be determined at trial."  Complaint ¶ 64, at 13.

Under "Count 3 Violation of Right to Privacy," the Plaintiffs contend that Defendant Paula "Forney used a misleading letter and an illegitimate subpoena that she issued herself to secure Jessica Tapia's medical records from Dr. Carmen Wagner-Mogle," and that Dr. "Wagner-Mogle sent Ms. Tapia's medical records to Ms. Forney without any knowledge or authorization by Ms. Tapia."  Complaint ¶¶ 66-67, at 13-14.  The Plaintiffs assert that "Dr. Wagner-Mogle communicated with Ms. Forney and other City representatives about Jessica Tapia and her medical condition and records on at least several occasions," but "never contacted or attempted to contact Ms. Tapia or her attorney."  Complaint ¶ 68, at 14.  The Plaintiffs state that "[t]he acts of Defendants, specifically Paula Forney, Dr. Carmen Wagner-Mogle and the Transit Department deliberately and willfully violated Jessica Tapia's right to privacy in her medical records."  Complaint ¶ 69, at 14.  The Plaintiffs contend that the "Defendants also hired a private investigator and followed Ms. Tapia, seeking and securing information about her personal life and activities entirely unconnected with her work."  Complaint ¶ 70, at 14.  The Plaintiffs assert that the "Defendants are liable for their violations of Ms. Tapia's right to privacy."  Complaint ¶ 71, at 14.

Under "Count 4 Negligence," the Plaintiffs assert that, "[a]s described herein, Defendants have treated Jessica Tapia and Vanessa Aragon negligently and with deliberate indifference with respect to their employment."  Complaint ¶ 73, at 14.  "In addition," the Plaintiffs state, "Ms.

- 17 -

Tapia sustained two injuries, the first resulting from operation of a wheelchair lift while on duty; the second of which was a result of her assignment to monitor the restroom facilities at the Alvarado Transit Center, a building managed and maintained by the City Transit Department." Complaint ¶ 74, at 15. The Plaintiffs assert that "Tapia has given notice of her tort claim to the City of Albuquerque." Complaint ¶ 75, at 15. The Plaintiffs maintain that "[t]he city and its Transit Department, as well as its Director, are liable for the damages proximately caused by their negligence in an amount to be determined at trial." Complaint ¶ 76, at 15.

Under "Count 5 Conspiracy to Deny Constitutional Rights," the Plaintiffs assert that "[t]he City Defendants, aware of Plaintiffs' rights to due process and equal protection, acted deliberately to deny the right to a hearing, one of the most fundamental rights of public employees subjected to wrongful disciplinary actions." Complaint ¶ 78, at 15. "In particular," according to the Plaintiffs, "Paula Forney, the Personnel Hearing Officers, the Personnel Board, and Bruce Rizzieri and other City officials met, discussed, and arranged for the denial of Plaintiffs' due process and equal protection rights." Complaint 79, at 15.

Under "Count 6 Unfair Labor Practices," the Plaintiffs state that, "[l]ong after the submission of NMTU's majority petition for representation of the Transit drivers' bargaining unit in March, 2011, and the expiration of the Collective Bargaining Agreement on June 30, 2011, the City and Transit Department continued recognizing AFSCME as the exclusive bargaining and grievance representative." Complaint ¶ 81, at 15-16. According to the Plaintiffs, "[t]he City and its Labor Board have ignored and opposed the legitimate representational interests of NMTU, discarded NMTU's prohibited practice complaints without hearings, insisted on an election when none was needed, and then did nothing to support or enable NMTU to

represent employees after it prevailed in the election."  Complaint ¶ 82, at 16.  The Plaintiffs

maintain that

> [t]he City's misconduct and the Hearing Officers' and Personnel Board's lack of
> concern over -- and engagement in -- collusive tactics in this case, including
> biased hearing officers eager to dismiss rather than hear employee cases, and
> unethical and illegal conduct, clearly demonstrated the City's policy and practice
> with respect to the rights of its employees and the obligations of City management
> towards those employees.

Complaint ¶ 83, at 16.  The Plaintiffs assert that they "are entitled to compensatory, declaratory,

and injunctive relief for the City's failure to comply with its laws, failure to recognize and hear

employee grievances, and collusive and conspiratorial conduct with respect to these and other

employees' rights and grievances."  Complaint ¶ 84, at 16.

The Plaintiffs ask for the following forms of relief:

A.   Declaratory, injunctive and compensatory relief for denial of fair hearings
and the rights to due process and equal protection of law;

B.   Damages for breaches of contract;

C.   Declaratory, injunctive, and compensatory relief and exemplary and
punitive damages for violation of Jessica Tapia's right to privacy.

D.   Damages for negligence with respect to Ms. Tapia's injuries;

E.   Declaratory, injunctive, and compensatory relief for unfair labor practices
and collusive misconduct between and among City officials and attorneys,
the Personnel Board and its Personnel Hearing Officers and the Labor
Board.

F.   Declaratory and injunctive relief requiring the City to hire or appoint a
person to oversee, administer, and protect the Merit System and ensure a
fair, neutral and effective personnel hearing process for City employees.

G.   Costs and attorneys' fees; and

H.   Such other and further relief as the Court deems just and proper.

Complaint ¶¶ A-H, at 16-17.

On March 4, 2013, the Defendants filed their Notice of Removal.  See Doc. 1.

On March 8, 2013, Defendants City of Albuquerque, Richard Berry, Robert J. Perry, and Bruce Rizzieri ("the City Defendants") filed their Answer to Complaint for Violation of Statutory and Constitutional Rights, Breach of Contract, and Unfair and Prohibited Labor Practices, Affirmative Defenses and Counterclaim.  See Doc. 13 ("City Defendants' Answer"). The City Defendants raise two counterclaims: (i) malicious abuse of process, contending, in essence, that the Plaintiffs' claims are meritless and that they are abusing the legal process, City Defendants' Answer ¶¶ 48-56, at 16-17; and (ii) prima facie tort, contending that the Plaintiffs have intentionally brought a meritless claim to harm the City of Albuquerque, see City Defendants' Answer ¶¶ 57-64, at 18-19.

On March 8, 2013, Forney filed her Answer to Complaint for Violation of Statutory and Constitutional Rights, Breach of Contract, and Unfair and Prohibited Labor Practices by Defendant Paula Forney and Counterclaim.  See Doc. 15 ("Forney's Answer").  Forney raises counterclaims for malicious abuse of process and prima facie tort, largely for the same reasons that the City Defendants give.  See Forney's Answer ¶¶ 1-13, at 19-21.

### 2.    The MSJ.

After reviewing the familiar standards for motions for summary judgment, see MSJ Memo. at 15-16, and for absolute immunity, see MSJ Memo. at 16, the Personnel Board asserts that it is entitled to summary judgment on the basis of absolute immunity, see MSJ Memo. at 16. The Personnel Board notes that, under law from the Tenth Circuit, "'officials in administrative hearings can claim the absolute immunity that flows to judicial officers if they are acting in a quasi-judicial fashion.'"  MSJ Memo. at 16 (quoting Guttman v. Khalsa, 446 F.3d 1027, 1033 (10th Cir. 2006)).  The Personnel Board points to Guttman v. Khalsa, which holds that,

> [f]or an official at an administrative hearing to be protected by absolute immunity (a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct.

446 F.3d at 1033 (internal quotation marks omitted).  See MSJ Memo. at 16-17.  After reviewing the basic principles of absolute immunity as set out and applied in Guttman v. Khalsa, see MSJ at 16-17, and Horowitz v. State Board of Medical Examiners, 822 F.2d 1508 (10th Cir. 1987), the Personnel Board reaches its central argument:

> The Tenth Circuit has specifically held that Personnel Hearing Officers and members of the City Personnel Board are entitled to absolute immunity. Saavedra v. City of Albuquerque, 73 F.3d 1525, 1528-30 (10th Cir. 1996). In Saavedra, the Tenth Circuit applied the principles articulated in Butz v. Economou, 438 U.S. 478, 507 . . . (1978) to the defendant hearing officer and members of the personnel board and concluded that they were shielded by absolute immunity.
>
>> The hearing before the [Personnel Hearing Officer ("PHO")] is adversary in nature.  Employees have the right to counsel and the opportunity to present evidence, provide testimony, and cross-examine witnesses.  The PHO is a professional hearing officer, is not considered an employee of the City, and is sufficiently independent.  His decisions are insulated from political pressure.  The PHO makes written findings of fact and issues a recommendation.  The Board's review of the PHO's recommendation is limited to the record.  The Board either affirms, denies, modifies, or remands the PHO's decision, similar to a reviewing court of law.  The nature of the process is such that the terminated employee will often have a strong incentive to sue the PHO or the Board should either issue an adverse decision, and therefore a strong likelihood of lawsuits could deter others from desiring to perform these functions and might produce a hidden bias in favor of the aggrieved employee.
>
> Saavedra v. City of Albuquerque, 73 F.3d 1525, 130 (10th Cir. 1996). A December 14, 1998 Opinion by Senior Judge John Conway held that the Personnel Board was entitled to absolute immunity because they were performing a judicial function when they determined the plaintiff's grievance was meritless. See. [sic] Eloy Encinias v. City of Albuquerque, et al., CIV 98-1139 JC/WWD.
>
> Application of these principles to this case compels the conclusion that

> Defendant Board enjoys absolute immunity. Specifically, plaintiff had the right to counsel and the opportunity to present evidence, provide testimony, and cross examine witnesses. Defendant Board's review was limited to the record. Defendant Board could either affirm, deny, modify or remand the Hearing Officer's recommendations, similar to a reviewing court of law. Certainly the nature of the process is such that the terminated employee has a strong incentive to sue the hearing officer or the Board. Such a strong likelihood of lawsuits could deter others from wanting to perform the duties of a Hearing Office and might produce a hidden bias in favor of the aggrieved employee. In short, Defendant Board must be free to exercise their discretion uninhibited by a looming threat of personal liability.

MSJ Memo. at 18. The Personnel Board, therefore, asks the Court to grant it summary judgment. See MSJ Memo. at 19.

The Response presents little substantive argument on the Personnel Board's entitlement to absolute immunity. The Plaintiffs first recount at considerable length the exchange that the parties and the Court had at a hearing held November 1, 2013, during which the Plaintiffs' counsel voiced his concerns regarding the United States District Court for the District of New Mexico's practices regarding scheduling conferences under rule 16 of the Federal Rules of Civil Procedure. See Response at 1-4. As those matters do not relate to the MSJ's merits, the Court will not recount those arguments here.

The Plaintiffs then argue that "[t]he real Personnel Board . . . is far from the imaginary Board described in the Board's summary judgment motion." Response at 4. The Plaintiffs assert that it does not "appear that the Board's attorneys have ever actually met with the Personnel Board or communicated directly with the Board members." Response at 4. The Plaintiffs contend:

> The "facts" presented by the City and Personnel Board in support of their motion are curiously disconnected from the attorneys' summary judgment argument. The "facts" that support this motion are copied directly -- for the most part, word-by-word and paragraph-by-paragraph -- from the City Defendants' hybrid Motion to Dismiss. (Doc. 27). Perhaps even more significantly, the "answers" of the City of Albuquerque and the individual City defendants to Plaintiffs' Complaint are

- 22 -

identical to the answers of the City Personnel Board.

> Filing of word-processed and copied documents by attorneys who have never met with or discussed their case with their clients is common, but improper, process. If, as it appears, the Personnel Board's new attorneys have never met with the Personnel Board and are applying a set of "facts" developed by the City attorneys, then the Board is not receiving adequate representation and the lawyers are not communicating with their "clients."

Response at 4.

The Plaintiffs also complain, at some length, about the practice of filing hybrid motions to dismiss and motions for summary judgment, arguing that such motions are "incomprehensible," and that they "cause confusion and delay."  Response at 5-6.  The MSJ is not such a motion.  The Court will not, therefore, detail these arguments.[10]  The Plaintiffs also complain about the absence of a settlement conference, see Response at 7, about the way in which the parties conducted their conference under rule 26 of the Federal Rules of Civil Procedure, see Response at 7, and about the fact that, because the Court indicated that it was inclined to grant certain dispositive motions, the discovery procedures under rule 26 are not "appropriate or meaningful," Response at 8.

Under the heading "Other Cases," the Plaintiffs complain about the arrangement between the Personnel Board and its counsel:

> The representation of the Personnel Board is highly problematic in at least two respects.  First, the Personnel Board is already represented by a City attorney who also represents the City Labor Board and other City entities. Rather than having its own independent counsel, the Personnel Board shares counsel without maintaining any ethical separation between City counsel and Board counsel.

---

[10]The Plaintiffs evidently seek to register their displeasure with the practice of other Defendants in this case, who have filed such motions.  See Motion to Dismiss or, in the Alternative, Motion for Summary Judgment Dismissing Complaint in its Entirety, filed March 29, 2013 (Doc. 26)("City Defendants' Motion").  As the Court detailed in its Memorandum Opinion and Order, filed March 31, 2014 (Doc. 90)("City Defendants' MOO"), the Plaintiffs elected not to respond to that motion.  Any complaints about briefing on that motion are, therefore, irrelevant to the MSJ.

> Second, the Board's current counsel is acting without Board knowledge or
> approval.
>
> The Personnel Board is a public Board subject to the provisions of the
> New Mexico Open Meetings Act.  This constrains the Board to meet in public
> and, while it is able to meet with its attorney to discuss legal issues in closed
> sessions, there is no indication of any such meetings or any vote of the Personnel
> Board taking place, nor do the actions of the Personnel Board members suggest
> any awareness of either the claims against the Board or the representations made
> in the Board's name by the Board's attorneys.

Response at 8-9.  The Plaintiffs recite the procedural history of certain other cases, without

connecting that history to the Personnel Board's MSJ.  See Response at 9.

Finally, the Plaintiffs assert that they "have identified disputed issues of fact in the

pleadings."  Response at 9 (capitalization and emphasis altered for readability).  The Plaintiffs

elaborate:

> Defendant Personnel Board's Motion for Summary Judgment is an
> attempt by the City of Albuquerque, the City Defendants represented by Paula
> Forney, Ms. Forney, and the Personnel Board attorney to complete the dismissal
> of Plaintiffs' Complaint without allowing discovery or a hearing on the merits.
> The underlying controversy in this case involves 1) the denial of the right of
> Transit Department employees to cho[o]se and enjoy the benefits of union
> representation and 2) the denial of Plaintiffs' rights to fair hearings on the merits
> of their claims before a fair, neutral, and independent Personnel Board and
> Personnel Hearing Officers.  The denial of Plaintiffs' right to fair hearings is
> plausible, provable, and susceptible to judicial relief.
>
> A.      With respect to Plaintiffs' allegations, Defendants (whose answers
> to the Complaint were all the same) **do not deny** that:
>
> 1.      The New Mexico Transportation Union ("NMTY"),
> has represented City bus and van drivers since 1965; Complaint,
> ¶ 3; Answer, City & PB, Lack Sufficient Information.
>
> 2.      On October 5, 2011, Mayor Richard Berry de-
> certified AFSCME as bargaining representative and certified
> NMTU.  Complaint, ¶ 12; Answers, admitted**.**
>
> 3.      As a direct result of the City's failure to
> acknowledge and support NMTU as the collective bargaining and
> grievance representative, NMTU and its officials were untrained,

inexperienced, and without any office, staff, or operating funds. At the same time the union officers were attempting to represent drivers, the Transit Department unreasonably required them to fully perform their driving schedules. Complaint, ¶ 14; Answer, City & PB, Lack Sufficient Knowledge.

4.    The grievances of Jessica Tapia and Vanessa Aragon were the first two grievances ever handled by NMTU's new Chairman. Complaint, ¶ 15; Answers, Lack Sufficient Knowledge.

5.    The Hearing Officer signed an order dismissing Ms. Tapia's case, but the Personnel Board objected that Mr. Bingham's order did not give any reasons or include any "findings."

B.    On the other hand, **Defendants denied**

6.    The City Charter provides that the Mayor "shall. . . . (c) Be responsible for the administration and protection of the merit system; . . . .(and) (d) With the advice and consent of the Council, hire or appoint the City Attorney, an officer to administer the merit system, and all other senior administrative or cabinet level officers. . . ." City Charter, Article V, Mayor. Complaint, ¶ 16; Answer, City, denies, and states City Charter speaks for itself and thus this paragraph requires no response."

7.    The City has not appointed or hired any "officer to administer the merit system." Moreover, the Merit System Ordinance states that the Mayor "designates the Chief Administrative Officer (CAO) of the city to be responsible for the administration of the merit system." MSO, Sec.3-1-1. Complaint, ¶ 17; Answer, City denies, MSO speaks for itself, requires no response.

8.    Even though NMTU had support of a majority of employees in the bargaining unit in March, 2011, Robert Perry, Richard Berry, and Bruce Rizzieri refused to recognize its majority status until October 5, 2011, when Mayor Berry certified NMTU as bargaining agent after NMTU prevailed in the City-run election against AFSCME, Local 624. Complaint, ¶ 2nd No. 10; Answer, denied.

9.    The City Labor Board conducted the election at which NMTU prevailed with a majority of the votes; nonetheless, the City, City Defendants, and Labor and Personnel Boards all opposed NMTU and its representational interests at the same time

they supported AFSCME and its interests.  Complaint, ¶ 2nd No. 11; Answer, denied.

10.     However, the City Defendants subsequently refused to bargain with NMTU refused to deduct union dues from paychecks, and refused to allow union leaders the same accommodations and privileges concerning union business, negotiations, and grievances that the AFSCME union was afforded.  Complaint, ¶ 13; Answers, denied.

11.     The City Personnel Board is neither fair nor neutral. To the contrary, whenever possible the Personnel Board upholds and advances management policies and interests over the rights of City employees.  In this case the City dictated the actions of the Personnel Board.  Complaint, ¶ 19; Answers, denied.

12.     In actual fact and practice, under the administration of Mayor Richard Berry the current Personnel Board and its Personnel Hearing Officers and the Labor Board all act under the direction of Mayor Berry and Robert Perry, without oversight from the City Council, collusively, and in violation of the City Charter and the rights of Plaintiffs and other City employees.  Complaint, ¶ 20; Answers, denied.

13.     Subsequent to the Hearing Officer allowing the City unlimited "discovery" (including Ms. Tapia's medical records), Ms. Forney propounded burdensome and offensive "discovery requests" designed to embarrass Ms. Tapia and place pressure on the inexperienced NMTU officers who were attempting to represent her, rather than produce any actually useful information. Complaint, ¶ 46; Answers, denied.

14.     Instead of the Hearing Officer making findings and issuing a correct []order, Paula Forney wrote a set of "findings and conclusions" dismissing Ms. Tapia's case. Complaint, ¶ 48; Answers, denied.

15.     The Hearing Officer merely changed the title of the document prepared by Ms. Forney and signed the "Order" drafted by Ms. Forney, dismissing Ms. Tapia's Personnel Board case without a hearing.  Complaint, ¶ 49; Answers, denied.

16.     At its December 14, 2011, meeting the Personnel Board gave its rubberstamp "approval" of Ms. Forney's "findings and conclusions."  Complaint, ¶ 50; Answers, denied.

Response at 10-13 (emphasis in original)(footnote omitted).

The Plaintiffs close their Response by alluding to their complaints about the Court's compliance with rule 16, see Response at 13, and stating:

> The specific allegations and claims related to the acts and omissions of the City Personnel Board were admitted and denied by the Board's attorney in her Answers to Plaintiffs' Complaint. Neither the copying of "facts" from the City's hybrid dismissal and summary judgment motion or the factually unsupported claims of absolute or qualified immunity resolve any of the disputed issues of fact or law.  Referencing only the factual allegations in the pleadings, Plaintiffs have identified disputed material issues of fact and law. If unresolved factual issues remain, the Court should allow discovery prior to ruling.  As for the law, a more orderly process, consistent with the Rules of Civil Procedure, is required.

Response at 13-14.

In the Defendant Personnel Board's Reply to Plaintiffs' Opposition to City Personnel Board's Motion for Summary Judgment, filed December 2, 2013 (Doc. 68)("Reply"), the Personnel Board states that

> Very little of the Plaintiffs' Opposition actually deals with the substantive aspects of Defendant Board's Motion for Summary Judgment. Specifically, Plaintiffs fail to address in any way the Board's entitlement to absolute immunity. They cite no cases that contradict the Board's entitlement to absolute immunity and they provide no facts that distinguish their case from prevailing case law.  It is undisputed that Defendant Board is entitled to absolute immunity and thus, summary judgment as a matter of law.

Reply at 1-2.  The Personnel Board first "maintains that the Plaintiffs' discussion about the lack of a Rule 16 Scheduling Order is not germane to the merits of its Motion for Summary Judgment and Plaintiffs' inclusion of this argument in their response is both inappropriate and an attempt to detract from the merits of the motion."  Reply at 2.  The Personnel Board details this case's procedural history at some length, arguing, in essence, that the Plaintiffs have not suffered prejudice as a result of any irregularities regarding the scheduling conference.  See Reply at 2-3.

Turning to the Response's substance, the Personnel Board asserts that the

Plaintiffs, in their Opposition to Defendant Board's Motion for Summary Judgment make several frivolous and irrelevant arguments regarding the Board's motion. For example, Plaintiffs allege there is a "real" Personnel Board and an "imaginary" Personnel Board described in the Board's summary judgment motion and states that the Board's attorney has not met with the Board and has not communicated with the Board, suggesting that counsel does not have the authority to be their counsel. This is simply a disingenuous attempt to detract from the real issue in the Board's motion, i.e. the Board's entitlement to absolute immunity. Regardless, counsel for the Personnel Board have entered their Appearance for the Board, have filed an Answer for the Board and have filed motions for the Board. It is neither appropriate nor relevant for Plaintiffs counsel to question counsel's representation of their client.

Plaintiffs also have taken issue with the "facts" presented by the Board, alleging that they are "curiously disconnected" from the summary judgment argument and that they are copied directly from the City Defendants' motion. Plaintiffs have failed to elaborate on why copying "facts" as set out by another defendant is inappropriate. While all of the history may not be directly related to the Board's entitlement to absolute immunity, the Board's statement of material facts is intended to provide the background of the case. If the Plaintiffs wished to dispute the statement of material facts as presented by the Board, they could have done so, but did not.

Inasmuch as the Board's motion was a Motion for Summary Judgment and not a "hybrid motion," as referenced by Plaintiffs in subsection C, Defendant Board will not address that portion of the argument. Defendant Board would incorporate the City Defendants Motion to Strike related to this portion of the argument. (Doc. 67).

Plaintiffs fail to address in any way the Board's entitlement to absolute immunity. They cite no cases that contradict the Board's entitlement to absolute immunity. They make no argument differentiating the opinions or facts cited by the Board in their motion for summary judgment. Perhaps that is because the law is crystal clear. The Tenth Circuit Court of Appeals has specifically held that when City of Albuquerque personnel hearing officers and the City of Albuquerque Personnel Board are engaged in quasi-judicial activities pursuant to the City of Albuquerque's Merit System Ordinance they are entitled to absolute quasi-judicial immunity. Saavedra v. City of Albuquerque, 73 F.3d 73 F.3d 1525, 1528-30 (10th Cir. 1996). Plaintiffs themselves admit that "The City Personnel Board is supposed to be a neutral quasi-judicial hearing panel; . . . [.]" Complaint at ¶ 6. The reasoning in Saavedra applies directly to Defendant City Personnel Board and compels the same conclusion -- the City Personnel Board is entitled to absolute immunity.

Reply at 3-6. Accordingly, the Personnel Board asks the Court to grant the MSJ.

3.      **The Motion to Strike.**

The City Defendants move the Court to strike the Response, noting that much of it "addresses arguments asserted against the City which were not asserted in pleadings filed in response to the City's motion to dismiss or in the alternative motion for summary judgment; plaintiffs have never responded to that motion." Motion to Strike at 1. They ask the Court to strike the Response because it "addresses issues not asserted in the Personnel Board's motion, because it contains immaterial and insufficient arguments relating to the City's position in this case and because if the response is deemed to apply to the City's alternative motion to dismiss or for summary judgment, the response is untimely." Motion to Strike at 1-2.

The City Defendants lay out the following as facts:

1.      On March 29, 2013, the City filed a Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment Dismissing Complaint In Its Entirety. Docs. 26 and 27.

2.      Plaintiffs did not respond to that motion. Doc. 40 (Notice of Completion of Briefing).

3.      On November 1, 2013, the Court held a hearing on pending motions including the City's alternative motion to dismiss or for summary judgment. Doc. 26.

4.      At the hearing, the Court gave plaintiffs the opportunity to respond orally to the City's motion despite not having responded to the motion previously.

5.      After the hearing, the City Personnel Board filed a motion for summary judgment asserting the Board was entitled to absolute immunity. Doc. 55, 56, p. 16.

6.      The Court scheduled a hearing on the motion and a Rule 16 scheduling conference for December 3, 2013.

7.      Plaintiffs responded to the Personnel Board's motion. Doc. 64.

8.      In that response, most of the arguments asserted by plaintiffs did not discuss the absolute immunity raised by the Personnel Board in its motion, but addressed extraneous assertions, including plaintiffs' assertion that because a Rule

16 scheduling conference was not held, the Court could not decide the City's alternative motion to dismiss or for summary judgment. Many of the points in plaintiffs' response were addressing arguments made by counsel for plaintiffs at the hearing held November 1, 2013. Many of the points in the response did not address any previously asserted arguments.  The response did not address the Personnel Board's argument that it was entitled to absolute immunity.

9.    This motion to strike addresses those extraneous arguments lodged against the City defendants.

Motion to Strike at 2-3.

With respect to the rule 16 scheduling conference, the City Defendants assert as follows:

At the hearing held November 1, 2013, counsel for plaintiffs argued at great length that the Rule 16 scheduling conference was mandatory and that without the conference, the case could and should not proceed.  While Rule 16 uses the term "shall," it also provides that one of the matters for consideration is "disposing of pending motions."  Fed. R. Civ. Pro. 16(c)(2)(K).  The hearing held November 1, 2013, could have been considered a Rule 16 conference because the Court addressed the pending motions.

What plaintiffs did not point out is what they would have gained by insisting on a Rule 16 conference within 120 days of the filing of the case as anticipated by the Federal Rules.  The City filed a motion to stay proceedings. In the alternative motion to dismiss or for summary judgment, the City officials asserted entitlement to qualified immunity which the Supreme Court has mandated should be decided "at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).  At the November 1, 2013, hearing plaintiffs agreed to the stay pending the Court's decision on the motions.

Plaintiffs in the hearing also said they intended to file a motion for judgment on the pleadings. Prior to the Court's ruling at the hearing on the City's motion for stay, plaintiffs were not prevented from filing their motion for judgment on the pleadings. As the Court pointed out, if the Court grants some of the pending motions, there will be no reason for plaintiffs to file their motion for judgment on the pleadings.  The Court permitted plaintiffs to argue in opposition to the motions filed by defendants despite plaintiffs not having filed written responses to those motions, as required by the Local Rules. Thus, plaintiff had an opportunity to assert their claims which would have been raised in their motion for judgment on the pleadings, to the Court without having filed their motion for judgment on the pleadings.

Motion to Strike at 3-4.  The City Defendants concede that the section of the Response that

speaks about the Personnel Board's decision to copy certain facts from the City Defendants'

motion responds to the MSJ and, therefore, "is not subject to this motion to strike."  Motion to Strike at 4.

With respect to the hybrid-motion argument, the City Defendants point out that the MSJ is not a hybrid motion, and that "only the City filed an alternative motion to dismiss or for summary judgment," and argue that the Court should strike the portion of the Response that relates to hybrid motions.  Motion to Strike at 4.   The City Defendants point out that the authority on which the Plaintiffs rely "to allege that it was somehow improper for the City to file its motion in the alternative" supports the City Defendants' right to file its motion in that form:

> Plaintiffs rely on [United States Magistrate] Judge [Lorenzo] Garcia's citation to Administrative Order. No. 92-88 in a different case, Rubin v. Jenkusky, et al., No. CIV-2013-00025, to allege that it was somehow improper for the City to file its motion in the alternative. Administrative Order No. 92-88 specifically states: "Provided, however, that nothing herein shall be interpreted as prohibiting a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6) that may, in the alternative, be pleaded as a motion for summary judgment." Further, according to that administrative rule, "all pleadings filed with the Clerk of the Court shall include in the caption title a clear identification of the matter raised and, in the case of responsive pleadings, a clear identification of the pleading, . ." [sic] The City's motion satisfied the Administrative Order by asserting the motion in the alternative to be one for either a dismissal or for summary judgment and that alternative was clearly identified in the caption.  Further, plaintiffs never responded in writing to the alternative motion so they should not be permitted to now argue some defect in the procedure.

Motion to Strike at 4-5.

With respect to the Plaintiffs' arguments related to the lack of a settlement conference, the City Defendants state:

> Plaintiffs argue that the Court's entire attention is focused on dismissing the case. Again, this absence of a settlement conference was not argued in the Personnel Board's motion for summary judgment.  The lack of a settlement conference is irrelevant to any pending motion and this argument should be stricken.

> The Article III judge in this district does not conduct settlement conferences and they should not for obvious reasons: any discussions of

settlement are confidential.  This case is assigned to Magistrate Torgerson for settlement.  If the City defendants had received a notice of settlement conference, they would have moved to vacate the settlement conference until after receiving a ruling on their motions.  The City filed a motion to stay the proceedings pending ruling on the motion asserting entitlement to qualified immunity.

The gist of plaintiffs' argument is that they filed this lawsuit just to force the City to settle.  If plaintiffs thought so little of the merits of their case, they should not have filed the case originally.

Motion to Strike at 5.

With respect to the Plaintiffs' recounting of the rule 26 meet-and-confer meeting, the City Defendants essentially assert that the meet-and-confer failed because the Plaintiffs' counsel failed to cooperate, and argue that the Response's statement that discovery procedures are no longer "appropriate or meaningful," Response at 8, "highlights the immaterial and irrelevant nature of plaintiffs' response to the Personnel Board's motion for summary judgment and demonstrates that that response should be stricken," Motion to Strike at 7.

As for the section of the Response that relates to "Other Cases," Response at 8, the City Defendants assert that

[i]t is not up to counsel for plaintiffs to decide who may or may not represent the Personnel Board.  There is no reason for "maintaining ethical separation between City counsel and Board counsel." Response, p. 8.  Plaintiffs offer no reason for maintaining separation.  Further, the Court addressed the issue of whether counsel for the parties had approval to represent the parties' best interests: counsel for the City assured the Court that they had complied with their ethical obligations and that was as far as the Court could go in the absence of actual proof of a conflict of interest.  Simply by alleging without proof or even any facts, that the "Board's concurrent counsel is acting without Board knowledge or approval," response, p. 8, does not support plaintiffs' claim that the Personnel Board is somehow inadequately represented.

Plaintiffs next argue that the Personnel Board is a public body subject to the Open Meetings Act. A response to a motion for summary judgment is not the appropriate forum to raise these assertions.

Motion to Strike at 7.  The City Defendants also discuss the other, unrelated cases to which the

Plaintiffs point in their Response, arguing:

> Whether a judge held a Rule 16 conference or a settlement conference in a separate, unrelated case makes no difference to the issues raised by the Personnel Board.  Plaintiffs in this case had the option to raise their claims in a more appropriate forum, for example, filing a supported motion or even responding to the motions filed by the other defendants. Plaintiffs here did not choose to do that. They should not now be permitted to raise arguments irrelevant to those being raised by the Personnel Board; they should not now be permitted to address the City's arguments asserted in the alternative motion to dismiss or for summary judgment.

Motion to Strike at 8-9.

> As for the Plaintiffs' statements of facts, the City Defendants assert as follows:

> This section of the response somewhat addresses the Personnel Board's motion for summary judgment and to that extent, the City will not move to strike it.  To the extent that this part of the response attempts to challenge the City's alternative motion to dismiss or for summary judgment, the City requests that it be stricken.  The City's motion was filed on March 29, 2013. Plaintiffs did not respond within the time permitted or at any time. Plaintiffs were, however, permitted to argue the motion at the hearing held November 1, 2013.  Thus, any attempt to challenge the facts established in the City's and the Personnel Board's motions should be rejected.

> Further, plaintiffs misrepresents their alleged "undisputed" material facts. They rely on the answers of defendants to their complaint to state that facts are undisputed.  Contrary to the statement by plaintiffs, the defendants deny many of the statements. Those denials cannot be used as an admission of the stated fact. *See, e.g.*, response, p. 11, ¶ 9 ("The City Labor Board conducted the election . . . Answer, denied" and p. 13, ¶ 14 ("Instead of the Hearing Officer making . . . Answers, denied").

> Thus, despite plaintiffs' representations to the contrary, there are no material facts in dispute preventing entry of summary judgment on behalf of the City defendants.  Plaintiff [sic] have never competently disputed those facts. They have never filed a Rule 56 Affidavit to permit them to conduct discovery. They have never responded to the City's alternative motion to dismiss or for summary judgment.

Motion to Strike at 9.  Accordingly,

> the City requests that the Court strike plaintiffs' opposition to the City Personnel Board's Motion for Summary Judgment with the exception of part B, The Personnel Board's Motion is copied from the City's motion to dismiss, response,

p. 4, and portions of part II, Plaintiffs have identified disputed issues of fact in the pleadings, pps. 9 – 13.  All of the remaining arguments are immaterial or irrelevant, address arguments not asserted in the motion that plaintiffs were responding to, or attempted to respond to pleadings filed several months ago and the responses were untimely.

Motion to Strike at 10.

The Plaintiffs did not file a response.

### 4.      __The December 3, Hearing__.

The Court held a hearing on December 3, 2013.  At the outset, the Court explained that it was not likely to grant the Motion to Strike -- that is, it would consider the Motion to Strike as additional argument with respect to the MSJ, but it would not strike the Response -- and invited the parties to speak on the MSJ.  See Liberty Court Player at 3:46:50-47:41 (Court)("Liberty").  The Personnel Board substantially reiterated its arguments from the MSJ -- that, under Tenth Circuit law and law from the District of New Mexico, it is entitled to absolute immunity, because it acted in a quasi-judicial fashion.  See Liberty at 3:47:43-48:58 (Moulton).  It noted that the Response does not distinguish the Tenth Circuit cases from this case or present legal argument; accordingly, it asked the Court to grant summary judgment on the basis of absolute immunity.  See Liberty at 3:48:58-49:25 (Moulton).

No other Defendant accepted the Court's invitation to speak on the MSJ, save that the City Defendants agreed that the Court could consider the Motion to Strike as additional argument in support of the MSJ.  See Liberty at 3:49:27-50:47 (Court, Forney, Moander).

The Plaintiffs stated that the Motion to Strike was incompetent, and should be stricken: the Plaintiffs noted that the Court had repeatedly held that motions to strike are only appropriate with respect to pleadings and that rule 12(f) does not allow motions to be stricken.  See Liberty at 3:49:47-50:20 (Court, Livingston).  The Plaintiffs asserted that the City Defendants' counsel,

Paula Forney, knew of that rule, and questioned why she filed the Motion to Strike. See Liberty at 3:50:20-50:30 (Livingston). They asserted that the Court should be concerned "about its jurisdiction and its integrity," and not allow Ms. Forney to file the Motion to Strike. Liberty at 3:50:30-50:42. The Plaintiffs also stated that the Court should not allow counsel for the Personnel Board to consent to removing the case to federal court: the Plaintiffs asserted that the Personnel Board was not aware of what occurred in this case or of what its counsel was doing on its behalf, and asserted that it was essential that the Court police this conduct. See Liberty at 3:50:42-51:22 (Livingston). The Plaintiffs reiterated their complaint that the Defendants had provided the same answers to every factual allegation in the Complaint and that the Plaintiffs could not, therefore, understand which Defendant had given which answer; in their view, the only explanation for this unanimity is that the Defendants' attorneys, and not the Defendants, had answered the Complaint. See Liberty at 3:51:22-51:47 (Livingston). The Plaintiffs also repeated their complaints about the ethical relationships between the Defendants and their counsel -- for example, stating that they are being "virtually represented," and that they had not consented to their counsel's tactics in this case, including removal and the MSJ. Liberty at 3:51:47-53:01 (Livingston). The Plaintiffs' counsel continued in this vein, complaining about the Defendants' attorneys, about the lack of a settlement conference, about the operation of certain local rules, about hybrid motions, and about certain Magistrate Judges and District Judges of the District of New Mexico's practices with respect to other cases of the Plaintiffs' counsel, for much of his argument; because these issues do not relate to the MSJ's merits, the Court will not detail them further. See Liberty at 3:53:1-4:04:06 (Livingston, Court).

 The Court asked how discovery would assist the Plaintiffs with respect to the MSJ, given that whether the Personnel Board is absolutely immune from suit is a purely legal issue; the

Plaintiffs said that the issue was purely factual, because, in their view, the City of Albuquerque is running the Personnel Board, making the Personnel Board an alter ego to the City of Albuquerque. See Liberty at 4:04:08-08:37 (Court, Livingston).   They asserted that the Personnel Board is not neutral, that it does not "do anything," that it does not "review anything," that it renders inconsistent decisions, and that City of Albuquerque officials -- who, they allege, have litigated this case jointly -- run the Personnel Board; they argued that discovery would reveal whether the Personnel Board is aware of and participating in this case.  Liberty at 4:04:37-05:21 (Livingston).  They contended that, if no facts exist that they could discover, there was nothing that the Plaintiffs could add to the Court's decisions on applicable immunity doctrines, because the Court has written at length on that subject.   See Liberty at 4:05:21-05:50 (Livingston). The Plaintiffs asserted that they wanted more information on what sort of cases the Personnel Board is hearing, how they are deciding them, whether the decision makers are biased, and similar topics, and contended that, once they could begin discovery -- which they understood that the Court would now permit -- they would seek out that information. See Liberty at 4:05:50-06:14 (Livingston).  They asserted that, if there is no need for further discovery, the Court should issue an order, without a hearing, automatically allowing a defendant asserting qualified immunity to prevail. See Liberty at 4:06:18-06:57 (Livingston).

Dr. Wagner-Mogle declined the Court's invitation to speak, other than stating that she does not object to the MSJ.  See Liberty at 4:06:55-07:01 (Court, Moander).

Ms. Forney's counsel rose to respond to the comments of the Plaintiffs' counsel that do not relate to the MSJ's merits; the Court will not detail those responses, except in two respects: (i) Ms. Forney's counsel noted that the Plaintiffs' counsel did not file an affidavit explaining his need for additional discovery; and (ii) given that the Plaintiffs' counsel had intruded into the

relationship between the Personnel Board and its counsel, Ms. Forney's counsel asked a "rhetorical question": whether the Plaintiffs' counsel had informed his clients that this case involved counterclaims. See Liberty at 4:07:04-10:01 (Court, Green). The Plaintiffs' counsel stated that he had so informed them. See Liberty at 4:10:01-10:05 (Livingston).

The Personnel Board stated that the Plaintiffs did not argue that it was not entitled to summary judgment based on absolute immunity. See Liberty at 4:10:19-10:33 (Moulton). The Personnel Board asserted that, as other decisions from the District of New Mexico indicate and the Plaintiffs' counsel has recognized, it is entitled to judgment on that basis. See Liberty at 4:10:34-11:8 (Moulton). It also raised a few "side notes": it noted that failure to respond to motions is not at issue, because the Plaintiffs filed a Response; it agreed with the City Defendants that settlement conferences are not mandatory; it stated no evidence before the Court supports the Plaintiffs' view that there is a "real" Personnel Board and an "imaginary" Personnel Board, or their view that the Personnel Board does not know what is happening in this case. Liberty at 4:11:10-11:55 (Moulton). Its counsel stated that, as an officer of the Court, she had authority to act as she has. See Liberty at 4:11:55-12:08 (Moulton).

The Court stated that it would take the MSJ under advisement, but that it was inclined to grant the MSJ. See Liberty at 4:12:13-12:20 (Court). With respect to the Plaintiffs' concerns about the Personnel Board's proper representation, the Court stated it could not recall a situation in which a plaintiff questioned an agency's representation, but that it was inclined to conclude that, if an attorney represents in court that the attorney complied with his or her ethical obligations, such a representation probably is where the Court should stop, unless there is contrary evidence, which it did not see. See Liberty at 4:12:20-13:3 (Court). The Court noted that it would consider that issue in connection with the Motion to Disqualify Attorney Paula

Forney, filed July 17, 2013 (Doc. 47)("Motion to Disqualify"), and the Motion to Disqualify

Attorney Paula Forney and Memorandum in Support, filed June 9, 2013, in <u>Salazar v. City of</u>

<u>Albuquerque</u>, No. CIV 10-0645 JB/WPL (Doc. 97), but that it was inclined to conclude that it

could reach the MSJ's merits.  <u>See</u> Liberty at 4:13:3-25 (Court).  With respect to the parties'

squabble about the settlement conference, the Court noted that, under the local rules, parties must

attend settlement conferences, but stated that it was unsure whether the rules required  settlement

conferences in each case; it noted that the District decides cases without a settlement conference,

and that such conferences would be futile in many cases until the Court ruled on certain motions.

<u>See</u> Liberty at 4:13:25-14:00 (Court).  It stated that it doubted that this issue would prevent the

Court from reaching the MSJ's merits.  <u>See</u> Liberty at 4:14:00-14:12 (Court).  The Court stated

that it did not recall a case involving the Personnel Board, but stated that it appeared that the

Tenth Circuit had ruled on the judicial immunity issue, which may preclude anyone in this case

from arguing otherwise.  <u>See</u> Liberty at 4:14:12-14:50 (Court).  The Court stated that it was

inclined to grant the MSJ.  <u>See</u> Liberty at 4:14:50-4:55 (Court).

The Plaintiffs' counsel briefly interjected; the Court read to the Plaintiffs' counsel the

local rule that, with certain exceptions, requires parties to attend a settlement conference unless

the Court orders otherwise, and indicated that the way the parties had handled this case complies

with the local rules.  <u>See</u> Liberty at 4:14:55-15:41 (Livingston, Court).  The Plaintiffs' counsel

asserted that the rule says the parties must attend, that some attorneys argued that there was no

need for such a conference, and that the Court has not acknowledged that fact.  <u>See</u> Liberty at

4:15:41-15:58 (Livingston).  The Plaintiffs' counsel asserted that District Judges in the District

have not ruled, in any of his cases, that the parties need not attend a settlement conference, and

that other District Judges had improperly dismissed his cases.  <u>See</u> Liberty at 4:15:58-16:20

(Livingston).  The Plaintiffs' counsel raised further arguments related to the propriety of removal, asserting that the Court's decisions regarding the manner in which defendants must consent to a notice of removal conflict with those of the Honorable William P. Johnson, United States District Judge for the District of New Mexico; the Court stated that it would take up those arguments in the Motion to Disqualify.  See Liberty at 4:16:20-18:27 (Livingston, Court).

## LAW REGARDING MOTIONS TO STRIKE

Rule 12(f) of the Federal Rules of Civil Procedures provides:

(f)   **Motion to Strike.**  The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1)   on its own; or

(2)   on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f).  Professors Charles Wright and Arthur Miller have recognized, however, that such motions are not favored and, generally, should be denied:

The district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike redundant, impertinent, immaterial, or scandalous matter. However, because federal judges have made it clear, in numerous opinions they have rendered in many substantive contexts, that Rule 12(f) motions to strike on any of these grounds are not favored, often being considered purely cosmetic or "time wasters," there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy . . . .

5C C. Wright & A. Miller, Federal Practice & Procedure § 1382, at 433-36 (3d. ed. 2004)(footnotes omitted).  Accord Burget v. Capital W. Sec., Inc., No. CIV-09-1015-M, 2009 WL 4807619, at *1 (W.D. Okla. December 8, 2009)(Miles-LaGrange, C.J.)("While motions to strike are generally disfavored, the decision to grant a motion to strike is within the discretion of

the court." (citing <u>Scherer v. U.S. Dep't of Educ.</u>, 78 F. App'x 687, 689 (10th Cir. 2003)(unpublished))[11]).

"Allegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy." <u>Estate of Gonzales v. AAA Life Ins. Co.</u>, No. CIV 11-0486 JB/WDS, 2012 WL 1684599, at *5 (D.N.M. May 8, 2012)(Browning, J.)(quoting <u>Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc.</u>, No. 09-CV-0455-CVE-FHM, 2010 WL 132414, at *5 (N.D. Okla. January 8, 2010)). "The Court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed." <u>Friends of Santa Fe Cnty. v. LAC Minerals, Inc.</u>, 892 F. Supp. 1333, 1343 (D.N.M. 1995)(Hansen, J.)(internal quotation marks omitted)(quoting <u>Carter-Wallace, Inc. v. Riverton Lab., Inc.</u>, 47 F.R.D. 366, 368 (S.D.N.Y. 1969)). Professors Wright and Miller have also commented on what constitutes "immaterial" matter in the context of a motion to strike. "'Immaterial' matter is that which has no essential or

---

[11] <u>Scherer v. U.S. Department of Education</u> is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. <u>See</u> 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court finds that <u>Scherer v. U.S. Department of Education</u>, <u>Parker v. Central Kansas Medical Center</u>, 57 F. App'x. 401 (10th Cir. 2003)(unpublished), <u>Searcy v. Social Security Administration.</u>, 956 F.2d 278, 1992 WL 43490 (10th Cir. 1998)(unpublished), <u>In re Hopkins</u>, 162 F.3d 1173, WL 704710 (10th Cir. 1998)(unpublished), and <u>Rhoads v. Miller</u>, 352 F. App'x 289 (10th Cir. 2009)(Tymkovich, J.)(unpublished), have persuasive value with respect to material issues and will assist the Court in its disposition of this Memorandum Opinion and Order.

important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material."  5C Wright & Miller, supra § 1382, at 458-60 (footnotes omitted).

Moreover, "[o]nly material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly.  Motions, briefs, . . . memoranda, objections, or affidavits may not be attacked by the motion to strike."  Dubrovin v. Ball Corp. Consol. Welfare Ben. Plan for Emps., No. 08-CV-00563-WYD-KMT, 2009 WL 5210498, at *1 (D. Colo. Dec. 23, 2009).  Accord Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d 1176, 1184 (D.N.M. 2009)(Browning, J.)("Generally . . . motions, briefs, and memoranda may not be attacked by a motion to strike." (citing Searcy v. Soc. Sec. Admin., 956 F.2d 278, 1992 WL 43490, at *1, *4 (10th Cir. 1998)(unpublished))).  "The Federal Rules of Civil Procedure define 'pleadings' as a complaint or third-party complaint; an answer to a complaint, a third-party complaint, a counterclaim, or a crossclaim; and, 'if the court orders one, a reply to an answer.'"  Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d at 1184 (quoting Fed. R. Civ. P. 7(a)).

"Striking a pleading or part of a pleading is a drastic remedy and because a motion to strike may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored."  Estate of Gonzales v. AAA Life Ins. Co., 2012 WL 1684599, at *5 (internal quotation marks omitted)(quoting Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc., No. 09-CV-0455-CVE-FHM, 2010 WL 132414, at *5 (N.D. Okla. January 8, 2010)(Egan, J.)).  "The exception to this principle is that a Court may 'choose to strike a filing that is not allowed by local rule, such as a surreply filed without leave of court.'"  Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d at 1184 (citing In re Hopkins, 162 F.3d 1173, 1998 WL

704710, at *3 n.6 (10th Cir. 1998)(unpublished)(concluding that a district court had discretion to strike briefing that did not conform to the district court's orders)).

For example, in Skyline Potato, Co., Inc. v. Hi-Land Potato, Co., Inc., No. CIV 10-698, 2012 WL 6846386 (D.N.M. December 31, 2012)(Browning, J.), the Court denied a motion to strike a letter filed with the Court, because the letter was not a pleading and did not pertain to either party's legal defenses or arguments; the letter expressed one party's position regarding whether the Court should rule on summary judgment motions pending at the close of a bench trial. See 2012 WL 6846386, at *6. Similarly, in Great Am. Ins. Co. v. Crabtree, No. CIV 11-1129 JB/KBM, 2012 WL 3656500 (D.N.M. August 23, 2012)(Browning, J.), the Court denied a plaintiff's motion to strike exhibits attached to the defendant's motion to dismiss, because they were neither pleadings nor irrelevant. See 2012 WL 3656500, at *18. In Applied Capital, Inc. v. Gibson, the Court refused the plaintiff's request to strike a motion to dismiss, because rule 12(f) applies only to pleadings and not to a motion to dismiss. See 2007 WL 5685131, at *18. In Estate of Anderson v. Denny's, Inc., No. CIV 12-0605 JB/GBW, 2013 WL 690809 (D.N.M. February 7, 2013)(Browning, J.), the Court denied the plaintiff's request to strike a notice of completion of briefing for similar reasons. See 2013 WL 690809, at *12.

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" Herrera v. Santa Fe Pub. Schs., No. CIV 11-0422 JB/KBM, 2013 WL 3462484, at *23 (D.N.M. June 28, 2013)(Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc.,

939 F.2d 887, 891 (10th Cir. 1991)).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "If

the *moving* party will bear the burden of persuasion at trial, that party must support its motion

with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it

to a directed verdict if not controverted at trial."  Celotex Corp v. Catrett, 477 U.S. at 331

(Brennan, J., dissenting)(emphasis in original).[12]  Once the movant meets this burden, rule 56

requires the nonmoving party to designate specific facts showing that there is a genuine issue for

trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts

showing that there is a genuine issue for trial as to those dispositive matters for which it carries

the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238,

1241 (10th Cir. 1990).  See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir.

1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific

facts showing that there is a genuine issue for trial as to those dispositive matters for which it

carries the burden of proof." (internal quotation marks omitted)).  Rule 56(c)(1) provides: "A

party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to

particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposes of the

motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  It

---

[12]Although the Honorable William J. Brennan, Jr., Associate Justice of the Supreme
Court of the United States, dissented in Celotex Corp. v. Catrett, this sentence is widely
understood to be an accurate statement of the law.  See 10A C. Wright & A. Miller, Federal
Practice & Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four
decision, the majority and dissent both agreed as to how the summary-judgment burden of proof
operates; they disagreed as to how the standard was applied to the facts of the case.").

is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" (citation omitted)).  Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."  Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'"  Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  Rather, there must be sufficient evidence on which the factfinder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If

the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Anderson v. Liberty Lobby, Inc., 477 U.S. at 254.  Third, the court must resolve all reasonable inferences and doubts in favor of the nonmoving party, and construe all evidence in the light most favorable to the nonmoving party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Fourth, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

There are, however, limited circumstances in which the Court may disregard a party's version of the facts.  This doctrine developed most robustly in the qualified-immunity arena.  In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court concluded that summary judgment was appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts. 550 U.S. at 378-81.  The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those

facts.  Fed. Rule Civ. Proc. 56(c).  As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [at 586-87] (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life.  Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him.  The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

550 U.S. at 380-81 (emphasis in original).

The Tenth Circuit applied this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304

(10th Cir. 2009), and explained:

[B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]"  York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting Scott [v. Harris], 550 U.S. at 380); see also Estate of Larsen ex. rel Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cnty., 584 F.3d at 1312.  "The Tenth Circuit, in Rhoads v. Miller,

explained that the blatant contradictions of the record must be supported by more than other

witnesses' testimony[.]"  Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M.

2010)(Browning, J.)(citation omitted).

In evaluating a motion for summary judgment based on qualified immunity, we take the facts "in the light most favorable to the party asserting the injury."  Scott v. Harris, 550 U.S. 372, 377 (2007).  "[T]his usually means adopting . . . the

plaintiff's version of the facts," id. at 378, unless that version "is so utterly discredited by the record that no reasonable jury could have believed him," id. at 380. In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events. 550 U.S. at 379. Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony. There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury. And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility. . . .

Mr. Rhoads alleges that his injuries resulted from a beating rendered without resistance or provocation. If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under Graham v. Connor, 490 U.S. 386, 395-96 (1989), and this court's precedent.

Rhoads v. Miller, 352 F. App'x at 291-92 (internal quotation marks omitted). See Lymon v. Aramark Corp., 728 F. Supp. 2d at 1249-50 (quoting Rhoads v. Miller, 352 F. App'x at 291-92). In a concurring opinion in Thomson v. Salt Lake County, the Honorable Jerome A. Holmes, United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal question of qualified immunity and "determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court" before inquiring into whether there are genuine issues of material fact for resolution by the jury. 584 F.3d at 1326-27 (Holmes, J. concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770 (11th Cir. 1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs' facts").

## LAW REGARDING ABSOLUTE IMMUNITY UNDER § 1983

In cases against federal officials for violating the Constitution or of acting outside their federal statutory authority, "the officials 'in general are not absolutely immune . . . *unless* they are performing a narrowly defined judicial, executive, or legislative function.'" Tripati v.

U.S.I.N.S., 784 F.2d at 347 (alterations in original)(quoting Strothman v. Gefreh, 739 F.2d 515, 520 (10th Cir. 1984)).   The Supreme Court takes a "functional approach" to identify the "governmental functions that were historically viewed as so important and vulnerable to interference by means of litigation that some form of absolute immunity from civil liability was needed to ensure that they are performed 'with independence and without fear of consequences.'"   Rehberg v. Paulk, 132 S. Ct. 1497, 1503 (2012)(quoting Pierson v. Ray, 386 U.S. 547, 554 (1967))(secondary quotation marks omitted).

> Taking this approach, we have identified the following functions that are absolutely immune from liability for damages under § 1983: actions taken by legislators within the legitimate scope of legislative authority; actions taken by judges within the legitimate scope of judicial authority; actions taken by prosecutors in their role as advocates; and the giving of testimony by witnesses at trial.   By contrast, the Court has found no absolute immunity for the acts of the chief executive officer of a State, the senior and subordinate officers of a State's National Guard, the president of a state university; school board members; the superintendent of a state hospital; police officers; prison officials and officers; and private co-conspirators of a judge.

Rehberg v. Paulk, 132 S. Ct. at 1503 (citations omitted).

### 1.    Judicial Immunity for Judges.

"Judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."   Stump v. Sparkman, 435 U.S. 349, 355-56 (1978).   That same immunity continues even if the judge's "exercise of authority is flawed by the commission of grave procedural errors."   Stump v. Sparkman, 435 U.S. at 359.   The Supreme Court has emphasized that a judge's immunity from § 1983 liability "is overcome in only two sets of circumstances.   First, a judge is not immune from liability for nonjudicial acts, i.e., actions not taken in the judge's judicial capacity.   Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."   Mireles v. Waco, 502 U.S. 9, 11-12

(1991)(citations omitted).  The Supreme Court has also held that absolute judicial immunity was not affected or abolished "by § 1983, which makes liable 'every person' who under color of law deprives another person of his civil rights."  Pierson v. Ray, 386 U.S. 547, 554 (1967), overruled in part on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).

Absolute judicial immunity is immunity from suit altogether.  See Mireles v. Waco, 502 U.S. at 11 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  Judges are not entitled to absolute judicial immunity for non-judicial acts, i.e., acts taken that are not in the judge's judicial capacity.  See Mireles v. Waco, 502 U.S. at 11 (citing Forrester v. White, 484 U.S. 219, 227-229 (1988); Stump v. Sparkman, 435 U.S. at 360).  "[W]hether an act by a judge is a 'judicial' one relates to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."  Mireles v. Waco, 502 U.S. at 12 (citations omitted).  Judges are, however, entitled to legislative immunity when acting in a legislative capacity.  See Supreme Court v. Consumers Union of United States, 446 U.S. 719, 734 (1980).

> The rationale of the doctrine of judicial immunity -- "the risk that judges will be harassed and their independence compromised by the threat of having to defend themselves against suits by disgruntled litigants" -- also is equally applicable to [a party's] charge  that in performing their judicial duties the judges of [a] court were engaging in a conspiracy against [a party].

Green v. Seymour, 59 F.3d 1073, 1078 (10th Cir. 1995)(citing Pulliam v, Allen, 466 U.S. 522, 537-38 (1984)).

Judges acting in regards to state disciplinary issues sometimes act in a judicial capacity and sometimes act in a legislative capacity.  A judge acts in a judicial capacity when hearing appeals from disciplinary proceedings.  See Supreme Court v. Consumers Union of United States, 446 U.S. at 734.  Because "[d]isciplinary rules are rules of general application and are

statutory in character," because "[t]hey act not on parties litigant but on all those who practice law in [a state]," and because "[t]hey do not arise out of a controversy which must be adjudicated, but instead out of a need to regulate conduct for the protection of all citizens," a court acts in a legislative capacity when it enacts disciplinary rules. Supreme Court v. Consumers Union of United States, 446 U.S. at 731 (citation and internal quotations omitted).

## 2.        Quasi-Judicial Immunity for Officials who Enforce Judicial Orders.

"Absolute immunity has long been available to protect judges from liability for acts performed in their judicial capacity," and, "[o]ver time the defense has been extended to 'certain others who perform functions closely associated with the judicial process.'" Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Trust, 744 F.3d 623, 630 (10th Cir. 2014)(quoting Cleavinger v. Saxner, 474 U.S. 193, 199, 200 (1985)). "Just as judges acting in their judicial capacity are absolutely immune from liability under section 1983, 'official[s] charged with the duty of executing a facially valid court order enjoy[] absolute immunity from liability for damages in a suit challenging conduct prescribed by that order.'" Turney v. O'Toole, 898 F.2d 1470, 1472 (10th Cir. 1990)(alterations in original)(citations omitted)(quoting Valdez v. City & Cnty. of Denver, 878 F.2d at 1286). See Henriksen v. Bentley, 644 F.2d 852, 855 (10th Cir. 1981)(stating that absolute immunity applies where an official acts "under the command of a court decree or explicit instructions from a judge"). "[I]t is simply unfair to spare the judges who give orders while punishing the officers who obey them." Valdez v. City & Cnty. of Denver, 878 F.2d at 1289. "Enforcing a court order or judgment is intrinsically associated with a judicial proceeding. If losing parties were free to challenge the will of the court by threatening its officers with harassing litigation, the officers might neglect the execution of their sworn duties." Valdez v. City & Cnty. of Denver 878 F.2d at 1288 (citation omitted).

In Valdez v. City and County of Denver, the Tenth Circuit held that "an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." 878 F.2d at 1286. In that case, the plaintiff, Robert Valdez, was "present as a spectator in state traffic court," and at some point, the Denver County Court Judge presiding over the proceedings "said something to a defendant with which Valdez disagreed." 878 F.2d at 1286. As a result of his disagreement, the plaintiff exclaimed "bullshit" and had an exchange of words with the judge. 878 F.2d at 1286. The judge held the plaintiff in contempt and ordered one of the defendants, a police officer, to arrest the plaintiff. See 878 F.2d at 1286. The officer complied, and, later the same day, the judge issued a mittimus[13] directing the municipality to retain custody of Valdez. See 878 F.2d at 1286. Pursuant to the judge's order, Valdez was incarcerated for two weeks under the administrative supervision of another defendant. See 878 F.2d at 1286. The Tenth Circuit, in holding that the arresting officer and the defendant who was the administrative supervisor of the jail where the plaintiff was held were entitled to absolute immunity, reasoned:

> To force officials performing ministerial acts intimately related to the judicial process to answer in court every time a litigant believes the judge acted improperly is unacceptable. Officials must not be called upon to answer for the legality of decisions which they are powerless to control. We explained in [T&W Inv. Co. v. ]Kurtz, 588 F.2d [801,] 802[ (10th Cir. 1978)], that it is simply unfair to spare the judges who give orders while punishing the officers who obey them. Denying these officials absolute immunity for their acts would make them a "lightning rod for harassing litigation aimed at judicial orders." Id.
>
> . . . .
>
> Tension between trial judges and those officials responsible for enforcing their orders inevitably would result were there not absolute immunity for both. Kurtz, 588 F.2d at 802. Officials employed to implement facially valid court orders

---

[13]A mittimus is a "court order or warrant directing a jailer to detain a person until ordered otherwise." Black's Law Dictionary 1093 (9th ed. 2009).

> could choose: They may disregard the judge's orders and face discharge, or worse yet criminal contempt, or they may fulfill their duty and risk being haled into court. . . .  Officials such as the defendants must not be required to act as pseudo-appellate courts scrutinizing the orders of judges.

878 F.2d at 1289.   Although "absolute immunity always comes at a price," such that an individual "wrongly deprived of liberty or property by a judge's decision will be unable to pursue a remedy under the civil rights statute," the aggrieved party is not without recourse.  878 F.2d at 1289.  "In most cases, the defendant should appeal: The proper procedure for a party who wishes to contest the legality of a court order enforcing a judgment is to appeal that order and the underlying judgment, not to sue the official responsible for its execution."  878 F.2d at 1289-90 (internal quotation marks omitted).

There are limits, however, to "how unlawful an order can be and still immunize the officer executing it."  Moss v. Kopp, 559 F.3d 1155, 1163 (10th Cir. 2009)(citing Turney v. O'Toole, 898 F.2d at 1474).  For the state official to be entitled to quasi-judicial immunity, "the judge issuing the disputed order must be immune from liability in his or her own right, the officials executing the order must act within the scope of their own jurisdiction, and the officials must only act as prescribed by the order in question."  Moss v. Kopp, 559 F.3d at 1163 (citing Turney v. O'Toole, 898 F.2d at 1472, 1474).  The order must also be facially valid.  See Moss v. Kopp, 559 F.3d at 1164.  "[E]ven assuming that an order is infirm as a matter of state law, it may be facially valid, as 'facially valid' does not mean 'lawful,' and erroneous orders can be valid."  Moss v. Kopp, 559 F.3d at 1165 (quoting Turney v. O'Toole, 898 F.2d at 1473).

When an official, in bad faith, obtains the order under which he or she claims immunity, that order does not provide the same quasi-judicial immunity as an order which the official played no part in procuring.  See Moss .v Kopp, 559 F.3d at 1163 n.10; Turney v. O'Toole, 898 F.2d at 1473 n.3 (citing Guerro v. Mulhearn, 498 F.2d 1249, 1256 (1st Cir. 1974)(refusing to

extend absolute immunity to police officers who acted pursuant to a wiretap court order when the officers allegedly obtained the wiretap order "in bad faith and on the basis of perjured testimony").

### 3.        Officials in Administrative Hearings.

The Tenth Circuit has recognized that "officials in administrative hearings can claim the absolute immunity that flows to judicial officers if they are acting in a quasi-judicial fashion." Guttman v. Khalsa, 446 F.3d 1027, 1033 (10th Cir. 2006)(citing Butz v. Economou, 438 U.S. 478, 514 (1978)).   For an official at an administrative hearing to enjoy absolute immunity, "(a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct."   Guttman v. Khalsa, 446 F.3d at 1033 (quoting Horwitz v. State Bd. of Med. Examiners of State of Colo., 822 F.2d 1508, 1513 (10th Cir. 1987))(internal quotation marks omitted).

In Guttman v. Khalsa, a doctor who suffered from depression and post-traumatic stress disorder had appeared before the Impaired Physicians Committee of the New Mexico Board of Medical Examiners to respond to a series of complaints about his professional conduct.  See 446 F.3d at 1030.  The Committee in Guttman v. Khalsa issued a "Notice of Contemplated Action and Order of Summary Suspension" of the doctor's medical license based on alleged mental illness and lying to the Committee.  446 F.3d at 1030.  The New Mexico Board of Medical Examiners then held a hearing, during which one of the defendants acted as Administrative Prosecutor.  See 446 F.3d at 1030.  The New Mexico Board of Medical Examiners in Guttman v. Khalsa revoked the doctor's medical license pursuant to its statutory authority to do so. See 446

F.3d at 1030.

The doctor in Guttman v. Khalsa appealed the decision to the Seventh Judicial District of New Mexico.  See 446 F.3d at 1030.  The Seventh Judicial District of New Mexico denied the appeal, and the doctor then appealed to the Court of Appeals of New Mexico.  See 446 F.3d at 1030.  After the Court of Appeals of New Mexico affirmed, the doctor filed a petition for certiorari with the Supreme Court of New Mexico.  See 446 F.3d at 1030.  Before the Supreme Court of New Mexico could act on the petition, the doctor filed a lawsuit in federal court, alleging, among other things, violations of his constitutional rights.  See 446 F.3d at 1030.

The Tenth Circuit in Guttman v. Khalsa held that the Rooker-Feldman doctrine[7] did not bar the doctor's federal lawsuit, because the state-court lawsuit was not final.  See 446 F.3d at 1032.  The Tenth Circuit found, however, that the Administrative Prosecutor and the individual who presided over the three-day hearing in front of the New Mexico Board of Medical Examiners enjoyed absolute immunity.  See 446 F.3d at 1032.  The basis for the hearing officer's immunity in Guttman v. Khalsa was that he had served a quasi-judicial function.  See 446 F.3d at 1032.

The Tenth Circuit in Guttman v. Khalsa also relied on an earlier case: Horwitz v. State Board of Medical Examiners of State of Colorado.  In Horwitz v. State Board of Medical Examiners of State of Colorado, the Tenth Circuit concluded that members of the State Board of Medical Examiners for the State of Colorado enjoyed absolute immunity for actions it took in filing a formal complaint against a doctor, and in temporarily suspending his right to practice

---

[7]The Rooker-Feldman doctrine derives from two Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  The Tenth Circuit has recognized that the "Rooker-Feldman doctrine prohibits federal suits that amount to appeals of state-court judgments."  Bolden v. City of Topeka, Kan., 441 F.3d 1129, 1142-43 (10th Cir. 2006)(citations omitted).

medicine pending investigations and hearings.  See 822 F.2d at 1510, 1515.  The Tenth Circuit in

Horwitz v. State Board of Medical Examiners of State of Colorado reasoned that the defendant

Board members were performing adjudicatory and prosecutorial functions.  See 822 F.2d at

1515.  The Tenth Circuit in Horwitz v. State Board of Medical Examiners of State of Colorado

also noted:

> There exists a strong need to insure that individual Board members perform their
> functions for the public good without harassment or intimidation. There exist
> adequate due process safeguards under Colorado law to protect against
> unconstitutional conduct without reliance upon private damages lawsuits. It is
> important to insulate Board members from political influences in meeting their
> adjudicatory responsibilities in the adversarial setting involving licensure to
> practice medicine.  Public policy requires that officials serving in such capacities
> be exempt from personal liability.

822 F.2d at 1515.  Finally, the Tenth Circuit pointed out the Board members' functions,

observing that Board members

> serve in the prosecutorial role in that they, among other things, initiate
> complaints, start hearings, make investigations, take evidence, and issue
> subpoenas.  They also serve in the adjudicative role, as judges.  Thus, the Board
> duties are "functionally comparable" to a court of law.  And we are reminded that,
> with respect to immunity, we must include all acts of the official performing
> statutory duties as having "[m]ore or less connection with the general matters
> committed by law" to his station.

822 F.2d at 1515.

### 4.      Court Reporters.

Although certain officers enjoy immunity from suit for acts taken in a quasi-judicial

setting, the Supreme Court has held that court reporters do not enjoy such immunity.  Rejecting a

court reporter's claim of absolute immunity, the Supreme Court stated: "We are also

unpersuaded by the contention that our functional approach to immunity . . . requires that

absolute immunity be extended to court reporters because they are part of the judicial function."

Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435 (1993).  Rather, in the Supreme Court's

view:

> The doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability.  Accordingly, the "touchstone" for the doctrine's applicability has been "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights."   [Burns v. Reed,] 500 U.S. [478,] 500 [(1991)](Scalia, J., concurring in judgment in part and dissenting in part).  When judicial immunity is extended to officials other than judges, it is because their judgments are "functional[ly] comparab[le]" to those of judges -- that is, because they, too, "exercise a discretionary judgment" as a part of their function.   Imbler v. Pachtman, 424 U.S. [409] at 423, n. 20 [(1976)].

Antoine v. Byers & Anderson, Inc., 508 U.S. at 435-36 (footnote omitted)(final two alterations in original).

In light of this understanding of judicial immunity, the Supreme Court found that the function that court reporters perform is not one that would lead to a grant of immunity.  See Antoine v. Byers & Anderson, Inc., 508 U.S. at 436.  The Supreme Court reasoned that court reporters "are afforded no discretion" in carrying out their duty and that they are "not absolutely immune because their duties are ministerial, not discretionary in nature."  Antoine v. Byers & Anderson, Inc., 508 U.S. at 436 (citations omitted)(internal quotation marks omitted).

The Court has also drawn distinctions between when a person is acting in a judicial role, such that they are entitled to quasi-judicial immunity, and when a person in a quasi-judicial setting plays a merely ministerial role.  See Duprey v. Twelfth Judicial Dist. Court, 760 F.Supp.2d 1180, 1204 (D.N.M. 2009)(Browning, J.).  In Duprey v. Twelfth Judicial District Court, the Court found that the state defendant who acted as chairperson of the judicial grievance board was entitled to absolute immunity, because his function was similar to that of an administrative law judge in a quasi-judicial setting.  See 760 F. Supp. 2d at 1204.  The Court found that the director of human resources for the New Mexico Administrative Office of the

Courts was not entitled to absolute immunity, because her role was ministerial and mechanical. See 760 F. Supp. 2d at 1204. In analyzing each defendant's function, the Court focused on participation in the deliberative process and the exercise of independent judgment. See 760 F. Supp. 2d at 1205. The Court determined that, because the human resources director played a ministerial role and did not act at the direction of a judge, she was not entitled to judicial immunity. See 760 F. Supp. 2d at 1208 ("An individual whose job at a judicial proceeding is to run a tape recorder is not one who needs to be able to act according to her own convictions."). See also Braverman v. New Mexico, No. 11-0829, 2011 WL 6013587, at *20 (D.N.M. Oct. 19, 2011)(Browning, J.)(finding that judicial immunity probably protected a state judge and special master from suit when denying a motion for a temporary restraining order).

### 5. Probation Officers.

Whether a probation or parole officer is entitled to absolute immunity or qualified immunity depends on whether the officer is performing a function that is quasi-judicial in nature. See Russ v. Uppah, 972 F.2d 300, 303 (10th Cir. 1992). In Tripati v. U.S.I.N.S., the Tenth Circuit held that, when "the challenged activities of a federal probation officer are intimately associated with the judicial phase of the criminal process, he or she is absolutely immune from a civil suit for damages." 784 F.2d at 348. In that case, the plaintiff alleged that "two probation officers made false statements in a pretrial bond report and a presentence report." 784 F.2d at 347. The Tenth Circuit explained that "[t]here can be no doubt that both the decision whether to order the pretrial release of a criminal defendant and the selection of an appropriate sentence after his conviction are important parts of the judicial process in criminal cases," and that "[p]robation officers who assist in these determinations perform critical roles." 784 F.2d at 348. The Tenth Circuit emphasized that the probation officers were acting as "an arm of the court,"

rather than as "an investigative arm for the prosecution," and that the presentence report and pretrial release report were "prepared exclusively at the discretion of and for the benefit of the court."  784 F.2d at 348.  On the other hand, "decisions involving the revocation of probation or parole by a probation or parole officer warrant only qualified, not absolute, immunity because such decisions are farther removed from the judicial process and are not initiated by courts."  Snell v. Tunnell, 920 F.2d 673, 692 n.18 (10th Cir. 1990).

## ANALYSIS

The Court will deny the Motion to Strike, because the Response is not a proper object of a motion to strike under rule 12(f).  The Court will, therefore, consider the Response.  The Court will grant the MSJ, because the Tenth Circuit has held that the Personnel Board is entitled to absolute judicial immunity.

## I.   THE COURT WILL DENY THE MOTION TO STRIKE, BECAUSE BRIEFING IS AN IMPROPER OBJECT OF A MOTION TO STRIKE.

The Court will deny the Motion to Strike.  As the Court has explained, motions to strike are properly directed towards material in pleadings, and the Response is not a pleading.  See Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d at 1184 ("Generally . . . motions, briefs, and memoranda may not be attacked by a motion to strike.")).  Accordingly, the Court will deny the Motion to Strike.

The Court notes, however, that, to the extent the City Defendants fear that the Court will consider the Response to respond, not only to the Personnel Board's MSJ, but also to the City Defendants' Motion, that fear is unfounded.  First, the Plaintiffs did not respond to the City Defendants' Motion, and the Court disposed of the motion in the City Defendants' MOO.  Second, although the Response complains about various aspects of the City Defendants' Motion, see Response at 4-6, the Response, by its terms, only relates to the MSJ.  Accordingly, although

the Court will deny the Motion to Strike, the Court did not consider the Response in relation to the City Defendants' Motion.

## II.     THE COURT WILL GRANT THE MSJ, BECAUSE THE PERSONNEL BOARD ENJOYS ABSOLUTE IMMUNITY.

The Court will grant the MSJ.  The Tenth Circuit's decision in Saavedra v. City of Albuquerque indicates that the Personnel Board is entitled to absolute judicial immunity.  The Plaintiff has not substantively argued otherwise.  Accordingly, summary judgment for the Personnel Board is appropriate.

Saavedra v. City of Albuquerque is on all fours with this case: Saavedra, a City of Albuquerque employee displeased with the result in a personnel hearing, sued, among others, the hearing officer that held the initial hearing, the Personnel Board that upheld the hearing officer's recommendations, the Personnel Board's Chair, and the City of Albuquerque, alleging assorted federal constitutional violations.  See 73 F.3d at 1527-28.  The Tenth Circuit affirmed the conclusion of the Honorable Juan G. Burciaga, United States District Judge for the District of New Mexico, that the hearing officer, the Personnel Board, and its Chair were entitled to absolute judicial immunity.  See 73 F.3d at 1530.  The Tenth Circuit quoted the following section of Judge Burciaga's opinion:

> The hearing before the PHO is adversary in nature.  Employees have the right to counsel and the opportunity to present evidence, provide testimony, and cross-examine witnesses.  The PHO is a professional hearing officer, is not considered an employee of the City, and is sufficiently independent. His decisions are insulated from political pressure. The PHO makes written findings of fact and issues a recommendation. The Board's review of the PHO's determination is limited to the record.  The Board either affirms, denies, modifies, or remands the PHO's decision, similar to a reviewing court of law. The nature of the process is such that the terminated employee will often have a strong incentive to sue the PHO or the Board should either issue an adverse decision, and therefore a strong likelihood of lawsuits could deter others from desiring to perform these functions and might produce a hidden bias in favor of the aggrieved employee. In any event, constitutional violations can be corrected on appeal to the state district court.

> Notwithstanding Plaintiff's contrary assertions, all of the factors deemed dispositive in *Butz* are present here. The PHO and the Board must be free to exercise their discretion uninhibited by a looming threat of personal liability.

73 F.3d at 1530 (quoting Saavedra v. City of Albuquerque, 859 F. Supp. 526, 530-31 (D.N.M. 1994)(Burciaga, J.)). The Tenth Circuit added only "that the district court properly applied Butz and Horowitz in granting [the hearing officer, the Personnel Board, and its Chair] absolute judicial immunity." 73 F.3d at 1530. The Plaintiffs' counsel in this case is almost certainly familiar with this reasoning: he also represented Saavedra. See 73 F.3d at 1527 ("Paul S. Livingston, Albuquerque, New Mexico, for appellant.").

The Plaintiffs have pointed to nothing that distinguishes Saavedra v. City of Albuquerque from this case. Indeed, the Response does not mention the case. Perhaps recognizing that Tenth Circuit law bars their claims against the Personnel Board, the Plaintiffs instead spent the bulk of the Response complaining about unrelated matters, including: (i) the delayed rule 16 scheduling order; (ii) that the Personnel Board copied its facts from the City Defendants' Motion; (iii) the supposedly "incomprehensible" nature of hybrid motions, Response at 6 -- again, the MSJ is not such a motion; (iv) the absence of a settlement conference; (v) alleged flaws with the parties' rule 26 conference; (vi) the Plaintiffs' counsel's objections to the Personnel Board's arrangements and communications with its counsel;[14] and (vii) difficulties that plaintiffs in other

---

[14]During the hearing, the Plaintiffs suggested that the Court's decisions regarding the manner in which defendants must consent to a notice of removal conflict with Judge Johnson's decisions. The Court did not address the argument in its Memorandum Opinion and Order, filed March 31, 2014 (Doc. 91), in which the Court denied the Motion to Disqualify, because the Motion to Disqualify did not, as the Court anticipated, cleanly present the issue. In any event, the cases to which the Plaintiffs allude deal with an issue that this case does not present: whether an attorney for less than all of the defendants may represent in a notice of removal that all defendants consent to removal. Compare Vasquez v. Americano U.S.A., LLC, 536 F Supp. 2d 1253, 1258 (D.N.M. 2008)(Johnson, J.)(suggesting that each separately represented defendant must file its own notice of consent to removal), with Tresco, Inc. v. Continental Cas. Co., 727 F. Supp. 2d 1243, 1249-50 (D.N.M. 2010)(Browning, J.)(suggesting that one defendant's counsel's

cases, some of which the Plaintiffs' counsel represents, have experienced.  The Response's only mentions of absolute immunity are: (i) the following unsupported aside: "The Personnel Board's Motion for Summary Judgment is based on a claim of absolute immunity.  The real Personnel Board, however, is far from the imaginary Board described in the Board's summary judgment motion," Response at 8; and (ii) the following rhetoric from the end of the Response: "Neither the copying of 'facts' from the City's hybrid dismissal and summary judgment motion or the factually unsupported claims of absolute or qualified immunity resolve any of the disputed issues of fact or law," Response at 14.  The Court will not detain itself long on these assertions, save to say that they lack a sound basis in law or fact: none of the various issues that the Plaintiffs raised has anything to do with the Tenth Circuit's holding, in a published case in which the Plaintiffs' counsel represented the losing party, that the Personnel Board is absolutely immune from suit.

The final section of the Plaintiffs' response, though formatted somewhat like a fact section one would expect to find in a proper summary-judgment response, is procedurally incompetent.  The section consists of two lists of facts: facts alleged in the Complaint that, the Plaintiffs assert, the Defendants did not deny in their Answers, see Response at 10-11, and facts that the Plaintiffs alleged in their Complaint that the Defendants denied in their answers, see Response at 11-13.  As the Court has explained, supra note 1, the Defendants admitted only two of the facts -- neither of which changes the MSJ's outcome -- and denied the others based on insufficient knowledge or information.  The Court has found the two admitted facts undisputed, but has otherwise not included any of the Plaintiffs' proposed facts in its discussion of the factual

---

written representation that all defendants have consented to removal is sufficient).  That difference has nothing to do with whether a lawyer may, on their client's behalf, consent to removal.  The Plaintiffs' contrary suggestion, based on a misreading of the law and speculation about the communications between the Defendants and their counsel, lacks a sound basis.

background, because the Plaintiffs do not support their side of the purported facts with record evidence, but instead with citations to their unverified Complaint.  Summary judgment rules do not permit this practice.  See, e.g., Otteson v. United States, 622 F.2d at 519 ("[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried."   (emphasis added)(internal quotation marks omitted)). Moreover, the Plaintiffs do not respond to the Personnel Board's facts, and the Plaintiffs have, therefore, admitted those facts.  See D.N.M.LR-Civ. 56.1(a).  Accordingly, the Plaintiffs have conceded the Personnel Board's facts, and they have not supported most of their purported facts with competent record evidence.

In the end, even if the Response were technically adequate to create genuine issues of material fact on some elements of the claims, and even if the Response raised substantive legal arguments, the Court sees no factual or legal argument that could save the Plaintiffs' claims against the Personnel Board.  The Tenth Circuit has squarely held, in a case essentially identical to this case, that the Personnel Board is entitled to absolute judicial immunity.  Moreover, it is clear that: (i) the Personnel Board's functions in this case -- hearing what amounted to appeals from adverse employment decisions -- are similar to judicial-process functions; (ii) the Personnel Board's actions are likely to lead to suit by terminated or otherwise aggrieved employees; and (iii) there is no reason to doubt that the regulatory framework that governs the Personnel Board contains sufficient safeguards to control unconstitutional conduct.[15]  See generally Merit System

---

[15]Even if competent evidence supported the Plaintiffs' vague allegations that there is a "real" Personnel Board and an "imaginary" Personnel Board, and that the City of Albuquerque controls the Personnel Board, the result would be the same.  As the Tenth Circuit has explained, "[j]udicial immunity is not overcome by allegations of bad faith or malice.  Only accusations that a judge was not acting in his judicial capacity or that he acted in the complete absence of all

Ordinance (MSO), Albuquerque, N.M., Rev. Ordinances, ch. 3, art. 1, §§ 3-1-1 to -1-28 (setting out ample regulatory protections).  Summary judgment is, therefore, appropriate.

**IT IS ORDERED** that: (i) Defendant City Personnel Board's Motion for Summary Judgment, filed October 30, 2013 (Doc. 55), is granted; and (ii) Defendants City of Albuquerque, Berry, Perry and Rizzieri's Motion to Strike Plaintiffs' Response to Defendants [sic] Personnel Board's Motion for Summary Judgment, Doc. 64, and Memorandum in Support Thereof, filed November 22, 2013 (Doc. 67), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Paul Livingston
Placitas, New Mexico

      *Attorney for the Plaintiffs and Counter-Defendants*

Rebecca E. Wardlaw
    Managing Assistant City Attorney
Samantha M. Hults
Steve D. Nichols
    Assistant City Attorneys
Albuquerque, New Mexico

--and--

jurisdiction can overcome absolute immunity."  Guttman v. Khalsa, 446 F.3d at 1033 (internal citations, quotation marks, and alterations omitted)(emphasis added).  The Plaintiffs have not competently leveled any such accusation.

Stephen G. French
Paula I. Forney
Erika E. Anderson
French & Associates, P.C.
Albuquerque, New Mexico

>    *Attorneys for Defendants and Counter-Claimants City of Albuquerque, Richard Berry,*
>        *Robert J. Perry, and Bruce Rizzieri*

Debra J. Moulton
Deborah D. Wells
Kennedy, Moulton & Wells, P.C.
Albuquerque, New Mexico

>    *Attorneys for Defendant City Personnel Board*

Alfred L. Green, Jr.
Emily A. Franke
Neil R. Blake
Butt Thornton & Baehr, P.C.
Albuquerque, New Mexico

>    *Attorneys for Defendant Paula Forney*

Lynn S. Sharp
Christopher Lee Moander
Charles P. List
Sharp Law Firm
Albuquerque, New Mexico

>    *Attorneys for Defendant Carmen Wagner-Mogle M.D.*